1   ANITA L. STEBURG, ESQ.  (SBN 245933)
    STEBURG LAW FIRM
2   1798 TECHNOLOGY DRIVE, SUITE 258
    SAN JOSE, CA 95110
3   Telephone:  (408) 573-1122
    Facsimile:   (408) 573-1126
4
    Attorneys for Plaintiff, Jerry Putz
5
6                                           ENDORSED   Santa Clara
                                            10/31/11   1:53pm
7                                           David H. Yamasaki
                                            Chief Executive Offic
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA 1100117227
                                            WA            $395.00
9               COUNTY OF SAN SANTA CLARA   TL            $395.00
                                            Case: 1-11-CV-212242
10
11                                    No. _____   C.A. Pinacate

12   JERRY PUTZ,                       COMPLAINT FOR:
                                       (1) Violations of the Truth in
13                    Plaintiff,       Lending Act, 15 U.S.C. §1601, et seq;
                                       (2) Violation of Bus. & Prof. Code
14   v.                                §17200, et seq. - "Unlawful" Business
                                       Practices (TILA);
15   WORLD SAVINGS, INC.,,             (3) Violation of Bus. & Prof. Code
     WACHOVIA MORTGAGE                 §17200, et seq. – "Unfair" and
16   CORPORATION, WELLS FARGO          "Fraudulent" Business Practices;
     BANK, N.A., NDEX WEST, LLC,       (4) Breach of Contract;
17   RECON TRUST COMPANY, N.A.         (5) Breach of the Covenant of Good
     and DOES 1 through 10             Faith and Fair Dealing; and
18   inclusive,,                       (6) Violation of Bus. & Prof. Code
                                       §17200, et seq. – "Unlawful" Business
19                                     Practices (Fin. Code § 22302).
                      . Defendants.    (7) Breach of Fiduciary Duty
20                                     (8) Quiet Title
                                       (9) Breach of the Covenant of Good
21                                     Faith and Fair Dealing;
                                       (10) Injunctive Relief and to Cancel
22                                     Trustee's Sale Scheduled for
                                       November 7, 2011 at 11:00
23
24
25                                     JURY TRIAL DEMANDED
26
27
28        Plaintiff JERRY PUTZ ("Plaintiff") alleges as follows:

COMPLAINT                                        Page 1

**INTRODUCTION**

1.     This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other statutory and common law in effect. Plaintiff JERRY PUTZ, individually, brings this action against WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB, WACHOVIA MORTGAGE CORPORATION, WELLS FARGO BANK, N.A. and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiff, in Defendants Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff would be paying on the Note(s).

**THE PARTIES**

2.     Plaintiff, JERRY PUTZ ("Plaintiff") is, and at all times relevant to this Complaint was an individual residing in San Jose, California. On or about January 1, 2007, Plaintiff refinanced his existing home loan and entered into an Option ARM loan agreement with Defendants. The Option ARM loan was secured by Plaintiff's primary residence. Attached hereto as Exhibits B and C is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action received by the Plaintiff at the time of the transaction.

3.     Defendant WORLD SAVINGS, INC. is a California corporation licensed to do, and is doing business in California. At all relevant times hereto, WORLD SAVINGS, INC., was and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are the subject of this Complaint. WORLD SAVINGS, INC. transacts business in Santa Clara County, California and at all relevant times promoted, distributed, and sold the Option Arm loans that are the subject of this Complaint throughout the United States, including Santa Clara County, California. WORLD SAVINGS, INC. has significant contacts

1  with Santa Clara County, California, and the activities complained of herein occurred, in

2  whole or in part, in Santa Clara County, California.

3      4.    Defendant, WORLD SAVINGS BANK, FSB, was and is a business organization

4  form unknown. Plaintiff is informed and believes and thereupon alleges that Defendant

5  WORLD SAVINGS BANK, FSB is a corporation; that Defendant WORLD SAVINGS

6  BANK, FSB is a partnership; and that Defendant, WORLD SAVINGS BANK, FSB, is a

7  division of Defendant, WORLD SAVINGS, INC.

8      5.    Defendant, WACHOVIA MORTGAGE CORPORATION ("WACHOVIA"), is a

9  North Carolina corporation licensed to do, and is doing business in California. At all relevant

10  times hereto WACHOVIA was and is engaged in the business of promoting, marketing,

11  distributing and selling the Option Arm loans that are the subject of this Complaint.

12  WACHOVIA transacts business in Santa Clara County, California and at all relevant times

13  promoted, distributed, and sold the Option Arm loans throughout the United States, including

14  Santa Clara County, California. WACHOVIA has significant contacts with Santa Clara

15  County, California, and the activities complained of herein occurred, in whole or in part, in

16  Santa Clara County, California.

17      6.    Defendant, WELLS FARGO BANK,N.A., ("WELLS") is being sued as successor in

18  interest to WACHOVIA, which was merge with and a successor in interest to WORLD

19  SAVINGS BANK, FSB.

20      7.    Defendant, RECON TRUST, N.A. was and is a business organization form

21  unknown. Plaintiff is informed and believes and thereupon alleges that Defendant RECON

22  TRUST, N.A. was and is a corporation and was at all relevant times doing business in Santa

23  Clara County.

24      8.    Defendant, NDEX WEST LLC, was and is a corporation and was at all relevant

25  times doing business in Santa Clara County and headquartered in San Francisco;

26      9.    Defendants, WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB,

27  WACHOVIA MORTGAGE CORPORATION, WELLS FARGO, N.A. and DOES 1 through

28  10, shall hereinafter be referred to collectively as "Defendants."

---

COMPLAINT                             Page 3

1     10.    At all times mentioned herein, Defendants, and each of them, were engaged in the

2   business of promoting, marketing, distributing, and selling the Option Arm loans that are the

3   subject of this Complaint, throughout the United States, including Santa Clara County,

4   California.

5     11.    Plaintiff is informed and believes, and thereon alleges that each and all of the

6   aforementioned Defendants are responsible in some manner, either by act or omission, strict

7   liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of

8   contract or otherwise, for the occurrences herein alleged, and that Plaintiff's injuries, as herein

9   alleged, were proximately caused by the conduct of Defendants.

10     12.    Plaintiff is informed and believes, and thereon alleges, that at all times material

11   hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued

12   herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary,

13   alias, assignee and/or alterego of each of the remaining Defendants and were at all times acting

14   within the purpose and scope of such agency, servitude, joint venture, division, ownership,

15   subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority,

16   consent, approval and ratification of each remaining Defendant.

17     13.    At all times herein mentioned, each Defendant was the co-conspirator, agent,

18   servant, employee, assignee and/or joint venturer of each of the other Defendants and was

19   acting within the course and scope of said conspiracy, agency, employment, assignment and/or

20   joint venture and with the permission and consent of each of the other Defendants. Plaintiff is

21   informed and believes, and thereon alleges, that Defendants, and each of them, are, and at all

22   material times relevant to this Complaint, performed the acts alleged herein and/or otherwise

23   conducted business in California. Defendants, and each of them, are corporations or other

24   business entities, form unknown, have, and are doing business in Santa Clara County.

25     14.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10,

26   inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO

27   underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan

28   originators and/or are assignees to the loans which are the subject of this action. Plaintiff will

---

COMPLAINT                                                    Page 4

1   seek leave of Court to replace the fictitious names of these entities with their true names when

2   they are discovered by Plaintiff herein.

3       15.    The true names and capacities, whether individual, corporate, associate or otherwise,

4   of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff at

5   this time, and Plaintiff therefore sue said Defendants by such fictitious names. Plaintiff

6   alleges, on information and belief, that each Doe defendant is responsible for the actions

7   herein alleged. Plaintiff will seek leave of Court to amend this Complaint when the names of

8   said Doe defendants have been ascertained.

9       16.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned

10  herein, Defendants, and each of them, including without limitation those Defendants herein

11  sued as DOES, were acting in concert or participation with each other, or were joint

12  participants and collaborators in the acts complained of, and were the agents or employees of

13  the others in doing the acts complained of herein, each and all of them acting within the course

14  and scope of said agency and/or employment by the others, each and all of them acting in

15  concert one with the other and all together.

16                          **JURISDICTION AND VENUE**

17      17.    This Court has personal jurisdiction over the parties in this action by the fact that

18  Defendants are either individuals who reside in this District within California or are

19  corporations duly licensed to do business in California and are doing business in Santa Clara

20  County.

21      18.    The real property that is the subject of this Complaint is located in Santa Clara

22  County, California. The subject property is commonly known as 3337 Jericho Lane, San Jose,

23  CA 95117-3031, Assessors Parcel Number 299-23-055. A legal description is attached as

24  Exhibit A.

25              **FACTS COMMON TO ALL CAUSES OF ACTION**

26      19.    WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB, WACHOVIA and

27  WELLS FARGO are amongst the largest financial institutions in the United States.

28

---

COMPLAINT

20.   The instant action arises out of residential mortgage loan transactions in which Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiff, in writing, as required by law.

21.   This action also concerns Defendants' unlawful, fraudulent and unfair business acts or practices. Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers such as Plaintiff who would accept this type of loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers, such as Plaintiff, to lose their homes through foreclosure.

22.   Plaintiff, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants. The Option ARM loan sold to Plaintiff is a deceptively devised financial product. The loan has a variable rate feature with payment caps. The product was sold based on the promise of a low, fixed interest rate, when in fact Plaintiff was charged a different, much greater interest rate than promised. Further, Defendants disguised from Plaintiff the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur. Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans. Defendants' Option ARM loan includes a stiff and onerous prepayment penalty making it extremely difficult to extricate from the loans.

23.   The Option ARM loan Defendants sold to Plaintiff violates the Truth In Lending Act (TILA). TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans. Defendants failed to make these disclosures in connection with the Option ARM loan sold to Plaintiff.

24.   At all times relevant, Defendants promoted their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner. Defendants promoted to the general public a loan which would provide a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Defendants used this "teaser" rate to lure Plaintiff into purchasing Defendants' Option ARM loan product. However, the low fixed rate was illusory, a false promise. Plaintiff and others similarly situated did not receive the benefit

1  of the low rate promised to them. Once signed on to Defendants' loan, the interest rate applied

2  to Plaintiff's loans was immediately and significantly increased.

3      25.    Plaintiff is a consumer who applied for a mortgage loan through Defendants. During

4  the loan application process, in each case, Defendants represented to Plaintiff that in accepting

5  these loan terms, Plaintiff would be able to lower their mortgage payment and save money.

6  Defendants initiated this scheme in order to maximize the amount of the loans issued to

7  consumers and to maximize Defendants' profits.

8      26.    Based on the Defendants' representations, and the conduct alleged herein, Plaintiff

9  agreed to finance his primary residence through Defendants' Option ARM loan. was told he

10  was being sold a home loan with a low interest rate of between 1% and 3.0% interest rate (the

11  "teaser" rate), and that the interest rate was fixed for the first three (3) to five (5) years of the

12  loan. Defendants also informed Plaintiff, and Plaintiff was lead to believe, that if they made

13  payments based on the promised low interest rate, which were the payments reflected in the

14  written payment schedule provided to them by Defendants, the loan was a no negative

15  amortization home loan. Plaintiff's payments were to be applied to their principal loan

16  balances as well as to interest.

17      27.    After, the purported three (3) - five (5) year fixed interest period, Plaintiff reasonably

18  believed, based on the representations contained in the documents Defendant provided to

19  Plaintiff, that they would be able to refinance their loan and get a new loan before their

20  scheduled payments increased. However, the payment schedule provided by Defendants failed

21  to disclose and by omission failed to inform these consumers that due to the negative

22  amortization that was purposefully built into these loans, Plaintiff would be unable to

23  refinance his homes as there would be little or no equity left to refinance.

24      28.    Plaintiff believed these facts to be true because that is what the Defendants wanted

25  consumers to believe. Defendants aggressively sold their product as a fixed, low interest home

26  loan. Defendants knew that if they sold these loans in such a manner, their Option ARM loan

27  product would be a hugely popular and profitable product for them. Defendants also knew,

28  however, that they were selling their product in a false and deceptive manner. While

1   Defendants trumpeted their low, fixed rate loans to the public, Defendants knew their promise

2   of low, fixed interest was illusory.

3       29.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a

4   low, fixed interest rate. Unbeknownst to Plaintiff, the actual interest rate he was charged on

5   his loans was not fixed, was not the low teaser interest rate stated in the loan documentation

6   and was in fact considerably higher than going market rates. And, after purchasing

7   Defendants' Option ARM loan product, Plaintiff did not actually receive the benefit of the

8   low, teaser rate for any substantial length of time.  Immediately, thereafter, Defendants in

9   every instance and for every loan, increased the interest rate they charged Plaintiff. The now-

10  increased interest charges incurred by over and above the fixed interest payment rate were

11  added to the principal balance on Plaintiff's home loan in ever increasing increments,

12  substantially reducing the equity in Plaintiff's home.

13      30.    In stark contrast to this reality, Defendants, through the standardized loan contracts

14  they created and supplied to Plaintiff, Defendants stated that negative amortization was only a

15  possibility and would occur only if the payments were not sufficient. Defendants concealed

16  and failed to disclose the fact that the loan as presented and designed, in fact, *guaranteed*

17  negative amortization.  Defendants failed to disclose and omitted the objectively material fact

18  that negative amortization would occur if the consumer followed the payment schedule set

19  forth by Defendants in the loan documents.  This information was objectively material and

20  necessary for consumers to make an informed decision because this would have revealed that

21  the loan's principal balance would increase if the payment schedule was followed, thereby

22  rendering it impossible to refinance the loan at or around the time the prepayment penalty

23  expired and/or by the time the interest and payment rates re-set. In this respect, Defendants

24  utterly failed to place any warning on the Truth and Lending Disclosure Form about negative

25  amortization.

26      31.    At all times relevant, once Plaintiff accepted Defendants' Option ARM loan

27  contract, he had no viable option by which to extricate himself because these Option ARM

28  loan agreements included a draconian pre-payment penalty for a period of up to three years.

---

COMPLAINT

32.   The Option ARM loans sold by Defendants all have the following uniform characteristics:

(a)  There is an initial low interest rate or "teaser" rate that was used to entice the Plaintiff into entering into the loan. The rate offered was typically 1%-3%;

(b)  The loan has with it a corresponding low payment schedule. The marketing of the loan with the above teaser was intended to misleadingly portray to consumers that the low payments for the first three (3) to five (5) years were a direct result of the low interest rate being offered;

(c)  The initial payments in the required disclosures were equal to the low interest rate being offered. The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule. This portrayal was intended to further mislead Plaintiff into believing that the payments were enough to cover all principal and interest;

(d)  The payment has a capped annual increase on the payment amount; and

(e)  The loan includes a prepayment penalty preventing consumers from securing a new loan for a period of up to five (5) years.

33.   Defendants uniformly failed to disclose and by omission failed inform consumers, including Plaintiff, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty (30) days. Thereafter, the true interest charged on the loans was significantly higher than the rate promised.

34.   Defendants uniformly failed to disclose and by omission failed to inform Plaintiff that the payments set forth in Defendants' schedule of payments were insufficient to cover the actual charges and that this was, in fact, a loan that would cause the Plaintiff to lose the equity they have in their home.

COMPLAINT

35.     Defendants uniformly failed to disclose and by omission failed to inform Plaintiff that when the principal balance increased to a certain level, they would no longer have the option of making the fixed interest payment amount.

36.     Disclosing whether a payment will result in negative amortization is of critical importance to consumers. If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences of negative amortization is a loss of equity. Defendants are and at all times relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely important material information.

37.     At all times relevant, Defendants, and each of them, knew or should have known, or were reckless in not knowing, that: (i) the payment rate provided to Plaintiff was insufficient to pay both interest and principle; (ii) that negative amortization was substantially certain to occur if Plaintiff made payments according to the payment schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiff's residence was substantially certain to occur if Plaintiff made payments according to the payment schedule provided by Defendants.

38.     In spite of its knowledge, Defendants sold its ARM loans as product that would provide Plaintiff with a low interest rate for the first three (3) to five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by making partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur. This concealed and omitted information was not known to Plaintiff and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff. Because the ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note and the payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred. The true facts about Defendants' ARM loans is that they do not provide the low interest rate promised, and are certain to result in negative amortization.

39.     Disclosure of a payment rate that is sufficient to pay both principle and interest on the loans is of critical importance consumers. If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences is that negative amortization or loss of equity will occur. Defendants are and at all times relevant hereto have been aware that the ability of the disclosed payment rate to pay both principle and interest so as to avoid negative amortization is one of the most important terms of a loan.

40.     To this day, Defendants continue to conceal material information from consumers including Plaintiff, and the public, that: (i) the payment rate provided to Plaintiff is and was insufficient to pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiff will suffer negative amortization; and (ii) loss of equity and/or possession of the property is substantially certain to occur if the disclosed payment schedule is followed. Nevertheless, Defendants have refused to clearly and conspicuously disclose to the existence of this important material information and the injury caused thereby, including but not limited to the loss of equity.

41.     In the end, the harm caused by Defendants failures to disclose and omissions grossly outweighs any benefit that could be attributed to them.

42.     Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

43.     The ARM loans have resulted and will continue to result in significant loss and damage to the Plaintiff, including but not limited to the loss of equity Plaintiff has or had in his home.

44.     The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the ARM loans in that Plaintiff and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

45. Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

46. Defendants unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiff or others similarly situated would, in fact, receive a home loan that would actually provide the low interest and payment rate, as promised, for the first three (3) to five (5) years of the loan that is sufficient to pay both principle and interest.

47. Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the United States, including the State of California.

48. On August 23, 2011, an agent of Defendant recorded Substitution of Trustee and Full Reconveyance for a loan with Defendant which originated in 2000.

49. Plaintiff paid this loan in full through a refinance on or about December 3, 2001.

## FIRST CAUSE OF ACTION

### (Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,

### (Against World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage

### Corporation, Wells Fargo Bank, N.A.)

50. Plaintiff incorporates all preceding paragraphs as though fully set forth herein. 15 U.S.C. §1601, *et seq.*, is the Federal Truth in Lending Act ('TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

51. The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which reads:

> §226.1 Authority, purpose, coverage, organization, enforcement and
> liability. . .

COMPLAINT                                                                 Page 12

(b) Purpose. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling . . .

52. Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendants, must comply:

**§226.17. General disclosure requirements.**

Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18.

53. The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing practices.

54. Defendants' Option ARM loan violates TILA because Defendants failed to comply with the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the Federal Reserve Board. Defendants failed in a number of ways to clearly, conspicuously and/or accurately disclose the terms of the Option ARM loan to Plaintiff as Defendants were required to do under TILA. These violations are apparent on the face of the TILA Disclosure Forms.

55. The TILA violations committed by Defendants are more specifically detailed as follows:

**A. Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws**

56. 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate in a clear and conspicuous manner. Further, a misleading

---

COMPLAINT

1    disclosure is as much a violation of TILA as a failure to disclose at all. Defendants failed to

2    meet the disclosure mandates required of them concerning the interest rate Defendants actually

3    applied to Plaintiff's loans, as well as the interest actually charged to Plaintiff.

4        57.    Defendants' disclosure in the Promissory Note concerning the interest rate is, at best,

5    unclear and inconspicuous. At worst, it is intentionally deceptive. In either instance, it is

6    certainly different than the interest rate set forth by Defendants in the TILA Disclosure Form.

7    The interest rate information set forth by Defendants in the Note conflicts with the interest rate

8    information set forth by Defendants in the TILA Disclosure Form.

9        58.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply

10   to the loan for a single month. However, Defendants do not make clear in the Note or

11   anywhere else that this low promised rate (the same rate upon which Defendants base the

12   written payment schedule provided to Plaintiff) is only offered for the first thirty (30) days of

13   the loan. Defendants employ the most convoluted, confusing and circuitous methodology in

14   describing the interest rate. In one part of the Note, Defendants state that the promised low

15   interest rate is the rate until the "change date." A description of the change date is found in

16   another part of the Note. The convoluted and disjointed method employed by which

17   Defendants provide this information makes it extremely difficult, if not impossible for anyone

18   to determine that, in fact, that the change date corresponds to the very first monthly payment

19   Plaintiff made on their loans.

20       59.    The convoluted language used by Defendants to disclose the interest rate on

21   Plaintiff's loans is not clear and conspicuous. Rather, the disclosures used by Defendants were

22   purposefully unclear and meant to mislead and confuse Plaintiff. In particular, it is virtually

23   impossible to discern when Plaintiff would receive the low interest rate they were promised, if,

24   in fact, it can be determined at all. And, the truth is that Plaintiff *never* received the low

25   interest rate, or in some cases received it for only thirty days. Defendants' promise of a low

26   interest rate is and was wholly illusory and the deception, as alleged herein, was uniformly

27   practiced on Plaintiff by Defendants to facilitate sales of their loans to consumers.

28

COMPLAINT

60.    The Note also sets forth the amount of Plaintiff's initial monthly payments. That amount is equal to what the payment would be if the low interest rate promised to Plaintiff by Defendants was true and was being applied to the principal balance on the loans. This is a further deception committed by Defendants, because the real interest rate charged on the loans by Defendants is much higher than the low interest rate promised to Plaintiff. Thus, the payment amount provided by Defendants was intended to and did deceive consumers into falsely believing they would, in fact, receive the teaser interest rate promised to them.

61.    The TILA Disclosure Form is also confusing and deceptive for much the same reason. It shows the scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser" rate Plaintiff were promised. In truth, however, this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiff on their loans.

62.    Defendants' failure to clearly, conspicuously and accurately disclose the actual interest rate applied to Plaintiff's loans, the Notes expressly state and/or implies that Plaintiff's payments will pay off principal and interest on the loan. Based on the payment schedule provided by Defendants in the Note and TILA Disclosure Form, Plaintiff was led to believe that they would be paying off both principal and interest on their loans by making payments according to the payment schedule. The contractual language in the Note only makes sense, and can only be true, if the promised low interest rate actually applied to Plaintiff's loans was, in fact, the "teaser" rate promised by Defendants. Thus, Plaintiff reasonably believed that the low rate promised to them would be applied to his loans. However, the true fact is that the payment schedule provided by Defendants did not pay any principal on the loan at all. The payment schedule provided by Defendants only covered a portion of the interest Defendants charged Plaintiff for these loans.

63.    Taken separately and in totality, all of the unclear and contradictory information given to, and representations made by Defendants, to Plaintiff, violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

---

**B. Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

64.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19. Certain residential mortgage and variable-rate transactions. . . .**
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . .
>
> (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

65.    These required disclosures must be made in the TILA Disclosure Form with the other disclosures. The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and whether unpaid interest *is* being added to principal.

66.    In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps, that the disclosure required a definitive statement about negative amortization:

> 12 CFR Part 226 [Regulation Z; Docket No. R-0863]
>
> Monday, April 3, 1995
>
> AGENCY: Board of Governors of the Federal Reserve System.
>
> ACTION: Final rule; official staff interpretation. "For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs and that the principal balance will increase**)..."
>
> (Found at C.F.R. § 226.19)

1   At all times relevant, statutory and common law in effect make it unlawful for a lender, such

2   as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as

3   well as Regulation Z and TILA.

4       67.    Defendants sold Plaintiff an Option ARM loan which has a variable rate feature

5   with payment caps. Defendants failed to include any reference on the TILA Disclosure Form

6   that there was negative amortization. There is nothing that would indicate to anyone that the

7   loan schedule had negative amortization. The payment schedule makes no reference to

8   negative amortization and makes it appear that the payments cover both principal and interest.

9       68.    In fact, the only place where Defendants even inferentially reference negative

10   amortization is in the Note. However, they mention it in such a way as to make a reasonable

11   person believe that negative amortization is only a possibility, rather than a certainty. And,

12   these loans are, in fact, designed in such a manner so as to make negative amortization an

13   absolute certainty.

14       69.    This attempt at a disclosure did not actually serve to alert or inform the borrowers of

15   anything, much less clearly and conspicuously disclose that the payment schedule provided by

16   Defendants absolutely would not pay both principal and interest, and therefore would

17   guarantee that negative amortization was to occur on these loans. Rather, Defendants made it

18   appear that as long as the payment schedule provided by Defendants was followed, there

19   would be no negative amortization.

20       70.    So, even where any language is found describing negative amortization, the language

21   is misleading and deceptive. In fact, Defendants' Option ARM loan was designed in such a

22   way as to guarantee negative amortization. TILA demands more than a statement that the

23   payment could be less when Defendants were well aware that the payment is less, and would

24   always be less, than the full interest and principal.

25   **C. Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

26   **Rate is Discounted Violates Truth in Lending Laws**

27       71.    As previously stated, the informed use of credit means being able to make decisions,

28   as well as being able to plan an individual's finances. Every month consumers look at their

---

income and budget where their funds must be paid. The biggest investment in one's life is generally that person's home. In fact, it is often referred to as "the American Dream" to own a home.

72.     Variable rate loans are based on a "margin" and an "index." The index is often the Prime Rate or the LIBOR exchange rate. The margin is the amount the lender charges over that rate, basically it is the lender's profit on the loan.

73.     TILA and Regulation Z require disclosures to be clear and conspicuous so people understand what their obligations are. In particular, when the payment is not based on that index and margin a separate disclosure is required. Further, the disclosure must inform the borrower that the payment they are making is not based on what the index and margin really should be in order to avoid negative amortization. The disclosure must also inform that interest rate and payment may go up and clearly and conspicuously provide the circumstances under which the rate and payment will increase.

74.     The Federal Reserve Board established disclosure requirements for variable rate loans. 26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments to borrowers. If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes.

75.     The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because Plaintiff and other consumers similarly situated need this information in order to budget their money.  They need to know if their house payments are going to go up so that they can plan for it. If the change comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their homes.

76.     Defendants, and each of them, state only that the interest rate *may* increase in the future.  However, an interest rate increase was in fact far more certain than this disclosure led Plaintiff to believe. If Defendants had given the Plaintiff the promised low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any change in the index. Thus, the increase in the interest rate on these loans was not just a possibility; it was an

1   absolute certainty and Defendants failed and omitted this material information in their

2   disclosures to Plaintiff.

3       77.   Defendants disclosure statement provided that, the interest rate may increase during

4   the term of this transaction if the index increases. This, however, was not the only

5   circumstance that could cause an increase in the interest rate. The Defendants, and each of

6   them, failed to disclose that the initial interest rate is discounted, creating the possibility of an

7   increase even when the index did not rise. Due to the initial discounted interest rate, the annual

8   interest rate would increase if the index remained constant, or even if the index declined.

9   Because Defendants' disclosure failed to provide this extremely important, material

10   information, Defendants disclosure failed to meet the clear and conspicuous standard

11   mandated under TILA.

12       78.   Defendants failed to disclose to Plaintiff that their rate was, with 100% certainty,

13   going to increase, regardless of whether or not the index upon which their loans are based

14   changed. As such, Defendants violated TILA and Regulation Z with unclear, deceptive and

15   poorly drafted or intentionally misleading disclosure.

16       79.   **D. Defendants' Failure to Disclose the Composite Interest Rate Violates Truth**

17   **in Lending Laws**

18       80.   Defendants provided Plaintiff with multiple, conflicting interest rates when

19   describing the costs of this loan. On the TILA Disclosure Form Defendants set forth one

20   interest rate, while on the Note, Defendants set forth one or two other, different interest rates.

21   The official staff commentary to 226 C.F.R. § 17(C)(8) states:

22       *Basis of disclosures in variable-rate transactions.* The disclosures for a variable-rate

23       transaction must be given for the full term of the transaction and must be based on the

24       terms in effect at the time of consummation. Creditors should base the disclosures only

25       on the initial rate and should not assume that this rate will increase. For example, in a

26       loan with an initial rate of 10 percent and a 5 percentage points rate cap, creditors

27       should base the disclosures on the initial rate and should not assume that this rate will

28       increase 5 percentage points. **However, in a variable-rate transaction with a seller**

COMPLAINT

buydown that is reflected in the credit contract, a consumer buydown, or **a discounted**

**or premium rate, disclosures should not be based solely on the initial terms. In**

**those transactions, the disclosed annual percentage rate should be a composite**

**rate based on the rate in effect during the initial period and the rate that is the**

**basis of the variable-rate feature for the remainder of the term.** (See the

commentary to section 226.17(c) for a discussion of buydown, discounted, and

premium transactions and the commentary to section 226.19(a)(2) for a discussion of

the redisclosure in certain residential mortgage transactions with a variable-rate

feature.)

81.   The reason for this requirement is clear. Consumers cannot make informed decisions

when they cannot compare the cost of credit to other proposals. It is therefore incumbent upon

Defendants to show the composite interest rate in effect so that the borrowers can understand

exactly what they are paying for the loan.

82.   A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the

composite rate in variable rate loans that have a discounted initial rate. The loan sold to

Plaintiff by Defendants is a discounted variable-rate loan. Because Defendants failed to

properly, clearly and conspicuously, disclose a composite annual percentage rate on these

loans Defendants violated TILA and Regulation Z.

83.   As a direct and proximate result of Defendants' conduct in violation of TILA,

Plaintiff has suffered injury an amount to be determined at time of trial. If Defendants had not

violated TILA and had instead properly disclosed the material terms of Defendants' Option

ARM loan product, as alleged herein, Plaintiff would not have entered into the home loan

agreements which are the subject of this action. Because Defendants failed to make proper

disclosures in violation of TILA, Plaintiff now seeks redress in an amount and/or type as

proven at time of trial.

84.   WHEREFORE, Plaintiff is entitled to an order declaring that Defendants violated

TILA, 15 U.S.C. §1601, *et seq.*, that Plaintiff have the right to rescind pursuant to 15 U.S.C. §

1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640, attorneys fees, litigation

1  | costs and expenses and costs of suit, and for an order rescinding Plaintiff's individual

2  | mortgage, and for an order awarding other relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* - "Unlawful" Business Acts or Practices Predicated on Violations of TILA**

**(Against World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage Corporation, Wells Fargo Bank, N.A.)**

85.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

86.   Plaintiff brings this cause of action on behalf of herself against all Defendants for their unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits all unlawful business acts and/or practices.

87.   Plaintiff asserts these claims under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 *et seq.*

88.   The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

89.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, *et seq.*

90.   Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq.* These predicate unlawful business acts and/or practices include Defendants failure to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.*, Regulation Z and Official Staff Commentary issued by the Federal Reserve Board. And, as described in more detail above, Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loan to Plaintiff as required under TILA.

91.   Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

COMPLAINT

92.   As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiff who purchased the ARM loans as described herein.

93.   In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

94.   The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants as described herein. Plaintiff and members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

95.   As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff has lost a yet undetermined amount of equity in their homes. Plaintiff are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

96.   WHEREFORE, Plaintiff is entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful activity.

### THIRD CAUSE OF ACTION

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*,**

**"Unfair" and "Fraudulent" Business Acts or Practices**

**(Against World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage**

**Corporation, Wells Fargo Bank, N.A.)**

97.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

98.   Plaintiff brings this cause of action on behalf of himself against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

---

COMPLAINT

99. Plaintiff asserts these claims as she is a representative of an aggrieved group and as private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

100. The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices. The Plaintiff hereby seeks to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

101. At all times relevant, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each of them, sold Plaintiff a deceptively devised financial product. Defendants sold their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner. Defendants promised that the loan would have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Further, Defendants disguised from Plaintiff the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.

102. Defendants lured Plaintiff into the Option ARM loan with promises of low fixed interest. Once Plaintiff entered into these loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they were promised. After entering these loans, Plaintiff could not escape because Defendants purposefully placed into these loans an extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from these loans. Thus, once on the hook, consumers could not escape from Defendants loans.

---

COMPLAINT

103. Plaintiff applied for a mortgage loan through Defendants. During the loan application process Defendants uniformly represented to Plaintiff that in accepting these loan terms, Plaintiff would be able to lower their mortgage payment and save money.

104. Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e., typically between 1% and 3%. However, Defendants did not disclose that this was just a "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with Defendants. Defendants did not disclose to Plaintiff that the "teaser" rate was not the fixed rate that Defendants would actually charge Plaintiff on their outstanding loan balances.

105. Based on the Defendants' representations and conduct, Plaintiff agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiff was told he was being sold a home loan with a low interest rate, fixed for the first three (3) to five (5) years of the loan. Plaintiff were also lead to believe that if they made payments based on this promised low "teaser" interest rate, and the payment schedule provided to them by Defendants, that the loan was a no negative amortization home loan. After, the fixed interest period, Plaintiff was told their rate "may" change. And, Plaintiff believed they would then be able to re-finance to another home loan. Plaintiff believed these facts to be true because that is what the Defendants wanted consumers to believe, that is what Defendants lead consumers to believe.

106. Defendants aggressively sold their product as a fixed low interest home loan. Defendants knew that if they sold these loans in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them. Defendants also knew, however, that they were marketing their product in a false and deceptive manner. While Defendants trumpeted their low, fixed rate loans to the public, Defendants knew, however, that this was not entirely true.

107. In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate. Unbeknownst to Plaintiff, the actual interest rate they were charged on their loans was not fixed. After purchasing Defendants' Option ARM loan product, Plaintiff never actually received the benefit of the low interest rate promised to them, or, in some cases, consumers received the low rate for just a single month. Immediately, thereafter, Defendants

1    in every instance and for every loan increased the interest rate they charged Plaintiff. Once

2    Plaintiff accepted Defendants' Option ARM loan, they had no viable option to extricate

3    themselves because of these loan agreements included a draconian prepayment penalty.

4        108.    Defendants perpetrated a bait and switch scheme on Plaintiff. Defendants' conduct

5    and failure to disclose the whole truth about the loan's interest rate and to describe the loan as

6    having a fixed interest rate was deceptive and unfair. Defendants initiated this scheme in order

7    to maximize the amount of the loans issued to consumers and to maximize Defendants'

8    profits.

9        109.    The acts, misrepresentations, omissions, and practices of Defendants alleged above

10    constitute unfair, and/or fraudulent business acts and/or practices within the meaning of

11    California Business and Professions Code Sections 17200 et seq.

12        110.    By engaging in the above-described acts and practices, Defendants have committed

13    one or more acts of unfair competition within the meaning of Business and Professions Code

14    Sections 17200, et seq.

15        111.    Defendants' conduct, as fully described above, was likely to deceive members of the

16    consuming public, and at all times, Defendants' failures to disclose and omission of material

17    facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

18        112.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

19    advantage over their competitors.

20        113.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

21    them, received monies and continues to hold the monies expended by Plaintiff and others

22    similarly situated who purchased the ARM loans as described herein.

23        114.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition

24    of a constructive trust over, and restitution of, the monies collected and realized by

25    Defendants.

26        115.    The harm to Plaintiff, members of the general public and others similarly situated

27    outweighs the utility of Defendants' policies, acts and/or practices and, consequently

28

---

COMPLAINT

1   Defendants' conduct herein constitutes an unlawful business act or practice within the

2   meaning of California Business & Professions Code Sections 17200 et seq.

3       116.  The unfair, deceptive and/or fraudulent business practices of Defendants, as fully

4   described herein, present a continuing threat to members of the public to be mislead and/or

5   deceived by Defendants ARM loans as described herein. Plaintiff and other members of the

6   general public have no other remedy of law that will prevent Defendants misconduct as

7   alleged herein from occurring and/or reoccurring in the future.

8       117.  As a direct and proximate result of Defendants' unfair and/or fraudulent conduct

9   alleged herein, Plaintiff have lost thousands if not millions of dollars of equity in their homes.

10  Plaintiff are direct victims of the Defendants' unlawful conduct, and each has suffered injury

11  in fact, and have lost money or property as a result of Defendants' unfair competition.

12      118.  WHEREFORE, Plaintiff are entitled to equitable relief, including restitution,

13  restitutionary disgorgement of all profits accruing to Defendants because of their unfair,

14  fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and

15  a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful

16  activity.

## FOURTH CAUSE OF ACTION

### Breach of Contract

**(Against World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage Corporation, Wells Fargo Bank, N.A.)**

21      119.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

22      120.  Plaintiff entered into a written home loan agreement – the contract or Note -- with

23  Defendants. The Note was drafted by Defendants and could not be modified by Plaintiff.. The

24  Note describes terms and respective obligations applicable to the parties herein.

25      121.  The Note describes Plaintiff's interest rate on the loan as a low interest rate, typically

26  between 1% and 3%. In addition, as required by federal law, the Defendants provided a Truth

27  In Lending Disclosure concerning the home loan agreement that shows a payment schedule

28  based on that low 1% to 3% interest rate. For the first three (3) to five (5) years the payment

COMPLAINT

1  schedule shows that Plaintiff's monthly payment obligations to Defendants are the exact

2  payments necessary to pay off all principal and interest during the terms of the loans if, indeed,

3  the interest rate actually charged by Defendants on the loans was the low interest rate

4  promised.

5      122. Defendants drafted the Note and did not allow Plaintiff any opportunity to make

6  changes to the Note and due to Defendants superior bargaining position, the Note was offered

7  on a take it or leave it basis. As such, the Notes at issue are contracts of adhesion.

8      123. Defendants expressly and/or through their conduct and actions agreed that Plaintiff's

9  monthly payment obligations would be sufficient to pay both the principal and interest owed

10  on the loans. Defendants breached this agreement and never applied any of Plaintiff's

11  payments to principal.

12      124. The written payment schedules prepared by Defendants, and applicable to loans,

13  show that the payment amounts owed by Plaintiff to Defendants in year one are exactly equal

14  to the amount required to pay off the loan if, indeed, the interest actually charged on the loan

15  was the low interest rate promised. If the Defendants did as promised, the payments would

16  have been sufficient to pay both principal and interest amounts.

17      125. Instead, Defendants immediately raised Plaintiff's interest rates and applied *no part*

18  of Plaintiff's payments were applied to the principal balances on their loans. In fact, because

19  Defendants charged more interest than was agreed to and payments, as disclosed by

20  Defendants, were, at all times relevant, insufficient to cover the interest charge and thus

21  principal balances increased (which is the negative amortization built into the loan).

22      126. Defendants breached the written contractual agreement by failing to apply any

23  portion of Plaintiff's monthly payments towards their principal loan balances.

24      127. Plaintiff, on the other hand, did all of those things the contract required of them.

25  Plaintiff made monthly payments in the amount required by the terms of the Note and

26  reflected in the payment schedule prepared by Defendants.

27      128. As a result of Defendants' breach of the agreement, Plaintiff have suffered harm.

28  Plaintiff have incurred additional charges to their principal loan balance. Plaintiff have

COMPLAINT                                    Page 27
EXHIBIT A to Notice of Removal
Page No. 45

1  incurred and will continue to incur additional interest charges on the principal loan balance

2  and surplus interest added to Plaintiff's principal loan balance. Furthermore, Defendants'

3  breach has placed Plaintiff in danger of losing their homes through foreclosure, as Defendants

4  have caused Plaintiff's principal loan balances to increase and limited these consumers' ability

5  to make their future house payments or obtain alternative home loan financing.

6      129.   At all times relevant, there existed a gross inequality of bargaining power between

7  the parties to the ARM loan contracts. At all times relevant, Defendants unreasonably and

8  unconscionably exploited their superior bargaining position and foisted upon Plaintiff

9  extremely harsh, one-sided provisions in the contract, which Plaintiff were not made aware of

10  and did not comprehend (*e.g.* Defendants fraud and failures to clearly and conspicuously

11  disclose as alleged herein), and which attempt to severely limit Defendants obligations under

12  the contracts at the expense of Plaintiff, as alleged herein. As a result of these extremely harsh,

13  onesided provisions, including but not limited to the provisions which seek to limit the

14  "teaser" interest rate for one month or less, these provisions are unconscionable and therefore

15  unenforceable.

16      130.   WHEREFORE, Plaintiff are entitled to declaratory relief, compensatory damages

17  proximately caused by Defendants breach of contract as alleged herein, prejudgment interest,

18  costs of suit and other relief as the Court deems just and proper.

### FIFTH CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**(Against World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage**

**Corporation, Wells Fargo Bank, N.A.)**

23      131.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

24      132.   Defendants entered into written agreements with Plaintiff based on representations

25  Defendants made directly and indirectly to Plaintiff about the terms of their loans.

26      133.   Defendants expressly and impliedly represented to Plaintiff that they would provide

27  loans secured by Plaintiff's homes, and that the loans would have a fixed interest rate at

28  promised low interest rate for a period of three (3) to five (5) years.

COMPLAINT

134. Defendants also represented that if Plaintiff made the monthly payments in the amount prescribed by Defendants that no negative amortization would occur. The Note expressly states and/or implies that Plaintiff's monthly payment obligation will be applied to pay both principal and interest owed on the loan. The Note further states that for each monthly payment Plaintiff interest shall be paid before principal.

135. The written payment schedules prepared by Defendants, and applicable to Plaintiff's loans, show that the payment amounts owed by Plaintiff to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants acted as it promised, the payments would have been sufficient to pay both principal and interest.

136. Instead, Defendants immediately raised Plaintiff's interest rate and applied *no part* of Plaintiff's payment to principal. In fact, because Defendants charged more interest than was disclosed and agreed to in the loans, Plaintiff payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal owed on their homes.

137. Defendants unfairly interfered with Plaintiff's rights to receive the benefits of the contract. These loans will cost Plaintiff thousands of dollars more than represented by Defendants. Plaintiff did not receive the fixed low interest rate home loan promised them by Defendants. Defendants have caused Plaintiff\ to lose equity in their homes and therefore have denied Plaintiff 43the enjoyment, security of one of their most important investments.

138. Plaintiff, on the other hand, did all of those things the contract required of them. Plaintiff made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

139. At all times relevant, Defendants unreasonably denied Plaintiff the benefits promised to them under the terms of the Note, including but not limited to a low interest rate for the first three (3) to five (5) years of the loan, and clear and conspicuous disclosure of a payment amount sufficient to pay both principle and interest so as to avoid negative amortization and the other failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C.

COMPLAINT

Page 29

1  §1601, et seq., Regulation Z and Official Staff Commentary issued by the Federal Reserve

2  Board as alleged herein.

3     140.  Knowing the truth and motivated by profit and market share, Defendants have

4  knowingly and willfully breached the implied covenant of good faith and fair dealing by

5  engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly

6  situated as alleged herein.

7     141.  Defendants breaches, as alleged herein were committed with willful and wanton

8  disregard for whether or not Plaintiff or others similarly situated would actually receive a

9  home loan that would provide the promised low interest and payment rate for the first three (3)

10  to five (5) years of the loan sufficient to pay both principle and interest.

11     142.  Upon information and belief and at all times relevant, Defendants possessed full

12  knowledge and information concerning the above facts about the ARM loans, and otherwise

13  sold these ARM loans throughout the United States, including the State of California.

14     143.  Defendants' placing of their corporate and/or individual profits over the rights of

15  others is particularly vile, base, contemptible, and wretched and said acts and/or omissions

16  were performed on the part of officers, directors, and/or managing agents of each corporate

17  defendant and/or taken with the advance knowledge of the officers, directors, and/or managing

18  agents who authorized and/or ratified said acts and/or omissions. Defendants thereby acted

19  with malice and complete indifference to and/or conscious disregard for the rights and safety

20  of others, including Plaintiff and the General Public.

21     144.  At all times relevant, Defendants' conduct, as alleged herein, was malicious,

22  oppressive, and/or fraudulent.

23     145.  As a result of Defendants' conduct, Plaintiff has suffered harm.

24     146.  Plaintiff has incurred additional charges to their principal loan balance. Plaintiff has

25  incurred and will continue to incur additional interest charges on the principal loan balance

26  and surplus interest added to Plaintiff's \ principal loan balance. Furthermore, Defendants'

27  breach has caused and/or otherwise placed Plaintiff in danger of losing their homes through

28  foreclosure and, as a direct and proximate result of said misconduct, caused Plaintiff's

COMPLAINT

1   principal loan balances to increase limiting these consumers' ability to make their future house

2   payments or obtain alternative home loan financing.

3      147. WHEREFORE, Plaintiff are entitled to declaratory relief, all damages proximately

4   caused by Defendants breach of the implied covenant of good faith and fair dealing as alleged

5   herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court

6   deems just and proper.

7                 **SIXTH CAUSE OF ACTION**

8   **Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq.*,**

9   **–"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial**

10                      **Code § 22302**

11   **(Against World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage**

12              **Corporation, Wells Fargo Bank, N.A.)**

13      148. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

14      149. Plaintiff brings this cause of action on behalf of herself, against all Defendants for

15   their unlawful business acts and/or practices pursuant to California Business and Professions

16   Code Sections 17200 *et seq.*, which prohibits all unlawful business acts and/or practices.

17      150. Plaintiff asserts these claims as she is a representative of an aggrieved group and as a

18   private attorney general on behalf of the general public and other persons who have expended

19   funds that the Defendants should be required to pay or reimburse under the equitable and

20   restitutionary remedies provided by California Business and Professions Code Sections 17200

21   *et seq.*

22      151. The unlawful acts and practices of Defendants alleged above constitute unlawful

23   business acts and/or practices within the meaning of California Business and Professions Code

24   Sections 17200 et seq.

25      152. By engaging in the above-described acts and practices, Defendants have committed

26   one or more acts of unfair competition within the meaning of Business and Professions Code

27   Sections 17200, et seq.

28

153. Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq.* These predicate unlawful business acts and/or practices include Defendants violation of California Financial Code § 22302.

154. California Financial Code § 22302 applies to consumer loan contracts. It states that a loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be deemed to be a violation of Financial Code § 22302.

155. The loan contracts prepared by Defendants and entered into between Plaintiff and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

156. The relative bargaining power between Plaintiff and Defendants was unequal. Plaintiff could not negotiate or change any of the particular terms related to the loan and drafted by Defendants. To secure the loan Plaintiff were given no choice but to make payments as described in the payment schedule and to accept and sign all the associating documents numbering over a hundred pages.

157. The period of time where Defendants offered Plaintiff a low interest rate, often was for only one month. Because Defendants packaged the loan contracts in such a manner as to lead Plaintiff to believe that they had a low interest rate and therefore low payments for three to five years, Plaintiff would end up owing significantly more principle on their homes than before they entered the contracts and with a significant chance of losing their homes through foreclosure.

158. Defendants drafted the subject ARM loan contracts for use on tens of thousands of individuals. The loan process was such that individual terms of the contract could not be modified. The standardized loan contracts were delivered to Plaintiff at the time of signature. The loan process offered by Defendants did not permit for any meaningful negotiation of terms or even review of the loan documents at the time of execution.

159. Defendants further inserted into the subject ARM loan contracts a draconian prepayment penalty that has as it sole purpose to cause Plaintiff to continue under the terms of their loans or lose thousands of dollars if Plaintiff try to refinance the loans.

COMPLAINT

160. The standardized loan contracts drafted by Defendants were so harsh and one-sided that they could only lead Plaintiff to one result, a significant loss of money. As a result of Defendants' unreasonable and unconscionable conduct, as alleged herein, Plaintiff have suffered direct and actual injury.

161. Because Defendants' Option ARM loan contract is unconscionable pursuant to Section 1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and constitutes a violation of the UCL.

162. As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the ARM loans as described herein.

163. In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

164. The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants as described herein. Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

165. As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff has lost thousands of dollars of equity in their homes. Plaintiff is the direct victim of the Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

166. WHEREFORE, Plaintiff is entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful activity.

## SEVENTH CAUSE OF ACTION

### (Accounting to Plaintiff Against All Defendants)

167. Defendant and Plaintiff entered into forbearance agreements previously.

168. Plaintiff made payments to Defendant under the forbearance agreement.

169. Plaintiff believes and thereon alleges the payments were not credited to his account pursuant to the forbearance agreement and the Note and/or Contract.

170. Additionally, Defendant Wells Fargo recorded Substitution of Trustee and Full Reconveyance on August 23, 2011. A copy of this document is attached as Exhibit E.

171. The Plaintiff believes was paid in full on or about December 31, 2001.

172. It is unclear if Plaintiff's payments have been erroneously applied to this loan or the current loan.

173. The amount of money defendant owes to plaintiff is unknown to Plaintiff and cannot be ascertained without an account.

## EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

174. Plaintiff incorporates all proceeding paragraphs as though fully set forth herein.

175. At all times relevant, Defendants created, accepted and acted in a fiduciary relationship of great trust and acted for and were the processors of property for the benefit of Plaintiff.

176. Defendants, and each of them, further placed themselves in a position of trust by virtue of the expertise represented by and through their employees and agents.

177. Defendants, and each of them, breached their fiduciary duties owed to Plaintiff as they acted and continued to act for their own benefit and to the detriment of the Plaintiff.

178. Defendants, and each of them, breached their fiduciary duties owed to Plaintiff by placing and negotiating a series of loans without due care to the best interest of Plaintiff or for the prosecution of his rights.

179. As a direct and proximate result of the breach of fiduciary duties, Plaintiff has suffered economic damages and loss of funds and payment of fees improperly incurred and/or allocated in an amount to be proved at trial, and clouded the Plaintiff's ownership of the Property.

COMPLAINT ·     Page 34
EXHIBIT A to Notice of Removal
Page No. 52

180.  Plaintiff is informed and believes Defendants have acted willfully, maliciously, oppressively, and fraudulently and in conscious disregard for the rights of Plaintiff and as such, Plaintiff is entitled to punitive damages among other remedies.

### Ninth Cause of Action

### (Breach of Covenant of Good Faith and Fair Dealing)

### (Against All Defendants)

181.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

182.  Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of this agreement.  The Covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish that purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered the agreement.

183.  Plaintiff alleges that at all times there existed an implied covenant of good faith and fair dealing represented by the terms of the loan, Note and Deed of Trust which imposed upon Defendants a duty of good faith and fair dealing in this matter to safeguard, protect or otherwise care for the assets and rights of Plaintiff to make all required statutory disclosures.  Said covenant prohibited Defendants from activities interfering with or contrary to the rights of Plaintiff.

184.  Plaintiff is informed and believes and thereon alleges, Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants:

    (a)  Failed to provide all the proper disclosures;

    (b)  Failed to provide accurate lending disclosures on the ARM loan;

    (c)  Attempted and did place Plaintiff into usurious transactions that any reasonable mortgage broker or mortgage lender would know would ruin Plaintiff financially, or attempted to profit from servicing these loans when it was obvious that they were not entirely legitimate;

COMPLAINT

Page 35

1        (d) Misapplied payments on an ongoing basis for over two years in a way that was

2            not in accordance to the agreement and subsequent forebearance

3            agreements.

4        185.  As a result of Defendant's breach of covenant, Plaintiff has suffered the threatened

5    loss of possession of real property. Plaintiff has incurred and continues to incur attorney's

6    fees and other costs and expenses to right this wrong.

7        186.  Defendants' actions in this matter have been willful, knowing, malicious, fraudulent

8    and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish

9    Defendants and deter others from engaging in the same behavior.

10   **NINTH CAUSE OF ACTION**

11   **(Quiet Title)**

12   **(Against All Defendants)**

13       187.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

14       188.  Defendants claimed an adverse interest to Plaintiff's title in the property. In

15   particular, they claim a right to collect payments indicated by the Deed of Trust, including a

16   loan which was satisfied in full through a refinance of the property.

17       189.  Plaintiff seeks a determination of his fee simple title clear of all encumbrances as of

18   the date of the Complaint is filed.

19       190.  Additionally, Plaintiff seeks attorneys' fees pursuant to the deed of trust for having

20   to bring this action.

21   **TENTH CAUSE OF ACTION**

22   **(Injunctive Relief)**

23   **(Against All Defendants)**

24       191.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

25       192.  Upon proof of the claims set forth herein, Plaintiff has a strong likelihood of

26   prevailing on the merits of this case. As set forth above, Plaintiff has been threatened with a

27   foreclosure sale of his residential property, which property is unique and cannot be placed.

28

193.   Plaintiff is informed and believes and thereon alleges that the foreclosure is wrongful because Plaintiff has, by operation of law due to the violations set forth herein above, demonstrated the loan transaction was void ab initio and because the loan is an abusive and unlawful predatory loan containing provisions prohibited by state law, as alleged above.

194.   Plaintiff is informed and believes that Defendants will proceed with a Trustee Sale of the Property pursuant to the Deed of Trust, Notice of Default and Notice of Trustee's Sale unless and until restrained and enjoined by the Order of this Court.  Foreclosure will cause irreparable injury to Plaintiff in that he will suffer the loss of the real property, which cannot be compensated by monetary damages.

195.   This Court has authority under California CCP §526 (a) (1)-(3) to issue a preliminary injunction enjoining Wells Fargo from proceeding with the trustee's sale.  CCP 526(a) provides that an injunction may be issued for the following reasons:

> (a)  When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in retaraining the commission or continuance of the act complainted of, either for a limited period or perpetually.

> (b)  When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action.

> (c)  When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual.

196.   Here, the Court can apply all three criteria providing the Plaintiff with an injunctive order and/or temporary restraining order.  Plaintiff can show through the complaint that the Plaintiff is entitled to prevail over the banks.  AS TO CCP §526(a)(2), irreparable injury would be done to Plaintiff, who is an elderly gentleman, should he be forced to move out of his primary residence where he has resided for over ten years.  Finally, as to CCP § 526(a)(3),

COMPLAINT

1    Wells Fargo, by and through its agent, including but not limited to NDEX West, LLC, a party

2    to this action, is attempting to violate the rights Plaintiff is attempting to protect with this

3    action.  Should Defendants be permitted to proceed with the non-judicial foreclosure, it would

4    render the Court's judgment herein as to the ownership of the subject property ineffectual.

5         197.   Additionally, a controversy exists between the parties concerning their respective

6    rights of the parties with respect to the validity and enforceability of the foreclosure of the

7    subject property, wherein the Plaintiff assets that the scheduled trustee's sale was improperly

8    noticed pursuant to California Civil Code Section 2923.5 and the Defendants contend to the

9    contrary.

10        198.   To obtain full resolution of this dispute, the Court must declare and determine the

11   rights of the parties hereto.

12        199.   Plaintiff files his affidavit simultaneously herewith in compliance with California

13   §CCP 527.6(c) and for purposes of requesting the immediate issuance of a temporary

14   restraining order in conjunction with cancelling the scheduled November 7, 2011 non-judicial

15   foreclosure Trustee's sale.

16        200.   As Defendants cannot demonstrate any harm, damages or impairment of any interest

17   with the granting of the requested relief, no bond should be required of Plaintiff as a

18   prerequisite to this Court's granting of the relief requested herein.

19        201.   Any sale is wrongful and should be enjoined by virtue of the facts alleged in this

20   Complaint and Plaintiff has no other plan, speedy or adequate remedy, and the injunctive relief

21   prayed for herein is necessary and appropriate at this time to prevent irreparable loss to

22   Plaintiff's interest.

23        202.   Plaintiff is entitled to a preliminary and permanent injunction

24   restraining and enjoining defendants, their agents, employees, representatives, and

25   anyone acting on their behalf, at the direction, or in concert with them from committing,

26   permitting or performing directly or indirectly, any of the following acts regarding the

27   property:

28

COMPLAINT

    a.  Proceeding to hold any foreclosure sale or taking any steps to hold a foreclosure sale;

    b.  Taking any steps to foreclose upon the real property;

    c.  Assigning, selling, deeding, and/or granting the Deed of Trust and/or Loan Agreement.

203.  The legislature enacted a new bill to face what it states as: California is facing an unprecedented threat to its state and local economies due to skyrocketing residential property foreclosures rates in California.  Those high foreclosure rates have adversely affected property values in California, and will have a even a greater adverse consequences as foreclosures rates continue to rise (HR ABX 2 7 Chaptered, California Foreclosure Prevention Act).

204.  It is essential to the economic health of California for the state to ameliorate the deleterious effects that will result from the continued high rate of foreclosure of residential properties by modifying the foreclosure process to provide for additional time for borrowers to work out loan modifications while providing an exemption for mortgage loan servicers that have implemented a comprehensive loan modification program.  This change in accessing the state's foreclosure process is essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market if the foreclosures can be avoided through a loan modification.  Those additional foreclosures could further destabilize the housing market with significant, corresponding deleterious effects on the local and state economies.

205.  The bill would provide that a person who violates these provisions is deemed to have violated his or her license law.  It does not apply to loans serviced by a mortgage loan servicer if that mortgage loan services has obtained a temporary or final order of exemption pursuant to Section 2923.53 that is current and valid at the time the notice of sale is given and changed to read: 2923.53.  (a) A mortgage loan services that has implemented a comprehensive loan modification program that meets the requirements of this section shall have the loans that it services exempted from the provisions of Section 2923.53, upon order of the commissioner.

---

COMPLAINT

A comprehensive loan modification program shall include all, and a combination of the following features:

    (a) An interest rate reduction, as needed, for a fixed term of at least five years;

    (b) An extension of the amortization period for the loan term, to no more than 40 years from the original date of the loan;

    (c) Deferral of some portion of the principal amount of the unpaid principal balance until maturity of the loan;

    (d) Reduction of principal;

    (e) Compliance with a federally mandated loan modification program;

    (f) Other facts that the commissioner determines are appropriate.  In determining those facts, the commissioner may consider efforts implemented in other jurisdictions that have resulted in a reduction in foreclosures.

206.  When determining a loan modification solution for the borrower under loan modification program, the servivcer seeks to achieve long-term sustainability for the borrower.

207.  Merely having a modification program does not excuse the bank's license or charter pursuant to the Act.  The program must be both available and adhered to diligently for the legislature's intent in addressing this crisis to have any meaning.  Here, the banks and servicers, trustees and assignees, miscalculated the homeowners income to the homeowners detriment and without excuse.

208.  The inherent equitable powers of the court, legislative enactments and common law doctrines permit this Court to act prudentially in the aid of this homeowner.  The California Foreclosure Prevention Act is vital to the stabilization of our economy and the preservation of our communities.  The loan should either be modified under the legislatures guidelines or absolved for the bank's acting in bad faith.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:

1.  For actual damages according to proof;

2.  For compensatory damages as permitted by law;

3.  For consequential damages as permitted by law;

4.  For statutory damages as permitted by law;

5.  For punitive damages as permitted by law;

6.  For rescission;

7.  For equitable relief, including restitution;

8.  For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair competition;

9.  For interest as permitted by law;

10. Enjoining Defendants during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of the Real Property;

11. For Declaratory Relief;

12. For an accounting between Plaintiff and Defendant determining the amount, if any, that is owed to Defendant;

13. For reasonable attorneys' fees and costs; and

14. For such other relief as is just and proper.

STEBURG LAW FIRM

Dated: October 31, 2011

ANITA L. STEBURG, Attorney for
Plaintiff JERRY PUTZ

COMPLAINT