1  Robert A. Bailey (# 214688)
     rbailey@afrct.com
2  Grace Kang (# 229464)
     gkang@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
     CAMPBELL & TRYTTEN LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Telephone:  (626) 535-1900
   Facsimile:   (626) 577-7764
6
7  Attorneys for Defendant
   WELLS FARGO BANK, N.A., successor
   by merger with Wells Fargo Bank
8  Southwest, N.A., f/k/a Wachovia Mortgage,
   FSB and World Savings Bank, FSB ("Wells
9  Fargo") (named herein as "World Savings,
   Inc.; Wachovia Mortgage Corporation;
10 Wells Fargo Bank, N.A.")

11                    UNITED STATES DISTRICT COURT
12
        NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION
13

14 JERRY PUTZ,                          CASE NO.:  5:11-CV-05677-LHK

15          Plaintiff,                  [The Honorable Lucy H. Koh]

16 v.                                   **DEFENDANT WELLS FARGO'S**
                                        **REQUEST FOR JUDICIAL NOTICE IN**
17 WORLD SAVINGS, INC.; WACHOVIA        **SUPPORT OF MOTION TO DISMISS**
   MORTGAGE CORPORATION, WELLS          **PLAINTIFF'S COMPLAINT**
18 FARGO BANK, N.A.; NDeX WEST, LLC;
   RECON TRUST COMPANY, N.A.; and       Date:       September 20, 2012
19 DOES 1 through 50, inclusive,        Time:       1:30 p.m.
                                        Ctrm:       8, 4th Floor
20          Defendants.

21

22 TO PLAINTIFF AND HIS COUNSEL OF RECORD:

23          Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, defendant WELLS FARGO

24 BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as

25 Wachovia Mortgage, FSB and World Savings Bank, FSB ("Wells Fargo") (named herein as

26 "World Savings, Inc.; Wachovia Mortgage Corporation; Wells Fargo Bank, N.A."), requests

27 judicial notice of the following documents submitted in support of Wells Fargo's motion to

28 dismiss plaintiff's Complaint:

*(left margin, vertical text)* ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1.      Adjustable Rate Mortgage Note signed and dated December 28, 2006 by plaintiff Jerry D. Putz; a true and correct copy is attached as **Exhibit A**.

2.      Deed of Trust signed and dated December 28, 2006 by plaintiff Jerry D. Putz and recorded in the official records of the Santa Clara County Recorder's Office on January 5, 2007 as Document No. 19252528; a true and correct copy is attached as **Exhibit B**.

3.      Certificate of Corporate Existence dated April 21, 2006, Office of Thrift Supervision, Department of the Treasury; a true and correct copy is attached as **Exhibit C**.

4.      Letter dated November 19, 2007, Office of Thrift Supervision, Department of the Treasury; a true and correct copy is attached as **Exhibit D**.

5.      Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.; a true and correct copy is attached as **Exhibit E**.

6.      Notice of Default dated July 13, 2011 and recorded in the official records of the Santa Clara County Recorder's Office on July 15, 2011 as Document No. 21239734; a true and correct copy is attached as **Exhibit F**.

7.      Notice of Trustee's Sale dated October 10, 2011 and recorded in the official records of the Santa Clara County Recorder's Office on October 12, 2011 as Document No. 21360730; a true and correct copy is attached as **Exhibit G**.

8.      Order (1) Granting Final Approval of Class Action Settlement; (2) Addressing Objections; (3) Denying Motion to Intervene; (4) Approving Service Payments to Class Representatives; and (5) Awarding Attorneys' Fees and Costs in the matter entitled *In Re Wachovia Corporation "Pick-A-Payment" Mortgage Marketing And Sales Practice Litigation*, United States District Court For The Northern District of California Case No. 5:09-md-02015-JF; a true and correct copy is attached as **Exhibit H**.

9.      Declaration of Jeffrey Burns in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement in the matter entitled *In Re Wachovia Corporation "Pick-A-Payment" Mortgage Marketing And Sales Practice Litigation*, United States District Court For

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

The Northern District of California Case No. 5:09-md-02015-JF; a true and correct copy is attached as **Exhibit I**.

10.    Judgment in the matter entitled *In Re Wachovia Corporation "Pick-A-Payment" Mortgage Marketing And Sales Practice Litigation*, United States District Court For The Northern District of California Case No. 5:09-md-02015-JF; a true and correct copy is attached as **Exhibit J**.

Grounds for judicial notice of Exhibit A are that this is a document that is referred to in the complaint or which form the basis of Plaintiff's claims, and their authenticity is not believed to be in question.  A court may consider evidence on which the complaint "necessarily relies" if (1) the complaint refers to the document; (2) the document is central to the Plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (plaintiff may not deliberately omit references to documents upon which his claim is based to survive a 12(b)(6) motion); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (documents that are not attached to the complaint may be incorporated by reference if the plaintiff has referred to the document in the complaint or if the document forms the basis of the plaintiff's claims).

Grounds for judicial notice of Exhibits B, F and G are that they are true and correct copies of official records of the Santa Clara County Recorder's Office, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing Co.*, Case No. 09-0007, 2009 U.S. Dist. LEXIS 19613, at *4-10 (N.D. Cal. Mar. 12, 2009) (court took judicial notice of recorded documents related to the foreclosure sale, including grant deed and deed of trust; "[t]hese documents are also part of the public record and are easily verifiable.  *See Fed. R. Evid. 201(b); Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992)*).

/ / /

/ / /

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Grounds for judicial notice of Exhibits C and E are that these documents reflect official acts of United States' executive departments. *Hite v. Wachovia Mortgage*, Case No. 2:09-cv-02884, 2010 U.S. Dist. LEXIS 57732, at *6-9 (E.D. Cal. June 10, 2010) (court took judicial notice of Exhibits C through E).

Grounds for judicial notice of Exhibits H through J are that these documents are true and correct copies of official records of the United States District Court for the Northern District of California and United Sates Court of Appeals for the Ninth Circuit.

Respectfully submitted,

Dated:  May 18, 2012

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By:  __/s/ Grace B. Kang__
    Grace B. Kang
    gkang@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB and World Savings Bank, FSB ("Wells Fargo") (named herein as "World Savings, Inc.; Wachovia Mortgage Corporation; Wells Fargo Bank, N.A.")

EXHIBIT A

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT[SM] LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER REDACTED                                        DATE  December 28, 2006

BORROWER(S)    JERRY D PUTZ, AN UNMARRIED MAN    sometimes called "Borrower" and sometimes simply called "I" or "me "

PROPERTY ADDRESS  3337 JERICHO LN, SAN JOSE, CA  95117-3031

1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S  $550,000 00 , called "Principal," plus interest, to the order of the Lender  The Lender is WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred

2.  INTEREST

(A)    Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid  I will pay interest at the yearly rate of 6 750%  The interest rate I will pay may change as described in this Section 2  Interest will be charged on the basis of a twelve month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note

(B)    Interest Change Dates

The interest rate I will pay may change on the 15th day of February, 2007 and on the same day every month thereafter  Each date on which my interest rate could change is called an "Interest Change Date "  The new rate of interest will become effective on each Interest Change Date

(C)    Interest Rate Limit

My lifetime maximum interest rate limit is 11 950%, called "Lifetime Rate Cap "


0 0 1
LENDER'S USE ONLY

SD253A (2006-09-2)                ADJUSTABLE PICK-A-PAYMENT NOTE              CA
                                         Page 1

EXHIBIT A TO RJN ISO MTD
PAGE  5

REDACTED

**(D) Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit amounts owed by GDW or its Subsidiaries to other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E) Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding 2.100 percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F) Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F) the Index is not "available" if: (a) the Index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became inapplicable to this Note, or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the 15th day of each month beginning on **February 15, 2007**. I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument. If, on **January 15, 2037**, I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 1,896.17**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the 15th day of **February, 2008** and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

SD253B (2006-09-2)    [Bin (2006-09-2)]         ADJUSTABLE PICK-A-PAYMENT NOTE         CA
0004                                                    Page 2

REDACTED

**(E)  Deferred Interest; Additions to My Unpaid Principal**
From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)  Payment Cap Limitation; Exceptions**
Beginning with the 10th Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)  Notice of Payment Changes**
The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.  FAILURE TO MAKE ADJUSTMENTS**
If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.  MAXIMUM LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**
  **(A)  Late Charges for Overdue Payments**
If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be 5.00% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

EXHIBIT A TO RJN ISO MTD
PAGE  7

Jul 28 11 01:49p
(Page 4 of 6)

RECEIVED    07/28/2011  14:01                                    p.4

REDACTED

(B)  Default

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

(C)  Notice of Default

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument

(D)  No Waiver by Lender

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

(E)  Payment of Lender's Costs and Expenses

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs

8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at 3337 JERICHO LN, SAN JOSE, CA  95117-3031, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address or in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note

10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

11.  SECURED NOTE - ACCELERATION

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

EXHIBIT A TO RJN ISO MTD
PAGE 8

REDACTED

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

    (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

    (ii)    Lender approves the creditworthiness of the transferee in writing,

    (iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

    (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under this Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

    (v)    the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

### 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note

### 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents" contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

### 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

EXHIBIT B

RECORDING REQUESTED BY
FIRST AMERICAN TITLE

RECORDING REQUESTED BY:
**WORLD SAVINGS BANK**


WHEN RECORDED MAIL TO:
**WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548**

LOAN NUMBER:REDACTED

NOTE AMOUNT: **$550,000.00**

3161740-LA

---

**DOCUMENT: 19252528**

| | Pages: 17 |
|---|---|
| Fees... | 57 00 |
| Taxes. | |
| Copies. | |
| AMT PAID | 57 00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
First American Title Company

RDE # 007
1/05/2007
8:00 AM

**FOR RECORDER'S USE ONLY**

---

# DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $687,500.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

---

I. **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
   **(A)**  **Security Instrument.** This Deed of Trust, which is dated **December 28, 2006,** will be called the "Security Instrument."

   **(B)**  **Borrower.** JERRY D PUTZ, AN UNMARRIED MAN  sometimes will be called "Borrower" and sometimes simply "I" or "me."

   **(C)**  **Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is  **1901 Harrison Street, Oakland, CA 94612** .

0  0  3

**LENDER'S USE ONLY**

SD001A (2004-03-3)
DEFERRED INTEREST

CA

Page 1

REDACTED

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$550,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **January 15, 2037** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The Property which is located at **3337 JERICHO LN, SAN JOSE, CA  95117-3031**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

EXHIBIT B TO RJN ISO MTD
PAGE 11

REDACTED

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

IV.    **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

COVENANTS

I promise and I agree with Lender as follows:

1.    **BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.    **PAYMENTS FOR TAXES AND INSURANCE**

    **(A)    Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

EXHIBIT B TO RJN ISO MTD
PAGE 12

REDACTED

**(B)      Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

CA

REDACTED

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)                                                                                              CA

**EXHIBIT B TO RJN ISO MTD
PAGE 14**

REDACTED

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

EXHIBIT B TO RJN ISO MTD
PAGE 15

REDACTED

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)

CA

EXHIBIT B TO RJN ISO MTD
PAGE 16

REDACTED

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

    **(A)    Borrower's Obligations**

        Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

        Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

    **(B)    Lender's Rights**

        Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

        Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

        Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

        Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12. MAXIMUM LOAN CHARGES**

        If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

REDACTED

### 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 3337 JERICHO LN, SAN JOSE, CA 95117-3031. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. GOVERNING LAW; SEVERABILITY

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16. BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

EXHIBIT B TO RJN ISO MTD
PAGE 18

REDACTED

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.     CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.     CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

EXHIBIT B TO RJN ISO MTD
PAGE 19

REDACTED

**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25. FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)

CA

**EXHIBIT B TO RJN ISO MTD
PAGE 20**

REDACTED

**26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i) Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii) Lender approves the creditworthiness of the transferee in writing;

(iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv) an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v) the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27. SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)

CA

**EXHIBIT B TO RJN ISO MTD PAGE 21**

REDACTED

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

EXHIBIT B TO RJN ISO MTD
PAGE 22

REDACTED

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

**EXHIBIT B TO RJN ISO MTD
PAGE 23**

**REDACTED**

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

*Jerry D Putz* _____ (Seal)
JERRY D PUTZ

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

**EXHIBIT B TO RJN ISO MTD
PAGE 24**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ~~SANTA CLARA~~ } ss.

On __DECEMBER 29, 2006__ before me, __MAUREEN M. SULLIVAN, A NOTARY PUBLIC,__
            Date                    Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared __JERRY D. PUTZ_____,
                                Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MAUREEN M. SULLIVAN
Commission # 1512232
Notary Public - California
San Mateo County
My Comm. Expires Sep 10, 2008

_____
Signature of Notary Public

──────────── OPTIONAL ────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other. _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association · 9350 De Soto Ave., P.O. Box 2402 · Chatsworth, CA 91313-2402 · www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

Order No:  3161740c
Reference No.:
Escrow Officer: Gay Gibson
Escrow Number: 3161740c

## DESCRIPTION

All that certain land situated in the State of California, County of **SANTA CLARA**, City of **SAN JOSE**, described as follows:

**ALL OF LOT 64, AS DELINEATED UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 1490 WALGROVE MANOR", FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON MAY 17, 1955 IN BOOK 57 OF MAPS, AT PAGES 18 AND 19.**

**EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO WITH NO RIGHTS OF SURFACE ENTRY, AS GRANTED IN THE DEEDS FROM FRANK L. CALLERO, AT UX, TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION, BY INSTRUMENT DATED JUNE 3, 1955, RECORDED JUNE 14, 1955 IN BOOK 3197 OF OFFICIAL RECORDS, PAGE 589 AND ONE DATED FEBRUARY 9, 1956 AND RECORDED FEBRUARY 14, 1956 IN BOOK 3412 OF OFFICIAL RECORDS, PAGE 370.**

APN No: **299-23-055**

**EXHIBIT B TO RJN ISO MTD
PAGE 26**

EXHIBIT C



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

**April 21, 2006**

## CERTIFICATE OF CORPORATE EXISTENCE

**REFERENCE:** World Savings Bank, FSB
Oakland, California

I, Nadine Y. Washington, Corporate Secretary, Office of Thrift Supervision, hereby certify, according to the records of the Office of Thrift Supervision, Department of the Treasury, Washington, DC:

1. World Savings Bank, FSB, Oakland, California, was chartered under the laws of the United States to transact the business of a Federal savings bank;

2. The charter of World Savings Bank, FSB, Oakland, California, is in full force and effect;

3. The Office of Thrift Supervision has not appointed a conservator or receiver for World Savings Bank, FSB, Oakland, California; and

4. As of April 21, 2006, World Savings Bank, FSB, Oakland, California, is operating as a BIF-insured financial institution.

**Nadine Y. Washington**
**Corporate Secretary**

**EXHIBIT C TO RJN ISO MTD**
**PAGE 27**

EXHIBIT D



**Office of Thrift Supervision**                           *Nicholas J. Dyer*
Department of the Treasury                          *Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA  94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re:  World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office.  The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws.  The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

**EXHIBIT D TO RJN ISO MTD**
**PAGE 28**

EXHIBIT E



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:   Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
      bank and application to merge the converted bank with and into Wells Fargo Bank,
      National Association, Sioux Falls, South Dakota
      Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

EXHIBIT F



Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN #: 299-23-055
Property Address·
3337 JERICHO LN
SAN JOSE, CALIFORNIA 95117-3031


DFF20110015003171

**DOCUMENT: 21239734**



| | | Pages: 4 |
|---|---|---|
| Fees | . | 27 00 |
| Taxes | | |
| Copies | | |
| AMT PAID | | 27.00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Title Company

RDE # 004
7/15/2011
8:52 AM

Space above this line for Recorder's use only

Trustee Sale No. : 20110015003171      Title Order No.: 110293489

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $28,932.73 as of 07/13/2011 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor

FCUS_NoticeOfDefault rpt - Record - (05/12/2011) - Ver-32

Page 1 of 3

**EXHIBIT F TO RJN ISO MTD**
**PAGE 30**

permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO BANK, N.A., A/K/A WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO
BANK, N.A. AND F/K/A WACHOVIA MORTGAGE, FSB
c/o NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT:     NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 12/28/2006, executed by JERRY D PUTZ, as Trustor, to secure obligations in favor of WORLD SAVINGS BANK, FSB, as Beneficiary Recorded on 01/05/2007 as Instrument No. 19252528 of official records in the Office of the Recorder of SANTA CLARA   County, California, as more fully described on said Deed of Trust.   Including a Note(s)/ Unconditional Guaranty which had a principal amount of $550,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 9/15/2010 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

EXHIBIT F TO RJN ISO MTD
PAGE 31

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 07/13/2011

NDEX WEST, LLC as Agent for Beneficiary

By: _____

Melissa Hayes

EXHIBIT F TO RJN ISO MTD
PAGE 32



Wachovia Mortgage
P.O. Box 659558
San Antonio, TX 78265-9558

Jerry D Putz       **WACHOVIA**

## Declaration of Wells Fargo Bank, N.A.

As required by California Civil Code Section 2923.5, I, _**Jennifer Spear**_
an officer of Wells Fargo Bank, N.A., declare as follows:

Regarding Jerry D Putz (hereinafter referred to as
"borrower"), Wells Fargo Bank, N.A., has met the requirement of
California Civil Code Section 2923.5 as indicated below.

(x) Wells Fargo Bank, N.A., has contacted the borrower as set
    forth in California Civil Code Section 2923.5(a)(2).

( ) Wells Fargo Bank, N.A., has tried with due diligence, as
    prescribed by California Civil Code Section 2923.5(g), to
    contact the borrower.

The undersigned authorizes the trustee, foreclosure agent and/or their
authorized agent to sign, on behalf of the beneficiary/authorized agent,
the Notice of Default containing the declaration required pursuant to
Civil Code 2923.5.

I certify (or declare) under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

JUN 0 2 2011

_____        _____
Date                        By:
                            Title: Vice President Loan Documentation

FP006 012 JEE

EXHIBIT G



Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

APN #: 299-23-055
Property Address:
**3337 JERICHO LN**
**SAN JOSE, CALIFORNIA 95117-3031**


NTSP20110015003171

DOCUMENT: 21360730



| | | |
|---|---|---|
| | Pages: | 1 |
| Fees . | | 18.00 |
| Taxes... | | |
| Copies.. | | |
| AMT PAID | | 18.00 |

REGINA ALCOMENDRAS     RDE # 010
SANTA CLARA COUNTY RECORDER   10/12/2011
Recorded at the request of    1:39 PM
Recording Service

Space above this line for Recorder's use only

Trustee Sale No. : 20110015003171   Title Order No.: 110293489     FHA/VA/PMI No.:

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 12/28/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**NDEX WEST, LLC**, as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 01/05/2007 as Instrument No. 19252528** of official records in the office of the County Recorder of **SANTA CLARA** County, State of CALIFORNIA.

**EXECUTED BY:**    **JERRY D PUTZ,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:**    **11/07/2011**    **TIME OF SALE:**    **11:00 AM**
**PLACE OF SALE:**    **AT THE NORTH MARKET STREET ENTRANCE TO THE COUNTY COURTHOUSE, 190 NORTH MARKET STREET, SAN JOSE, CA.**
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
         **3337 JERICHO LN, SAN JOSE, CALIFORNIA 95117-3031**
**APN#:**         **299-23-055**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$616,896.89.** The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.    :

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**AGENCY SALES & POSTING**
**3210 EL CAMINO REAL, SUITE 200**
**IRVINE, CA 92602**
**714-730-2727**
**www.lpsasap.com**

NDEx West, L.L.C. as Trustee

BY: Ric Juarez

FCUS_NoticeOfTrusteeSale.rpt - Pub - 12/07/2010 - Ver-25

**NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dated: 10/10/2011

Page 1 of 1

EXHIBIT H

**E-filed 5/17/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE WACHOVIA CORPORATION "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION. | Case No. 5:09-md-02015-JF<br><br>ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) ADDRESSING OBJECTIONS; (3) DENYING MARCELLA ROSE'S MOTION TO INTERVENE; (4) APPROVING SERVICE PAYMENTS TO CLASS REPRESENTATIVES; AND (5) AWARDING ATTORNEYS' FEES AND COSTS |

On April 29, 2011, the Court conducted a hearing with respect to the following motions and objections: (1) motion of named Plaintiffs and Defendants for final approval of class action settlement; (2) objections of Michael Hargett, Marcella Rose, and others; (3) Marcella Rose's motion to intervene; (4) request for service payments to class representatives; and (5) motion of class counsel for an award of attorneys' fees and costs. The Court has considered the documents filed in connection with these motions and objections as well as the oral argument presented at

**EXHIBIT H TO RJN ISO MTD PAGE 35**

the hearing.  The Court finds and concludes as follows:

## I. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This multi-district litigation concerns Defendants' "Pick-a-Payment" mortgage loans, which permitted borrowers to select and make a minimum payment amount for a limited time and subject to certain conditions.  Borrowers could choose to make:  (1) a fully-amortizing 30-year interest and principal payment such that the loan would be satisfied in the traditional 30-year term; (2) a fully-amortizing 15-year interest and principal payment such that the loan would be satisfied in a 15-year term; (3) an "interest-only payment"; or (4) a lesser, "minimum payment."  When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.  Plaintiffs allege that the loans violated the federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and various state laws, because the relevant loan documents failed to make adequate disclosures regarding the certainty of negative amortization, the actual payment schedules, the interest rates on which these schedules were based, and the full terms of the parties' legal obligations.

In August 2007, Lead Plaintiffs' counsel filed a putative class action in this Court, *Mandrigues v. World Savings, Inc., et al.*, Case No. 5:07-cv-04497-JF.  *Mandrigues* was litigated vigorously for several years, during which time the United States Judicial Panel on Multidistrict Litigation transferred to the undersigned for coordinated pretrial proceedings numerous other "Pick-a-Payment" class actions and single-plaintiff actions.  After extensive motion practice and the completion of briefing with respect to Plaintiffs' motion for class certification and the parties' cross-motions for summary judgment, the parties reached settlement with the assistance of Judge John K. Trotter (Ret.).  On December 16, 2010, following a hearing, the Court granted preliminary approval of the settlement, certified three classes for settlement purposes, and appointed class representatives and class counsel.

The settlement classes comprise individuals who entered into "Pick-a-Payment" loans with Defendants between August 1, 2003 and December 31, 2008.  Settlement Class A consists

Case No. 5:09-md-02015-JF
ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.
(JFLC2)

of borrowers who no longer hold their "Pick-A-Payment" loans[1]; Settlement Class B consists of

borrowers who still hold their loans and are not in default; and Settlement Class C consists of

borrowers who still hold their loans and are in default.  Under the terms of the settlement,

Defendants will pay $50 million to the class.  The entire amount of the settlement fund, less

service payments to class representatives in a maximum total amount of $125,000 (discussed

below), will be distributed on a *pro rata* basis to Settlement Class A members who have

submitted timely, valid claim forms and to Settlement Class B and C members who have not

excluded themselves from the settlement.  Because the settlement fund will be divided on a *pro*

*rata* basis, no unclaimed portion of the fund will remain after distribution.  In the event that a

class member fails to cash his or her check within ninety days after issuance despite a required

reminder notice from the settlement administrator, the funds from uncashed checks will be used

to offset administration and notice expenses; any remaining funds will be distributed by means of

a *cy pres* fund to non-profit organizations.

In addition to paying $50 million to the class, Defendants will implement a loan

modification program available to qualified Settlement Class C members and to qualified

Settlement Class B members who are in "imminent default."  Eligible class members first will be

considered for the federal Home Affordable Modification Program ("HAMP").  If the class

member does not qualify under HAMP or elects not to accept a HAMP modification, the member

will be considered for Defendants' new loan modification program, Mortgage Assistance

Program 2 ("MAP2R").  The goal of the MAP2R program is to reduce a class member's "DTI"[2]

to thirty-one percent or less.  In order to accomplish this, Defendants will apply a series of steps

such as waiver of accrued interest and other charges, forgiveness of principal, and reduction in

interest rate.  Once a DTI of thirty-one percent is reached, the loan will be converted into a fully-

---

[1] Settlement Class A includes borrowers who paid off their loans by selling their homes, by refinancing, or by other means.  Borrowers who lost their homes as a result of foreclosure are excluded from the class.

[2] "DTI" is the ratio of the class member's first-lien monthly mortgage obligations to his or her gross monthly income.

Case No. 5:09-md-02015-JF
ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.
(JFLC2)

**EXHIBIT H TO RJN ISO MTD**
**PAGE 37**

amortizing loan and the negative amortization feature will be eliminated.  Class members who do not qualify for HAMP or MAP2R modifications will receive a written explanation of the reasons for denial.  Class counsel will be copied on all such denials and will follow up with Defendants to ensure that the loan modification program is functioning as intended.  This Court will retain continuing jurisdiction to interpret and enforce the settlement agreement.  Plaintiffs' expert values the benefit to the class conferred by the loan modification program in the range of $839 million to $2.7 billion.  The loan modification program will remain in place through June 2013.

Eligible Settlement Class B and C members who are unable to qualify for modifications under HAMP or MAP2R guidelines but who qualify for short-sale or deed-in-lieu of foreclosure under the Home Affordable Foreclosure Alternatives ("HAFA") guidelines will be offered incentive payments of at least $1,500 for a short-sale or deed-in-lieu of foreclosure.  Additionally, Defendants will pay $1 million for class notices and claims administration costs, and up to $25 million in attorneys' fees and costs.  These latter items – incentive payments, administration costs, and attorneys' fees and costs – will be paid separately by Defendants and will not diminish the $50 million settlement fund.

The Court finds the settlement to be "fundamentally fair, adequate and reasonable" as is required under Federal Rule of Civil Procedure 23(e) and applicable Ninth Circuit authority.  *See Mego Financial Corp. Sec.* Litig., 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982).  "Assessing a settlement proposal requires a district court to balance a number of factors:  the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."  *Mego Financial*, 213 F.3d at 458.  The district court also must satisfy itself that the settlement is not the product of collusion among the negotiating parties.  *Id.*

Although Plaintiffs' pleadings survived a number of motions to dismiss, given the evolution of case law regarding claims such as those at issue here, there is no guarantee that

4

1   Plaintiffs would have prevailed on summary judgment or at trial.  This case is complex, both

2   because of the conglomeration of multiple lawsuits from throughout the country and because of

3   the large number of class members; trial likely would have been protracted.  Defendants have

4   offered a substantial amount of money in settlement, and the loan modification program provides

5   significant benefits to the class, as described above.  Extensive discovery has been completed –

6   numerous depositions have been taken, and more than 15,000 pages of documents have been

7   produced.  Plaintiffs' counsel, who are experienced attorneys, believe that the settlement is

8   extremely favorable to the class.  Approximately 516,000 notices were delivered by direct mail to

9   class members, but only a very small percentage objected or opted out, as is discussed more fully

10  below.  The settlement was reached after lengthy, arms-length negotiations overseen by Judge

11  Trotter, a nationally known and respected mediator.

12      The Court also concludes that notice of settlement to the class was adequate and satisfied

13  all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members

14  received direct notice by United States mail, and additional notice was given by publication on

15  the Internet and in *USA Today*.  These were the best practicable means of informing class

16  members of their rights and of the settlement's terms.  *See Silber v. Mabon*, 18 F.3d 1449, 1453-

17  54 (9th Cir. 1994) (affirming district court's conclusion that notice by direct mail and publication

18  was best practicable notice).

19      The Court concludes that final certification of the settlement class is appropriate.  The

20  four prerequisites of Rule 23(a) are met:  the proposed settlement class includes hundreds of

21  thousands of borrowers (numerosity); all class members obtained similar "Pick-a-Payment" loans

22  (commonality); the named class representatives entered into "Pick-a-Payment" loans, and their

23  claims are reasonably coextensive with those of the class as a whole (typicality); and class

24  counsel are experienced and qualified to conduct the litigation, and there is no evidence of

25  collusion (adequacy).  The class is adequately defined and clearly ascertainable – class members

26  are individuals who obtained "Pick-a-Payment" mortgage loans from Defendants between

27  August 1, 2003 and December 31, 2008.  Finally, common questions of law or fact predominate,

28  as all class members would have to demonstrate that the "Pick-a-Payment" mortgages violated

5

**EXHIBIT H TO RJN ISO MTD
PAGE 39**

1   federal and/or state laws.  *See* Fed. R. Civ. P. 23(b)(3).

2          Finally, the Court concludes that Plaintiffs' attorneys are experienced and able, and fairly

3   and adequately have represented and will continue to represent the interests of the class.  *See* Fed.

4   R. Civ. P. 23(g).  Accordingly, Plaintiffs' attorneys will be appointed as class counsel for

5   purposes of certification of the settlement class.

6                                          **II. OBJECTIONS**

7          As noted above, 516,000 notices were delivered by direct mail to class members, but only

8   thirty-six timely objections to the settlement were received.  This is an objection rate of .007%.[3]

9   Only 456 class members – .08% – requested exclusion.[4]  This positive response from the class

10  weighs strongly in favor of approving the settlement, despite the dissatisfaction of some

11  individuals.  *See Churchill Village, LLC v.  General Electric*, 361 F.3d 566, 577 (9th Cir. 2004)

12  (affirming district court's approval of settlement where forty-five of 90,000 class members

13  objected to the settlement, and 500 class members opted out).  However, as the Court noted at the

14  hearing, even one valid objection would be sufficient to show that the settlement is not in the

15  best interests of the class.  Accordingly, the objections will be addressed as follows.

16  **A.     Difficulty Navigating the Loan Modification Program**

17         A number of class members expressed concern about their ability to navigate the loan

18  modification program.  Some related their own negative experiences in detail.  As it has

19  expressed on the record a number of times, the Court is particularly concerned with ensuring that

20  the loan modification program actually will work as outlined in the settlement agreement.  In the

21  months prior to the final approval hearing, the Court has referred a number of inquiries to class

22

23         [3] Five of the thirty-six objections were received from individuals who also opted out of
    the settlement.  Class members who opt out lack standing to object to a settlement.  *See In re*
24  *Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.D.C. 2000).  If these five objections are
    excluded, the objection rate is .006%.
25

26         [4] Seven additional class members made oral requests for exclusion at the hearing.  Those
    requests were granted on the record.  An eighth class member, Mr. Vega, made an oral request
27  for exclusion, which was granted, but he subsequently submitted a note to chambers requesting
    that he be permitted to remain in the class.  If the seven additional individuals are considered,
28  then .09% of class members have been excluded from the settlement.

                                                 6

**EXHIBIT H TO RJN ISO MTD
PAGE 40**

counsel, who have committed to ongoing involvement in the loan modification process. Class counsel represented that during the sixty days prior to the final approval hearing they assisted thirty to forty class members in obtaining loan modifications. Class counsel also stated on the record that they would be happy to speak with any class member about his or her loan modification efforts. Moreover, the Court expressly has retained jurisdiction over this matter. The Court concludes that these are the best safeguards that realistically could be expected in this type of settlement.

It should be noted that not every class member will be entitled to loan modification. Class counsel confirmed at the hearing that they have reviewed certain denials which were consistent with the terms of the settlement. To the extent that some individuals wish that class counsel had held out for a more favorable program, this type of "should have done better" objection routinely is rejected. *See, e.g., Linney v. Cellular Alaska Partn.*, 151 F.3d 1234, 1242 (9th Cir. 1998).

**B.      Whether the Loan Modification Program Confers a Benefit upon the Class**

Certain objectors contend that the loan modification program does not confer a benefit upon the class because California and other states have entered into Assurances with Defendants which provide for the identical relief. The Court notes that most of the loans at issue in this case were executed in California, and that California did not enter into an Assurance until after the motion for preliminary approval was filed. The MAP2R program thus was a significant benefit when it was negotiated. More importantly, the state attorney general settlements do *not* give individual borrowers a private right of enforcement. The instant settlement is binding and enforceable, and class members may assert their individual rights under the settlement agreement. Finally, only ten states have entered into Assurances with Defendants; the settlement agreement makes the loan modification program an option to class members in the other forty states.

**C.      Adequacy of Class Notice**

Other objectors assert that the class notice was inadequate because it did not disclose how much money each class member would receive under the settlement. It was impossible for the

7

**EXHIBIT H TO RJN ISO MTD
PAGE 41**

1    notice to disclose precisely how much money each class member would receive, because

2    although members of Class B and C will receive checks automatically, members of Class A must

3    file claim forms in order to receive a distribution.  Because class counsel could not predict how

4    many claim forms would be submitted, they could not predict the amount that will be distributed

5    to each class member.

6    **D.    Distribution of Funds Derived from Uncashed Checks**

7           Some objectors challenge the use of undistributed settlement funds to pay administration

8    costs, claiming that this would result in a windfall to Defendants, who otherwise would have to

9    pay administration costs out of pocket.  Because the *entire* $50 million will be distributed to class

10   members on a *pro rata* basis, the only funds at issue are funds from checks that class members

11   fail to cash within ninety days.  The administrator is obligated to send out reminder notices with

12   respect to uncashed checks.  Accordingly, the amount of money at issue is likely to be quite

13   small.  Class counsel assert, and the Court has no reason to doubt, that the cost of redistributing

14   such funds to class members likely would exceed the amount of the funds themselves.  Class

15   counsel also point out that in large class actions the administration costs often come out of the

16   funds set aside for distribution to the class.  Because Defendants have agreed to pay

17   administration costs of up to $1 million in this case, separate and apart from the $50 million set

18   aside for distribution to the class, and given the likelihood that the amount of money in question

19   is likely to be negligible, the Court concludes that there is nothing inherently unfair in permitting

20   funds derived from unclaimed checks to be used for administrative expenses.

21   **E.    Argument That Class B  Members Should Receive More Benefits Than Class A and**

22   **Class C Members**

23          One class member has expressed dissatisfaction with the fact that all class members are

24   treated equally under the settlement agreement.  In her view, an individual who made all her loan

25   payments should be treated more favorably than an individual who defaulted on a loan.  While

26   the Court recognizes the frustration that must lie behind such an argument, the Court cannot

27   agree that the settlement's equal treatment of all class members renders the settlement unfair.

28

8

Case No. 5:09-md-02015-JF
ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.
(JFLC2)

**F.     Mr. Hargett's Objection Regarding Potential Deficiency Judgments**

Class member Michael Hargett, an attorney proceeding *pro se* in this matter, filed more than 200 pages of documents objecting to the settlement.  He raises a number of the points discussed above, but his primary concern is the possibility that Defendants will pursue deficiency judgments against class members.  However, Defendants' recent responses to requests for admission ("RFAs") propounded by Mr. Hargett alleviated this concern.  Mr. Hargett read into the record Defendants' responses to a number of RFAs in which Defendants stated that as a general business practice they do not pursue deficiency judgments in connection with foreclosure proceedings involving Pick-a-Payment loans secured by the borrower's primary residence.  Based upon those assurances, Mr. Hargett withdrew his objections.[5]

**G.     Ms. Jones's Objections**

Alberta Jones appeared telephonically at the hearing.  She expressed generalized concerns regarding the settlement, and she requested leave to opt out of the class.  Class counsel responded by noting that Ms. Jones is not a class member, as she obtained her Pick-a-Payment loan prior to the start of the class period.  After the hearing, Ms. Jones filed documents suggesting that she believes that she should be a class member.  Based upon the redacted copy of Ms. Jones's adjustable rate mortgage note that was submitted by Defendants, it is clear that Ms. Jones obtained her loan on May 23, 2003, which is outside the class period of August 1, 2003 through December 31, 2008.  Because Ms. Jones is not a class member, she has no standing to raise objections, *see In re Vitamins Antitrust Class Actions*, 215 F.3d at 28-29, and her request to opt out is moot.

**H.     Ms. Rose's Objection Re Nondisclosure Of NPV Formula**

Marcella Rose, whose motion to intervene is addressed below, additionally filed an objection to the settlement based upon Defendants' failure to disclose their "net present value" or "NPV" formula.  The NPV formula compares the expected economic outcome of the loan with

---

[5] At the hearing, class counsel acknowledged Mr. Hargett's contributions and requested leave to compensate him.  The Court recognized that Mr. Hargett contributed a great deal to the final approval process and directed class counsel to submit an administrative motion regarding the compensation issue.

9

Case No. 5:09-md-02015-JF
ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC. (JFLC2)

EXHIBIT H TO RJN ISO MTD
PAGE 43

and without the proposed modification. The calculation depends in part upon the current value of the property securing the loan. The NPV formula has been disclosed to class counsel, who are satisfied. Defendants have offered to disclose the NPV formula to the Court *in camera*. The Court concludes that Defendants are not required to disclose their NPV formula to class members; the loan modification program is laid out in detail in the settlement agreement – Defendants need not disclose every aspect of their methodology in order to render the settlement fair and adequate.

### III. MOTION TO INTERVENE

Ms. Rose also has filed a motion to intervene. She presently is litigating a separate lawsuit, *Rose v. Wachovia*, in the Central District of California. That lawsuit asserts a number of claims that are unrelated to the failure disclose negative amortization at loan origination. Ms. Jones argues that her Central District complaint could be read broadly enough that there would be some overlap between that suit and this one. She also contends that she should be permitted to intervene in the instant action in order to represent individuals who were "forced" to sell their homes in order to pay off their loans.

In the Ninth Circuit, there are four requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2): "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties in the lawsuit." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996) (citation omitted). Alternatively, a court may grant permissive intervention under Rule 24(b) if there is an independent ground for jurisdiction, the motion to intervene is timely, and a common question of law or fact exists. *Southern Calif. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). Even if the threshold requirements for permissive intervention are met, a court has discretion to deny permissive intervention. *Id*.

These requirements are not satisfied here. The application for intervention is untimely.

Case No. 5:09-md-02015-JF
ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.
(JFLC2)

**EXHIBIT H TO RJN ISO MTD PAGE 44**

1  As noted above, this action has been litigated vigorously for almost four years.  The instant

2  settlement is the product of months-long, arms-length negotiations.  Ms. Rose's application, filed

3  on the eve of the final approval hearing, simply is too late.  The bulk of Ms. Rose's legal claims

4  appear to be unrelated to the claims that are the subject of the instant action.  To the extent that

5  Ms. Rose is a Class A member, her interests are represented in this action.  While she attempts to

6  carve out a group of class members who have been "forced" to sell their homes in order to pay

7  off their loans, the Court understands that borrowers who ended up with Pick-a-Payment loans

8  often felt financial pressure to either sell their homes, or to refinance the loans.  The Court is at a

9  loss to discern a legally significant difference between those who chose to sell and those who

10  chose to refinance.

11      If Ms. Rose believes that a better deal may be struck with Defendants, she is free to opt

12  out and try her luck with her own lawsuit.  At the hearing, the Court granted Ms. Rose's

13  alternative request to opt out of this settlement.

14  ### IV. SERVICE PAYMENTS TO CLASS REPRESENTATIVES

15      Courts often award service payments to class representatives in compensation for

16  shouldering significant burdens during the litigation:  retaining counsel, producing documents,

17  responding to written discovery, and conferring with counsel.  *See, e.g., Mego Financial*, 213

18  F.3d at 463 (9th Cir. 2000) (approving incentive awards of $5,000 to each of two class

19  representatives in a settlement of $1.725 million).  The Court concludes that the proposed

20  incentive payments, ranging between $2,500 and $14,250 per named plaintiff and totaling

21  $125,000, are appropriate.

22  ### V. ATTORNEYS' FEES AND COSTS

23      "Under Ninth Circuit law, the district court has discretion in common fund cases to

24  choose either the percentage-of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*,

25  290 F.3d 1043, 1047 (2002).  The benchmark award is twenty-five percent of the recovery

26  obtained, "with 20-30% as the usual range."  *Id*.  Although the twenty-five percent benchmark

27  rate is a starting point for analysis, it may be inappropriate in some cases.  *Id*. at 1048.  "Selection

28  of the benchmark or any other rate must be supported by findings that take into account all of the

11

**EXHIBIT H TO RJN ISO MTD
PAGE 45**

1   circumstances of the case." *Id.* Relevant circumstances include the results achieved for the

2   class, the risk to class counsel, benefits to the class other than the cash settlement fund, market

3   rates for contingency fee retainers, and the burdens assumed by class counsel during the

4   representation. *Id.* at 1048-50. The lodestar method may be used as a cross-check of the

5   percentage method. *Id.* at 1050.

6        Class counsel request an award of $25 million. Defendants have agreed to pay attorneys'

7   fees and expenses of up to $25 million separate and apart from the class fund of $50 million and

8   administrative costs up to $1 million. If the Court were to consider only these cash components

9   of the settlement, counsel request approximately one-third of the recovery. However, the loan

10  modification component of the settlement confers a significant additional benefit on the class.

11  Class counsel present the opinion of Yale Law Professor Jonathan Macy, who estimates that the

12  value of the loan modification component is in excess of $800 million and possibly as high as

13  $2.7 billion. If these figures are even remotely accurate, then $25 million is far less than the

14  twenty-five percent benchmark commonly awarded in this circuit. A lodestar cross-check

15  supports an award of $25 million. Counsel have documented hourly fees in excess of $11

16  million. Thus an award of $25 million would require application of a multiplier of 2.2, which is

17  well within the acceptable range. *See, e.g., Vizcaino*, 290 F.3d at 1051 (approving multiplier of

18  3.65).

19       The Court recognizes that class counsel assumed substantial risks and burdens in

20  representing Plaintiffs in this action. Numerous "Pick-a-Payment" class actions and single-

21  plaintiff actions have been rolled into the original case for coordinated pretrial proceedings. The

22  case has been vigorously contested: extensive discovery has been conducted, several motions

23  have been heard, and several more have been briefed. Class counsel have committed to render

24  continuing aid to class members who are attempting to obtain loan modifications. In the Court's

25  opinion, class counsel comported themselves in a capable and professional manner throughout

26  the case, and they obtained an excellent result for the class. Accordingly, the Court has no

27  hesitation in awarding attorneys' fees and costs in the amount of $25 million.

28

Case No. 5:09-md-02015-JF
ORDER (1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.
(JFLC2)

**EXHIBIT H TO RJN ISO MTD
PAGE 46**

# VI. ORDER

(1) The motion for final approval of the class action settlement is GRANTED;

(2) The objections to the settlement are OVERRULED;

(3) Marcella Rose's motion to intervene is DENIED;

(4) The proposed service payments to class representatives are APPROVED; and

(5) The motion for attorneys' fees and costs in the amount of $25 million is GRANTED.

DATED: 5/17/2011

_____
JEREMY FOGEL
United States District Judge

13

EXHIBIT H TO RJN ISO MTD
PAGE 47

EXHIBIT I

**ARBOGAST & BERNS LLP**
David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
6303 Owensmouth Avenue, 10th Floor
Woodland Hills, CA 91367-2263
Tel.: (818) 961-2000
Fax: (818) 936-0232

*Lead Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>_____<br><br>*This Document Relates to*:<br><br>ALL INCLUDED ACTIONS | **Case No. 5:09-md-02015-JF**<br><br>CLASS ACTION<br><br>**DECLARATION OF JEFFREY K. BERNS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: April 29, 2011<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Jeremy Fogel |

I, Jeffrey K. Berns, declare:

1.     I am an attorney licensed to practice by the State of California, and a member of the law firm Arbogast & Berns LLP, Lead Counsel for Plaintiffs in this proceeding.  I make this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Motion"), of my own personal knowledge and, if called as a witness, I could and would testify competently to the matters stated below.

2.     The relevant facts concerning the procedural history of the litigation, the settlement negotiations and terms, the efforts of Class Counsel, and the risks of continued litigation are set forth at length in my Declaration in Support of Plaintiffs' Motion For An Award Of Attorney's Fees And Costs, filed on February 23, 2011 (Dkt. No. 117-2) (the "Fee Declaration") and my Declaration in Support of Preliminary Approval of Class Action Settlement, filed on December 10, 2010 (Dkt. No. 112-1) (the "Preliminary Approval Declaration").  To avoid unnecessary repetition, this Declaration is limited to additional facts that are relevant to the Final Approval Motion and certain objections raised by Settlement Class Members.

## THE PROPOSED SETTLEMENT

3.     The proposed settlement provides extensive benefits to the Settlement Class, which include a) a $50 million cash Settlement Fund, all of which will be distributed to Settlement Class Members, except for up to $125,000 in awards to the Named Plaintiffs who pursued the actions that comprise this consolidated Multi-District Litigation; b) legal fees and expenses awarded by the Court of up to $25 million; c) all costs of settlement notice and administration, which the settlement administrator has agreed to cap at $1 million; d) an extensive loan modification program for all Settlement Class Members who were in default on their Option ARM loans at the time that the Court preliminarily approved the settlement and all Settlement Class Members who become in imminent danger of default through June 2013; and e) cash payments for approved deeds-in-lieu of

EXHIBIT I TO RJN ISO MTD
PAGE 49

1    foreclosure and short sales for Settlement Class Members who do not qualify for

2    loan modifications.  The Settlement Agreement, which was provided to the Court as

3    Exhibit 1 to my Preliminary Approval Declaration, is the result of arm's-length

4    negotiations between the parties that spanned several years and involved multiple

5    mediation sessions.

6    **THE REACTION OF THE SETTLEMENT CLASS TO THE SETTLEMENT**

7          4.     The response from Settlement Class Members to the settlement has

8    been overwhelmingly positive. Out of the more than 516,000 Settlement Notices

9    that were delivered to Settlement Class Members, only 36 total objections to, and

10   457 exclusions from, the settlement were filed.  These remarkably small numbers

11   confirm the fairness of the settlement and provide overwhelming support that the

12   settlement should receive final approval.

13       **CLASS COUNSEL HAS, AND WILL CONTINUE, TO INSURE THAT**

14   **SETTLEMENT CLASS MEMBERS RECEIVE THE MAXIMUM BENEFIT**

15                      **FROM THIS SETTLEMENT**

16         5.     Shortly prior to the settlement becoming public, I, along with other

17   representatives of Class Counsel and Defendants' Counsel, began working with

18   Kinsella Media, LLC, a firm with expertise in class action settlement notification

19   and Rust Consulting LLC (Rust), the settlement administrator, to formulate a plan

20   for notice and administration of the settlement.  *See* Declaration of Shannon

21   Wheatman of Kinsella Media (Ex. 1 hereto) and Affidavit of Amy Lake of Rust

22   (Ex. 2 hereto).  Throughout these discussions, and on weekly conference calls that

23   have continued to date, Class Counsel has worked diligently to insure that all

24   Settlement Class Members receive the necessary information about the settlement

25   and the loan modification program.

26         6.     Once the settlement was made public in December 2010, I, along with

27   other Class Counsel, began receiving communications from Settlement Class

28   Members concerning the settlement, and particularly, the loan modification

                                            3
DECLARATION OF JEFREY K. BERNS I.S.O MOTION FOR FINAL APPROVAL - 5:09-md-02015-JF

EXHIBIT I TO RJN ISO MTD
PAGE 50

program.  From the time that the Settlement was announced, through the time that Settlement Notices were sent out, we spoke to thousands of Settlement Class Members and worked closely with counsel for Defendants to resolve any questions that we could not address without further information.

7.      In January 2011, prior to when the Settlement Notices were mailed out, I, along with other attorneys for the Parties, traveled to Minneapolis to work with Rust to train the Customer Service Representatives (CSRs) who were going to handle inquiries from Settlement Class Members.  As part of the training, we made certain that the CSRs were aware that they should encourage Settlement Class Members to contact Defendants customer service department directly concerning any inquiries that they had regarding the loan modification program.  Additionally, we made sure that Rust knew to instruct any Settlement Class Members who were having issues with their modification applications to contact my office directly.

8.      In addition to the CSR training, we also worked with Rust on the content of the pre-recorded messages that Settlement Class Members would hear when they called Rust.  Further, we made certain that Rust would have a sufficient number of CSRs to handle inquiries without long wait times and, based upon our understanding of the composition of the Settlement Class, that there would be enough Spanish-speaking CSRs.

9.      Since the Settlement Notices were mailed out, Class Counsel has spoken to thousands of Settlement Class Members by telephone, in order to assist them with inquiries concerning the settlement and the loan modification program.  I personally have spoken to over 700 Settlement Class Members about the settlement and their reaction has been generally positive.

10.      During the settlement negotiations, it was important to Class Counsel that Settlement Class Members have the ability enforce the terms of the settlement.  Thus, unlike in the State Attorneys General settlements, the Settlement Agreement provides that this Court will have continuing jurisdiction to enforce the terms of the

4

EXHIBIT I TO RJN ISO MTD
PAGE 51

settlement. Settlement Agreement, § XIV(B) (Dkt. No. 112, Ex. A.) For example, Defendants settlement with the State of California expressly provides that "nothing in this Assurance shall be construed as authorizing any person or entity other than the Office of the Attorney General to enforce or seek remedies under this Assurance or as a result of this Assurance or a breach thereof." *See* Exhibit C hereto (Assurance between State of California and Wells Fargo Bank, N.A., entered into 12/16/10), § IV(B). To enable Class Counsel to police the Settlement Agreement, Class Counsel negotiated for and obtained a provision Moreover, the Settlement Agreement provides that Settlement Class Members who do not qualify for HAMP or MAP2R Modifications shall receive, within thirty calendar days of the Defendants' receipt of all required documentation from the Settlement Class Member, a written description that clearly explains the reasons that the modification was denied, copies of which will also be sent to Lead Class Counsel. *Id.*, § VI(E)(8).

11. It was always Class Counsel's intent that we would review the denial materials and work with Defendants to address any circumstance where we felt that the denial of the modification was improper or that there were not sufficient grounds provide for the denial. This is precisely why the Settlement Agreement requires that Class Counsel receive copies of all written denials of loan modification applications. *See* Settlement Agreement, § VI(E)(8) (Dkt. No. 112, Ex. A.) For example, ten objectors objected on the grounds that they wanted a loan modification, or that the settlement should require Defendants to modify all loans. After receiving these objections, Class Counsel reviewed the loan modification denials and concluded that they were consistent with the settlement terms. Other objectors have resubmitted their loan modification applications and have subsequently received loan modifications or are currently under consideration for loan modifications.

///

EXHIBIT I TO RJN ISO MTD
PAGE 52

**CLASS COUNSEL NEGOTIATED THE SETTLEMENT AGREEMENT SEPARATE AND APART FROM THE ATTORNEYS GENERAL**

12.     The settlement negotiations are discussed at length in my prior declarations.  *See* Fee Declaration, ¶¶ 16-19 and Exhibit 1 thereto (Declaration of the mediator, Hon. John K. Trotter (Ret.)).  I initially began discussing settlement with counsel for the Defendants in early 2009.  At that time, I proposed a loan modification program that had many of the components that ultimately ended up in the MAP2R modification program that is at the heart of this settlement.  To my knowledge, these early negotiations occurred before Defendants had begun negotiations settlements with any Attorneys General.  Indeed, at the time that the Parties submitted the Settlement Agreement to the Court for preliminary approval (December 10, 2010), the California Attorney General had not settled with Defendants.  *See* Ex. C hereto (Assurance between State of California and Wells Fargo Bank, N.A., entered into 12/16/10).

13.     The settlement negotiations were protracted and often heated.  While any settlement negotiation involves "give and take," there are certain key components of the modification program that Class Counsel insisted upon and which were ultimately included in the program despite initial opposition from Defendants.  These include, principal reduction, permanent principal forgiveness for making payments in accordance with a modification plan, reduced paperwork for borrowers and an expansive definition of imminent danger of default that allows borrowers to apply for modifications before they are in danger of foreclosure.

**SEVERAL OF THE PROPOSED CLASS REPRESENTATIVES ARE MEMBERS OF SETTLEMENT CLASS A**

14.     One of the objectors has contended that Settlement Class A was not fairly represented because none of the Proposed Class Representatives is a member of that Class.  That is incorrect.  Proposed Class Representatives Tina Singer, Michael and Jayme Brunkhorst, and Michael and Mary Harber all refinanced their

DECLARATION OF JEFREY K. BERNS I.S.O MOTION FOR FINAL APPROVAL - 5:09-md-02015-JF

**EXHIBIT I TO RJN ISO MTD PAGE 53**

1   Option ARM loans prior to the Preliminary Approval date. Additionally, Proposed

2   Class Representative Judith Holley obtained a loan modification prior to that date.

3   Thus, all of those individuals are members of Settlement Class A.

4                                   **CONCLUSION**

5          15.    For all of the reasons contained herein, and in my other Declarations

6   filed in connection with the settlement, and based upon my discussions with

7   Settlement Class Members and a review of the objections, it is my opinion that this

8   settlement is fair and reasonable, and warrants the Court's final approval.

9          I declare under penalty of perjury under the laws of the United States of

10  America that the foregoing is true and correct to the best of my knowledge.

11         Executed at Woodland Hills, California, on April 15, 2011.

12                                  */s/ Jeffrey K. Berns*
                                    JEFFREY K. BERNS
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JEFFREY K. BERNS I.S.O MOTION FOR FINAL APPROVAL - 5:09-md-02015-JF

**EXHIBIT I TO RJN ISO MTD PAGE 54**

# EXHIBIT 1

EXHIBIT I TO RJN ISO MTD
PAGE 55

<table>
<tr><td>
UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION
2112 Robert F. Peckham Federal Building and United States Courthouse
280 South First Street
San Jose, CA 95113
</td><td></td></tr>
<tr><td>
IN RE WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION
</td><td>
▲ COURT USE ONLY ▲

Case No: M:09-CV-2015-JF
</td></tr>
</table>

### DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN

1. I am a Vice President of Kinsella Media, LLC ("KM"), a legal notification firm in Washington, D.C. specializing in the design and implementation of notification programs to reach unidentified putative class members primarily in consumer and antitrust class actions and claimants in bankruptcy and mass tort litigation. My business address is 2120 L Street, NW, Suite 860, Washington, D.C. 20037. My telephone number is (202) 686-4111.

2. Here in *In Re Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation*, KM was retained to design a notice (the "Notice") to inform Class Members of the proposed class action settlement.

### RELEVANT EXPERIENCE

3. I have served as a qualified class action notice expert in many class actions. State and federal courts have accepted my analyses and expert testimony on whether information is effectively communicated to people. My c.v. is attached as **Exhibit 1**.

1

**EXHIBIT I TO RJN ISO MTD PAGE 56**

4.　　I have been involved in some of the largest and most complex notification programs, including, *In re Katrina Canal Breaches Consolidated Litig.* (a settlement affecting Hurricane Katrina and Rita survivors), No. 05-4182, E.D. La.; *Lockwood v. Certegy Check Services, Inc.* (data theft settlement involving over 37 million consumers), No. 8:07CV-1434, M.D. Fla.; *Grays Harbor Adventist Christian School v. Carrier Corp.* (nationwide multi-million dollar high efficiency furnace settlement), No. 05-05437, W.D. Wash.; *In re Royal Ahold Securities & ERISA Litig.* (the $1.1 billion settlement of the first globally certified and notified shareholder class), MDL 1539, D. Md., *In re Residential Schools Class Action Litig.* (the approximately $4 billion settlement of numerous class actions involving century-old abuses of Aboriginal people), No. 00-cv-192059, Ont. S.C.J.; *Meckstroth v. Toyota Motor Sales USA, Inc.* (the oil gel settlement affecting over seven million Toyota/Lexus owners), No. 583-318, 24th Jud. D. Ct. La.; and many others.

5.　　Courts have admitted expert testimony from me on quantitative and qualitative evaluations of the effectiveness of notice programs and several courts have commented favorably, on the record, regarding the effectiveness of notice plans I have done.  Selected judicial comments are included in the attached c.v.

6.　　My qualifications include leadership in the form and content of notice.  For example, while serving with the Federal Judicial Center ("FJC"), I collaborated to write and design the illustrative, "model" forms of notice, designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).  This research formed the basis for my doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia).  To assist judges and attorneys, in state as well as federal courts, the FJC has posted the notices at www.fjc.gov.

7.　　I have authored and co-authored numerous articles on notice and due process. The central premise of these articles is that notice and due process depends upon clear communication with the people affected.  *See, e.g.,* Shannon R. Wheatman & Terri R. LeClercq, *Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements*, 30 REV.

2

**EXHIBIT I TO RJN ISO MTD**
**PAGE 57**

LITIG. 53 (2011); Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights?  The ethics behind due process in class action notice is more than just plain language:  A desire to actually in-form.*  GEO J. LEGAL ETHICS, 18 (4), 1359-1382 (2005); and Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process:  The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

### SUMMARY OF CONCLUSIONS

8.      The Notice Program we designed and implemented achieved each of the planned objectives:

a.      Each element of the Notice Program approved by the Court has been implemented.

b.      The Notice Program, as implemented, reached approximately 99% of potential Class Members through mailed Notice.

c.      Not reflected in the calculable reach figures is the supplemental publication as well as the website effort that was utilized, but for which reach figures provide qualitative, not quantitative, enhancement.

d.      The Notices were designed to be noticeable, clear, simple, substantive, and informative.  No significant or required information was missing.

9.      In my view, the Notice Program provided the best notice practicable under the circumstances of this case, and satisfied due process, including its "desire to actually inform" requirement.[1]

10.     The facts in this report are based on information provided to me by my colleagues

---

[1] "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ." Mullane v. Central Hanover Trust Bank & Trust Co., 339 U.S. 306, 315 (1950).

3

**EXHIBIT I TO RJN ISO MTD
PAGE 58**

and by the claims administration firm working on the case, Rust Consulting, Inc. ("Rust").

11.     The details of the Notice Plan and the basis for my opinion on its adequacy, as well as on the adequacy of the Notice, are outlined below.

## NOTICE PLAN IMPLEMENTATION

### *Individual Notice*

12.     In developing the Notice Program, it was first determined that a comprehensive list of potential Class Members was available, and that it would be reasonable to implement an individual notification effort to reach them.

13.     Starting on January 28, 2011, mailings were sent to 522,183 potential Class Members.

14.     Before sending the mailings to the list of addresses provided by the Defendants, the addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"). Any mail that was returned with a forwarding address was re-mailed to the new address indicated by USPS. Any mail that was returned without a forwarding address was further checked through an additional third-party source and re-mailed if a new address was found.

15.     As of April 10, 2011, 5,381 mailings or 1% of the total mailings, remain un-delivered. Therefore, overall, Notices reached approximately 99% of the potential Class.

### *Publication Notice*

16.     A quarter-page (5.37" x 10.5") Summary Notice appeared in *USA Today,* a national newspaper with a circulation of 1,768,227, on the following dates and page numbers:

a. February 2, 2011 on page B10

b. February 8, 2011 on page A2

c. February 9, 2011 on page B2

4

EXHIBIT I TO RJN ISO MTD
PAGE 59

### *Online Media*

17.     On January 28, 2011, the Court-approved website, www.PickaPaySettlement.com, went live.  By logging on to this website, Class Members could obtain additional information about the Settlement, including: the Long Form Notices (in English and Spanish); Settlement Agreement; Preliminary Approval Order; and Corrected Second Amended Class Action Complaint.

18.     The website was prominently displayed in all Notice materials.

19.     As of April 10, 2011, there have been 171,691 visits to the website.

### *Toll Free Number*

20.     On January 28, 2011, the toll-free number, set-up and hosted by Rust, became operational.  By calling this number, Class Members could speak to a live operator, listen to answers to frequently asked questions or request to have a copy of the Long Form Notice and Claim Form mailed to them.

21.     As of April 10, 2011, the toll-free number has handled 27,993 calls.

### *Exclusions and Objections*

22.     As of April 10, 2011, 362 potential Class Members have made timely requests to be excluded from the Settlement Class.

23.     As of April 10, 2011, 41 potential Class Members have filed an objection to the class action Settlement.

### <u>NO SUBSTANTIAL OBJECTIONS TO NOTICE</u>

24.     No objection implicated the method or form of notice in any substantive way. Only one objection complained about notice issues, and in this instance the notice issues raised were either inaccurate or irrelevant from the standpoint of effective communication with Class Members.  I will address here the objection noted in the Memorandum of Points and Authorities

**EXHIBIT I TO RJN ISO MTD
PAGE 60**

in Support of Objection to Proposed Settlement, Payment of Fees and Expenses to Class Counsel, and Entry of Judgment and Order of Dismissal ("Hargett Objection").

    a. As stated in my qualifications listed above, I am well aware that class action notices in federal courts need to be in plain language. Along with my former colleagues at the Federal Judicial Center (the "FJC") we wrote and designed the illustrative, "model" forms of notices to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2). We followed the principles set out in these models for all of the Notices prepared for use in *Mandrigues.*

      i. The Hargett Objection contends that the Settlement Class B Notice did not inform Class Members about the Settlement. The Settlement Class B Notice has a Flesch Reading Level of 9.5. This means a person who reads at a 9th grade reading level can understand the contents of the Notice.

      ii. The Long Form Notice that was mailed to Class Members clearly spells out the Settlement benefits and all of the Notice documents contain the toll-free number where Class members could turn with additional questions. The statistics for the toll-free number illustrate that Class members were willing and able to take the simple steps needed to obtain additional information if needed.

      iii. Information on the release was included in the Long Form Notice. Specifically, question 13 of the Long Form Notice tells Class members what they are giving up if they stay in the Settlement. The Settlement Agreement was referred to in this section and made available at the website and Class members were made aware that they could contact Class Counsel with any questions. Additionally, the model notices do not include any specific release language in the long form notice.

      iv. Rule 23 requires that a class action notice be clear and concise. It is impossible as a practical matter for the Notices to contain every term from the

6

**EXHIBIT I TO RJN ISO MTD PAGE 61**

Settlement Agreement and still fulfill these requirements. In my view, and based upon my experience, the Notices contained all of the necessary information for Class Members to determine whether to participate in the Settlement or to opt out.

v. The Hargett Objection contends that the "value" of the Settlement is not clearly stated. I disagree. The Notice expressly states that on page 5, "[t]he Settlement provides for a loan modification program valued at over $600 million and the establishment of a $50 million Settlement Fund." As the Ninth Circuit has explained, "[t]he aggregate amount available to all claimants was specified [in the class notice]….. Nothing more specific is needed." Marshall v. Holiday Magic, 550 F.2d 1173, 1178 (9th Cir. 1977).

## PERFORMANCE AND DESIGN OF NOTICE PROGRAM

25. **Objectives were met.** The primary objective of the Settlement Notice effort in *Wachovia* was to effectively reach the greatest practicable number of Class Members with a "noticeable" Notice of the settlement, and provide them with every reasonable opportunity to understand that their legal rights were affected, to be heard, and to object if they so chose. These efforts were successful.

26. **The Notice reached Class Members effectively.** Our conservative and careful calculations indicate that the mailed notice alone reached approximately 99% of potential Class Members. In addition, although not included in the reach percentage above, the supplemental publication and website effort further enhanced coverage among the Class. In my experience, this reach percentage greatly exceeds that achieved in many other court approved notice programs. Based on our calculations, I can confidently state that the Class was adequately reached.

27. **Plenty of time and opportunity to react to Notice.** The Notices were initially

7

EXHIBIT I TO RJN ISO MTD
PAGE 62

mailed on January 28, 2011, which allowed plenty of time for Class Members to see the Notice and respond accordingly before the March 16, 2011 exclusion and objection deadlines. With 47 days from Notice until the exclusion, objection and claims deadlines, and 91 days until the fairness hearing, Class Members were allotted more than adequate time to act on their rights.

28. ***Notices were designed to increase noticeability and comprehension.*** The program included steps to bring the Notice to the attention of Class Members. Because mailing recipients are accustomed to receiving junk mail that they may be inclined to discard unopened, the program called for steps to bring the Notice to the attention of Class Members. Once people "noticed" the Notices, it was critical that they could understand them. As such, the Notice was clearly worded with simple, plain language text to encourage readership and comprehension.

29. In fact, the design of the Notices embodied the previously mentioned illustrative "model" notices that I have developed in collaboration with the FJC.

a. The Long Form Notices that were mailed to Class Members included a large, bold headline that captured attention and immediately alerted even casual readers that they should read the Notice and explained why it is important.

b. The Long Form Notices contained a prominent focus on the options that Class Members have, using a straightforward table design, and included details about the settlement, such as who is affected, and their rights. A table of contents, categorized into logical sections, helped to organize the information, while a question and answer format made it easy to find answers to common questions by breaking the information into simple headings and brief paragraphs. The Long Form Notices were available in English and Spanish.

c. The Summary Notice for publication included a large, bold headline that captured attention and immediately alerted even casual readers that they should read the Notice and explained why it is important.

8

**EXHIBIT I TO RJN ISO MTD
PAGE 63**

## **CONCLUSIONS**

30.     The notice effort reached approximately 99% of Class Members.  Many courts have accepted and understood, based on evidence that we have given, that a 75 or 80 percent "reach" is more than adequate under the circumstances of analogous cases.  Here we were able to exceed that.  This "reach" indicates that the mailed notice campaign was highly successful in providing direct notice to potential Class Members.

31.     In addition, although not included in the reach percentage above, the publication Notice and website effort further enhanced coverage among the Class.

32.     In preparing the Notices in the *Wachovia* case, we have employed communications methods that are well established in our field, and we have eschewed the idea of producing old-fashioned case-captioned, lengthy, legalistic notice documents.  We have taken to heart the high standards embodied in the Advisory Committee's notes accompanying the proposed changes to Federal Rule 23(c)(2).  We have focused on a primary judicial concern about notice today—effective communication of information about the class action.  As expressed in the Advisory Committee's notes accompanying the changes to Rule 23:

> *The direction that the class-certification notice be couched in plain easily understood language is added as a reminder of the need to work unremittingly at the difficult task of communicating with class members.*

33.     The Notice was prepared in this matter fully account for this concern and were written and designed to the highest communication standards.

34.     We have provided evidence that demonstrate that the notice effort reached a large number of Class Members and we have prepared a Notice that adequately informed Class Members of the class action, properly described their rights, and clearly conformed to the high standards for modern notice programs.  In designing our notice programs, we truly desire to adequately inform the class, and we designed and implemented a program for *Wachovia* that provided a reasonable way of doing so under the circumstances of the case.

9

**EXHIBIT I TO RJN ISO MTD
PAGE 64**

35.     I believe the notice program meets the express requirements of Rule 23 and has provided members of the Class the best notice practicable under the circumstances, including individual notice to all members who could be identified through reasonable effort.

36.     I further believe that our notice effort comported with the guidance for effective notice articulated in the latest edition of the *Manual for Complex Litigation, Fourth*.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Shannon R. Wheatman

Executed in Washington, D.C. this <u>13th</u> day of April 2011.

10

**EXHIBIT I TO RJN ISO MTD PAGE 65**

# EXHIBIT 1

**EXHIBIT I TO RJN ISO MTD**
**PAGE 66**



# Shannon R. Wheatman, Ph.D.

Vice-President, Notice
Kinsella Media, LLC
2120 L Street NW, Suite 860
Washington, DC 20037
2010 - Present

Dr. Wheatman began her class action career in 2000 at the Federal Judicial Center where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. Dr. Wheatman has been involved in over a 125 class actions and has been recognized as a notice expert in state and federal courts across the U.S. and in Canada. Dr. Wheatman specializes in designing, developing, analyzing, and implementing large-scale legal notification plans. She provides testimony on the best notice practicable. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman's selected case experience includes:

### Antitrust

*Brookshire Bros. v. Chiquita*, No. 05-CIV-21962 (S.D. Fla.).

*Friedman v. Microsoft Corp.*, No. 2000-000722 (Ariz. Super. Ct.).

*Gordon v. Microsoft Corp.*, No. 00-5994 (4th Jud. D. Ct. Minn.).

*Peek v. Microsoft Corp.*, No. CV-2006-2612 (Cir. Ct. Ark.).

*Spence v. Microsoft Corp.,* No. 00-CV-003042 (Cir. Ct. Wis).

### Consumer and Product Liability

*Beringer v. Certegy Check Servs., Inc.*, No. 8:07-cv-1434-T-23TGW (M.D. Fla.) (data breach).

*Carnegie v. Household Int'l.,* No. 98-C-2178 (N.D. Ill.) (rapid tax refund loan).

*Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,* No. C-05-04289 (N.D. Cal.) (run flat tires).

*Cotton v. Ferman Mgmt. Servs Corp.,* No. 02-08115 (13th Jud. Cir. Ct. Fla.) (automotive products).

*Davis v. Am. Home Prods. Corp.*, No. 94-11684 (Civ. D. Ct. La.) (Norplant contraceptive).

*Defrates v. Hollywood Video,* No. 02L707 (Cir. Ct. Ill.) (video rentals).

*Ford Explorer Cases*, JCCP Nos. 4226 & 4270 (Cal. Super. Ct.) (consumer fraud).

**EXHIBIT I TO RJN ISO MTD
PAGE 67**

*Gardner v. Stimson Lumber Co.*, No. 00-2-17633 (Wash. Super. Ct.) (hardboard siding product).

*Grays Harbor v. Carrier Corp.*, No. 05-CIV-21962 (W.D. Wash.) (high efficiency furnace).

*In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.*, MDL No. 1643 (teacher's testing).

*In re High Sulfur Content Gasoline Prods. Liability Litig.*, MDL No. 1632 (E.D. La.) (tainted gas).

*In re Lupron Marketing & Sales Practices Litig.*, MDL No. 1430 (D. Mass.) (pharmaceutical).

*In re Serzone Prods. Liability Litig.*, MDL No. 1477 (S.D. W. Va.) (pharmaceutical).

*In re TJX Comp. Retail Sec. Breach Litig.*, MDL No. 1838 (D. Mass.) (data breach).

*In re Trans Union Corp. Privacy Litig.*, MDL No. 1350 (N.D. Ill.) (credit report privacy).

*Mantzouris v. Scarritt Motor Group, Inc.*, No. 8:03cv0015 (M.D. Fla) (automotive products).

*Meckstroth v. Toyota Motor Sales, U.S.A., Inc.*, No. 583-318 (24th Jud. D. Ct. La.) (oil gel).

*Nichols v. SmithKline Beecham Corp.*, No. 00-6222 (E.D. Pa.) (Paxil pharmaceutical).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective head gasket).

**Environmental**

*Allen v. Monsant Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W.V.) (dioxin release).

*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.V.) (tire fire).

*In Re Katrina Canal Breaches Litig.*, No. 05-4182 (E.D. La.). (Hurricanes Katrina and Rita).

*Morrow v. Conoco Inc.*, No. 2002-3860 G and *Thibodeaux v. Conoco Phillips Co.*, No. 2003-481 F (14th J.D. Ct. La.) (air contaminant release).

**Government**

*Tobacco Farmer Transition* Program, U.S. Dept. of Agriculture (tobacco buyout).

*Homeless Shelter Compensation Program*, City of New York.

*In re Residential Schools Class Action Litig.*, No. 00-cv-192059 (Ont. S.C.J.) (Canadian government, aboriginal abuse).



*Insurance*

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners insurance).

*Bond v. Am. Family Ins. Co.*, No. CV06-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co.*, No. 2001-292 (Dist. Ct. Okla.) (homeowners insurance).

*Desportes v. Am. General Assurance Co.*, No. SU-04-CV-3637 and *Carter v. North Central Life Ins. Co.* (Ga. Super. Ct.) (credit premium insurance).

*First State Orthopaedics et al. v. Concentra, Inc.*, et al., No. 2.05-CV-04951-NS (E.D. Pa.) (PPO).

*Froeber v. Liberty Mutual Fire Ins. Co.,* No. 00C15234 (Cir. Ct. Ore.) (PPO).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).

*Gunderson v. AIG Claim Services, Inc.,* No. 2004-002417 (14th Jud. D. Ct. La.) (PPO).

*Gunderson v. F.A. Richard & Associates, Inc.*, No. 2004-2417-D. (Cir. Ct. 14th Jud. D. Ct. La.) (PPO).

*Hunsucker v. Am. Standard Ins. Co. of Wisc.*, No. CV-2007-155-3 (Cir. Ct. Ark) (bodily injury claims).

*Johnson v. Progressive Casualty Ins.,* Co., No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*Morris v. Liberty Mutual Fire Ins. Co.*, No. CJ-03-714 (D. Okla.) (homeowners insurance).

*Reynolds v. The Hartford Fin. Servs. Group, Inc.,* No. CV-01-1529-BR (D. Ore) (homeowners insurance).

*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.) (long term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

*Zarebski v. Hartford Ins. Co. of the Midwest*, No. CV-2006-409-3 (Cir. Ct. Ark.) (bodily injury claims).

*Securities*

*In re Parmalat Securities Litig.*, MDL No. 1653-LAK (S.D. N.Y.).

*In re Royal Ahold Securities and "ERISA" Litig.*, MDL No. 1539 (D. Md.).



***Warnings/Product Recall***

*Bardessono v. Ford Motor Co.*, No. 32494 (Wash. Super. Ct.) (15-passenger van rollover warning).

*Kerosene Recall*, Pittsburgh Terminals Corp.

## Articles

Shannon R. Wheatman & Terri R. LeClercq (in press), *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, REV. LITIG.

Shannon R. Wheatman & Katherine K. Kinsella (in press), *International Class Action Notice*, WORLD CLASS ACTIONS.

Katherine Kinsella & Shannon Wheatman (in press), *US Class Action Notice and Administration*, AAI INTERNATIONAL PRIVATE ENFORCEMENT HANDBOOK.

Shannon R. Wheatman & Thomas, E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVE SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., *81* (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform.* GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation.* FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the research on interrogations, confessions, and entrapment into policy* in INTERROGATIONS, CONFESSIONS, AND ENTRAPMENT 265, 280 (2004).



**EXHIBIT I TO RJN ISO MTD PAGE 70**

Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a Case Based Survey*. FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights*. FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges*. FEDERAL JUDICIAL CENTER (2003).

Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules*. FEDERAL JUDICIAL CENTER (2002).

Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices*. FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts*. FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate*. LAW AND HUM. BEH., *25*(2), 165, 181 (2001).

Shannon R. Wheatman, *Distance Learning in the Courts*. FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).


## Court Testimony

*Guidry v. American Public Life Ins. Co*., No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).

*Webb v. Liberty Mutual Ins. Co.,* No. CV-2007-418-3 (Cir. Ct. Ark).

*Beasley v. The Reliable Life Insurance Co*., No. CV-2005-58-1 (Cir. Ct. Ark).


## Depositions

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).



**EXHIBIT I TO RJN ISO MTD PAGE 71**

## Judicial Comments

*In Re Katrina Canal Breaches*, No. 05-4182 (E.D. La.).

The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence . . . The entire notice was drafted in plain, comprehensible language . . . The Court finds this notice adequately reached the potential class. - Hon. Stanwood R. DuVal, Jr. (2009).


*Jones v. Dominion Transmission Inc.,* No. 2.06-cv-00671 (S.D. W. Va.).

The Parties' notice expert Shannon R. Wheatman, Ph.D. . . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out. - Hon. Joseph R. Goodwin (2009).


*Guidry v. American Public Life Ins. Co.,* No. 2008-3465 (14th Jud. Dist. Ct.).

The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable. - Hon. G. Michael Canaday (2008).


*Webb v. Liberty Mutual Ins. Co.,* (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark).

Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members. - Hon. Kirk D. Johnson (2008).


*Sherrill v. Progressive Northwestern Ins. Co.,* No. DV-03-220 (18th D. Ct. Mont.).

Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here. . . So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order. - Hon. Mike Salvagni (2008).



**EXHIBIT I TO RJN ISO MTD
PAGE 72**

*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.).

The Class Notice and the notice methodology implemented pursuant to the Settlement Agreement, as described in part in the Declarations of . . . Shannon Wheatman. constituted the best practicable notice. . . was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law. - Hon. Philip S. Gutierrez (2008).

*Gray's Harbor v. Carrier Corp.*, No. 05-05437(W.D. Wash.).

The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process. - Hon. Ronald B. Leighton (2008).

*Beringer v. Certegy Check Servs., Inc.*, No. 8.07-cv-1434-T-23TGW (M.D. Fla.).

The proposed form of notice and plan for publishing are reasonable and designed to advise members of the Settlement class of their rights . . . A nationally recognized notice specialist, Hilsoft Notifications, has developed the comprehensive Notice Plan. Here, Notice is reasonably calculated to reach the maximum number of potential Settlement Class Members and, thus, qualifies as the best notice practicable. The Notice Plan here is designed to reach the maximum number of Class Members, and it is Plaintiffs' goal to reach at least 80% of the Class—an extraordinary result in consumer class action litigation. - Hon. Steven D. Merryday (2008).

*Palace v. DaimlerChrysler Corp.*, No. 01-CH-13168 (Cir. Ct. Ill.).

The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process . . . - Hon. Mary Anne Mason (2008).

*Johnson v. Progressive Casualty Ins., Co.*, No. CV-2003-513 (Cir. Ct. Ark.).

Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated . . . Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable . . . The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process. - Hon. Carol Crafton Anthony (2007).



*Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter. - Hon. Joe Griffin (2007).

## Education and Experience

### Education

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA

Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices.*

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA

Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and locus of control on juror decisions in an insanity case.*

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE

B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA

Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation.*

### Related Experience

Vice President, Notice Director, Hilsoft Notifications
Souderton, PA
2004-2009

Prior to joining Kinsella Media, Dr. Wheatman was the Vice President and Notice Director at Hilsoft Notifications. In that capacity, she worked as a notice expert and oversaw all notice programs implemented during her tenure.



EXHIBIT I TO RJN ISO MTD
PAGE 74

Research Associate, Federal Judicial Center
Washington, DC
2000-2004

The Federal Judicial Center is the education and research agency for the Federal Courts. The Research Division performs empirical and explanatory research on federal judicial processes and court management.   Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.

*Supplementary Background*

Dr. Wheatman has a strong statistical background, having completed nine graduate level courses as well as teaching undergraduate statistics at the University of Georgia.  She is also a member of several plain language organizations, including the Center for Plain Language, Clarity, and Scribes.



**EXHIBIT I TO RJN ISO MTD
PAGE 75**

# EXHIBIT 2

EXHIBIT I TO RJN ISO MTD
PAGE 76

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION | Case No. M:09-CV-2015-JF <br><br> Centralized before the Honorable Jeremy Fogel <br><br> **AFFIDAVIT OF SETTLEMENT ADMINISTRATOR CONCERNING NOTIFICATION** |

Amy Lake, being of lawful age and duly sworn, deposes and says:

1.      I am a Senior Project Administrator for Rust Consulting, Inc. ("Rust Consulting"), which serves as the class action administrator for the Settlement of the above-captioned action ("Settlement").  I am responsible for supervising the class action administration services provided by Rust Consulting in connection with the Settlement.  I have personal knowledge of the facts set forth below.

2.      Rust Consulting specializes in class action notification and claims administration.  Rust Consulting has provided claims administration services for class actions containing up to seven million Class Members in cases involving consumers, pension benefits, securities, product liability, insurance, antitrust, fraud, property, employment, discrimination, bankruptcy and other types of class action cases.  We regularly provide large-scale notification, claim form request processing, claims validation and processing, Settlement benefits distribution, and claims administration services.  Rust Consulting has provided claims

**EXHIBIT I TO RJN ISO MTD PAGE 77**

administration services for over 3,000 class action Settlements and distributed billions of dollars in Settlement assets.

3.      Rust Consulting was engaged as Settlement Administrator to, among other things, (a) arrange for the mailing of the Notice; (b) develop, implement and maintain a Settlement website with links to documents on file with the Court, a link to the Notice in English and Spanish, and the ability to submit a Claim Form online; (c) establish and maintain a toll-free number where Class Members are provided with general Settlement information and the option to speak with a customer service representative in English and Spanish; and (d) rent a post office box for receipt of undeliverable and forward Notices, Claim Forms, exclusion requests,  and other communications.

4.      Rust Consulting received an electronic record of the names and last known addresses of Class A members, and names and current addresses of Class B and C members, from Wells Fargo Bank, N.A., and each Class Member's last known address was updated from information available in the National Change of Address database prior to the mailing of the Notices.

5.      On January 28, 2011, the Court-approved Notices were mailed via first class mail to 517,783 Class Members.  On February 18, 2011, an additional 595 Class A Notices, 2,816 Class B Notices, and 940 Class C Notices, were mailed via first class mail, for a total of 522,134 Notices mailed.  On February 18, 2011, 785 letters were mailed via first class mail to mortgage holders of Traditional Adjustable Rate Mortgages that were misidentified in the initial mailing.  As of April 10, 2011, 584 Notices were returned undeliverable with a forward order on file and were promptly re-mailed.  As of April 10, 2011, 25,954 Notices were returned undeliverable with no forward order on file.  Rust Consulting performed an address

EXHIBIT I TO RJN ISO MTD
PAGE 78

trace on all undeliverable Notices that did not have a forward order on file. Mailing of the Notices with a new address located through trace was done on a rolling basis, and 17,645 Class A Notices, 701 Class B Notices, and 1,673 Class C Notices were re-mailed March 1, 2011, along with additional 979 Class A Notices, 42 Class B Notices, and 115 Class C Notices remailed on March 11, 2011. As a result of the address trace process a total of 21,155 Notices were remailed. A total of 5,383 remain undeliverable, which is 1% of the original mailing. In my experience this is a low undeliverable notice rate. Copies of the Court-approved Notices are attached as Exhibit A.

6.     On January 28, 2011, Rust Consulting established a website at the domain **http://www.pickapaySettlement.com**. The website provides a summary of the Settlement, and also allows Class Members to view answers to frequently asked questions and review documents relating to the Settlement. Individuals visiting the website are able to download a copy of the Notice in English and Spanish. Prior to the claim filing deadline of March 16, 2011, the Claim Form was available to download and individuals were able to submit their claim online. As of April 10, 2011, Rust Consulting has received 171,691 main page hits to the website. Screen prints of the website are attached as Exhibit B.

7.     On January 26, 2011, Class Counsel and Defense Counsel participated in the training of customer service representatives, who were trained on the details of the Settlement and on a script of questions and answers that was prepared and approved by Counsel.

8.     On January 28, 2011, Rust Consulting established a toll-free telephone number at 1-866-886-7224 with an interactive voice response containing an approved scripted Settlement summary. The automated system allows callers to select from several pre-recorded frequently asked questions to obtain Settlement information, and an option for callers to speak

EXHIBIT I TO RJN ISO MTD
PAGE 79

to a live operator. As of April 10, 2011, Rust Consulting has received 27,993 calls to the toll-free number. Of the 27,993 calls received, 12,537 were answered by call center representatives after the caller selected the option to speak with a representative. At the peak of call volume, Rust Consulting had 42 trained customer service representatives answering calls.

9.     As of April 14, 2011, Rust Consulting has received 456 requests for exclusion, which exclude a total of 525 loans and 456 people. 141 of the loans were from Subclass A, 197 of the loans were from Subclass B, and 187 of the loans were from Subclass C. A list of the exclusion requests is attached as Exhibit C.

10.     As of April 14, 2011, Rust Consulting has received 78,343 claims that were timely received, and a total of 830 claims that were postmarked after the March 16, 2011 deadline. Of the 78,343 claims received, 37,867 were filed online at the Settlement website.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_Amy Lake_
Amy Lake

SWORN TO AND SUBSCRIBED BY ME, on this the 15th day of April, 2011.

NOTARY PUBLIC
My Commission Expires: _January 31, 2014_

LYNN M WOLANDER
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

**EXHIBIT I TO RJN ISO MTD PAGE 80**

# If You Had a Pick-a-Payment Mortgage Loan with World Savings Bank or Wachovia Mortgage,

## You Could Receive Money from a Class Action Settlement.

> A Pick-a-Payment mortgage loan allowed borrowers to make monthly payments in an amount lower than the monthly amount of interest due on the loan.

*A federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants failed to make complete and accurate disclosures with respect to their Pick-a-Payment mortgage loans.

- **The Defendants' records show that you obtained a Pick-a-Payment mortgage loan between August 1, 2003 and December 31, 2008.**

- The Settlement will provide payments and other benefits to those who qualify. You will need to file a Claim Form to get a payment from the Settlement.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| Your Legal Rights and Options in the Settlement | |
|---|---|
| **Submit a Claim Form** | The only way to get a payment. |
| **Exclude Yourself from the Settlement** | Get no money from the Settlement. This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **Object** | Write to the Court about why you don't like about the Settlement. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the Settlement. |
| **Do Nothing** | Get no payment. Give up rights to ever sue the Defendants about the legal claims in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

For More Information: Call 1-866-886-7224 or visit www.PickaPaySettlement.com

**EXHIBIT I TO RJN ISO MTD**

-1-

**PAGE 81**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** .......................................................................... **PAGE 3**
1. Why is there a notice?
2. What is this lawsuit about?
3. What is a Pick-a-Payment mortgage loan?
4. Why is this a class action?
5. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ............................................................... **PAGE 4**
6. How do I know if I am part of the Settlement?

**THE SETTLEMENT BENEFITS** ................................................................. **PAGE 5**
7. What does the Settlement provide?
8. What can I get from the Settlement?
9. What other benefits does the Settlement provide?
10. What am I giving up to stay in the Class?

**HOW TO GET A PAYMENT** ...................................................................... **PAGE 6**
11. How can I get a payment?
12. When will I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ..................................... **PAGE 6**
13. How do I get out of the Settlement?
14. If I don't exclude myself, can I sue the Defendants for the same thing later?
15. If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU** ....................................................... **PAGE 7**
16. Do I have a lawyer in the case?
17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .......................................................... **PAGE 8**
18. How do I tell the Court that I don't like the Settlement?
19. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ........................................................ **PAGE 9**
20. When and where will the Court decide whether to approve the Settlement?
21. Do I have to come to the hearing?
22. May I speak at the hearing?

**IF YOU DO NOTHING** ........................................................................... **PAGE 10**
23. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ............................................................. **PAGE 10**
24. How do I get more information?

**EXHIBIT I TO RJN ISO MTD**
-2- **PAGE 82**

## BASIC INFORMATION

### 1. Why is there a notice?

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015-F. The people who sued are called Plaintiffs, and the companies they sued, World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A., are called the Defendants.

### 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product (*see* Question 3 below). The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions. When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization"). The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

### 3. What is a Pick-a-Payment mortgage loan?

The way the loans work is that borrowers choose one of up to four monthly payment options: a minimum payment, an interest only payment, a 15-year amortizing payment, or a 30-year amortizing payment. When a minimum payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

### 4. Why is this a class action?

In a class action, one or more people, called "class representatives," sue on behalf of people who have similar claims. All these people are a "class" or "class members," except for those who exclude themselves from the class. U.S. District Judge Jeremy D. Fogel in the United States District Court for the Northern District of California is in charge of this class action.

**EXHIBIT I TO RJN ISO MTD**
-3-
**PAGE 83**

### 5. Why is there a Settlement?

The Defendants are not admitting that they did anything wrong, but both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected. The Settlement provides the opportunity for payments and other benefits to Class Members.

## WHO IS IN THE SETTLEMENT

### 6. How do I know if I am part of the Settlement?

There are three Settlement Classes. **If you received this notice in the mail, the Defendants' records show you are a member of Settlement Class A.** If you believe you are a member of Settlement Class B or Settlement Class C, you should call 1-866-886-7224. You can view the detailed Notices for each Settlement Class at www.PickaPaySettlement.com.

Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB (now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.) anytime between August 1, 2003 and December 31, 2008.

#### Settlement Class A (no longer have a Pick-a-Payment mortgage)

- Includes borrowers who no longer have their Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.

#### Settlement Class B (mortgage payments are not 60 or more days past due)

- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of December 16, 2010, are not 60 or more days past due.

#### Settlement Class C (mortgage payments are 60 or more days past due)

- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of December 16, 2010, are 60 or more days past due.

Please note that the Classes do not include any borrowers who have already released their claims involving their Pick-a-Payment mortgage loan in a prior case against any of the Defendants.

**EXHIBIT L TO RJN ISO MTD**
-4-**PAGE 84**

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

The Settlement provides for a loan modification program valued at over \$600 million and the establishment of a \$50 million Settlement Fund. After deducting a payment of up to \$125,000 for the Class Representatives (*see* Question 17), the net Settlement Fund will be distributed equally to members of Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C. Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications or another incentive program (*see* Question 9 below). In addition to the Settlement Fund, the Defendants will pay up to \$25 million in attorneys' fees and costs (*see* Question 17) and up to \$1 million to administer the Settlement.

If there is any money remaining in the \$50 million Settlement Fund after all claims are paid, the Defendants will be reimbursed for the administration expenses. Any remaining funds will be distributed to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

The Settlement Agreement, available at the website, contains more details about the Settlement.

### 8. What can I get from the Settlement?

If you submit a valid Claim Form, you can get a payment from the Settlement Fund (*see* Question 11). Your exact payment cannot be calculated at this time. It will depend on the number of valid claims that are filed. Please note that if you had a co-borrower on your Pick-a-Payment mortgage loan, or if you had more than one Pick-a-Payment mortgage loan, you and all other co-borrowers will only get one Settlement Payment.

### 9. What other benefits does the Settlement provide?

You are not eligible to receive a loan modification or participate in other incentive programs because you no longer have your Pick-a-Payment mortgage loan. However, the Defendants will offer permanent loan modifications to eligible Class Members who still have their Pick-a-Payment mortgage loan (Settlement Classes B and C). Settlement Class B and C Members who are unable to qualify for loan modifications may be eligible for incentive payments of at least \$1,500 for a short sale or deed-in-lieu of foreclosure. More information about the Loan Modification Program and the Short Sale/Deed-in-Lieu of Foreclosure Incentive Program can be found at www.PickaPaySettlement.com.

### 10. What am I giving up to stay in the Class?

Unless you exclude yourself from the Settlement, you can't sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you get benefits from the Settlement. The Settlement Agreement is available at www.PickaPaySettlement.com.

## HOW TO GET A PAYMENT

### 11. How can I get a payment?

To ask for a payment, simply complete and submit the attached Claim Form. Claim Forms are also available at www.PickaPaySettlement.com or by calling 1-866-886-7224. Please read the instructions carefully, fill out the Claim Form, and mail it postmarked no later than **March 16**, **2011**, to:

> Pick-a-Payment Settlement
> PO Box 2448
> Faribault, MN 55021-9148

### 12. When will I get my payment?

Payments will be mailed to Class Members who send in valid Claim Forms on time, after the Court grants "final approval" to the Settlement and after any appeals are resolved. If Judge Fogel approves the Settlement after a hearing on April 29, 2011, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement Fund, and you want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or it is sometimes referred to as "opting out" of the Class.

### 13. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter that includes the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),

**EXHIBIT J TO RJN ISO MTD**

-6-

**PAGE 86**

- A statement that you want to be excluded from this Settlement, and
- Your signature.

You must mail your exclusion request, postmarked no later than **March 16, 2011**, to:

> Pick-a-Payment Exclusions
> PO Box 2448
> Faribault, MN 55021-9148

### 14. If I don't exclude myself, can I sue the Defendants for the same thing later?

No. Unless you exclude yourself, you give up the right to sue the Defendants for the claims that the Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Class to continue your own lawsuit.

### 15. If I exclude myself from the Settlement, can I still get a payment?

No. You will not get any money from the Settlement if you exclude yourself. If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in the case?

Yes. The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent you and all Class Members: Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP; Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

Class Counsel has spent over three years working on this lawsuit, including over a year of mediation to get to this Settlement. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel intends to file a motion on or about February 23, 2011 seeking $25 million for attorneys' fees and costs. The fees awarded by the Court will be

paid by Defendants and will not come from the Settlement Fund. The Court will determine the amount of fees to award. Class Counsel will also request that up to $125,000 be paid from the Settlement Fund to the 26 Class Representatives who helped the lawyers on behalf of the whole Class.

## OBJECTING TO THE SETTLEMENT

### 18. How do I tell the Court that I don't like the Settlement?

If you are a Class Member, you can object to the Settlement or to Class Counsel's requests for fees and expenses. To object, you must send a letter that includes the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- The account number(s) of your loan(s),
- A sentence stating that "You confirm under penalty of perjury that you are a Settlement Class Member,"
- The reasons you object to the Settlement,
- A list of any witnesses you may call to testify at the Fairness Hearing (*see* Question 20),
- Copies of any exhibits you intend to present to the Court at the Fairness Hearing, and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than **March 16, 2011**, to the following four addresses:

| Court | Defense Counsel |
|---|---|
| The United States District Court for the Northern District of California 280 South First Street San Jose, CA 95113 | T. Thomas Cottingham, III WINSTON & STRAWN LLP 214 North Tryon Street, Suite 2200 Charlotte, NC 28202 |
| **Class Counsel** | **Defense Counsel** |
| Jeffrey K. Berns David M. Arbogast ARBOGAST & BERNS LLP 6303 Owensmouth Avenue, 10th Floor Woodland Hills, CA 91367 | Jack R. Nelson REED SMITH LLP 101 Second Street, Suite 1800 San Francisco, CA 94105 |

For More Information: Call 1-866-886-7224 or visit www.PickaPaySettlement.com

**EXHIBIT I TO RJN ISO MTD**

### 19. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at **9:00 a.m. PST** on **April 29, 2011**, at the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA, 95113, in Courtroom #3. The hearings may be moved to a different date or time without additional notice, so it is a good idea to check www.PickaPaySettlement.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 21. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Fogel may have. But, you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time to the proper address, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 22. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." In your letter, you must include the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),

**EXHIBIT I TO RJN ISO MTD**
-9-
**PAGE 89**

- The name, address, and telephone number of any attorney(s) who will be appearing on your behalf at the Fairness Hearing, and

- Your signature.

You must mail your Notice of Intention to Appear, postmarked no later than **March 16, 2011**, to the four addresses in Question 18.

## IF YOU DO NOTHING

### 23. What happens if I do nothing at all?

If you do nothing, you will not get a payment from the Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

### 24. How do I get more information?

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.PickaPaySettlement.com. You may also write with questions to Pick-a-Payment Settlement, P.O. Box 2448, Faribault, MN 55021-9148. You can also get a Claim Form at the website, or by calling the toll free number, 1-866-886-7224.

**EXHIBIT I TO RIN ISO MTD**
-10-
**PAGE 90**

FOR OFFICIAL USE ONLY

**FILE YOUR CLAIM ONLINE AT:**

www.PickaPaySettlement.com

# CLAIM FORM

**In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation**

In the United States District Court for the Northern District of California

San Jose Division

Case No. M:09-CV-2015-F

**If you are a Settlement Class A Member and wish to receive a Settlement Payment, your completed Claim Form must be Postmarked on or before March 16, 2011 or Submitted Electronically to the Settlement Administrator at www.PickaPaySettlement.com on or before March 16, 2011.**

```
* 1 2 3 4 5 6 7 8 9 *
```

<<NAME>>
<<ADDR1>>
<<ADDR2>>
<<CITY STATE ZIP>>

☐ If the pre-printed information to the left is not correct or if there is no pre-printed information, please check the box and complete the information in **Part I** below.

Please read the full Notice
(available at www.PickaPaySettlement.com)
carefully before filling out this Claim Form.

Claimant ID#:  <<Clmnt_ID>>

To be eligible to receive any money from the Settlement in this class action lawsuit, **you must either**: (1) complete this Claim Form and mail it postmarked on or before March 16, 2011 to: Pick-a-Payment Settlement, P.O. Box 2448, Faribault, MN 55021-9148; or (2) complete your Claim Form online at www.PickaPaySettlement.com on or before March 16, 2011.  The claims of Settlement Class A Members who fail to submit their Claim Forms on time by U.S. Mail (properly addressed) or fail to fill out an online Claim Form by the deadline will be rejected and the Settlement Class A Member will not be eligible to receive a payment.

**I wish to submit a claim and in support of that claim, I submit the following information:**

## PART 1:  CLAIMANT INFORMATION

Name of Claimant who is a member of Settlement Class A, as that is defined in the Notice: _____

Claimant Current Mailing Address: _____

City: _____    State: ____ ____    Zip Code: ____ ____ ____ ____ ____

Claimant Telephone Number(s):

Daytime: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___    Evening: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

## PART 2:  SIGNATURE

Your signature below certifies that to the best of your knowledge the information above is truthful and correct.  You certify that you had, but no longer have, a Pick-a-Payment mortgage loan because you sold the property securing the loan, refinanced the loan, paid off the loan personally, or have already obtained a loan modification that converted the loan from a Pick-a-Payment mortgage loan. You also certify that you have not previously released your claims pursuant to another settlement agreement, final judgment, or other dealings with the Defendants.

Signature: _____    Date: ____ ____ / ____ ____ / ____ ____ ____ ____

```
* P A P S *                    * C F *
```

EXHIBIT 1
PAGE 91    * 1 - 1 *

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Have a Pick-a-Payment Mortgage Loan with World Savings Bank or Wachovia Mortgage,

## You Could Receive Benefits from a Class Action Settlement.

> A Pick-a-Payment mortgage loan allows borrowers to make monthly payments in an amount lower than the monthly amount of interest due on the loan.

*A federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants failed to make complete and accurate disclosures with respect to their Pick-a-Payment mortgage loans.

- **The Defendants' records show that you obtained a Pick-a-Payment mortgage loan between August 1, 2003 and December 31, 2008.**

- You do not need to do anything to get a payment. Please call 1-877-546-8449 to apply for a loan modification.

- Please note that this Settlement does not change your obligation to continue to make payments on your mortgage loan. You should continue to make your payments.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **RECEIVE BENEFITS** | If the Court grants final approval to the Settlement, you will automatically receive benefits if you qualify. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no money from the Settlement. This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like about the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Obtain Settlement benefits and give up rights to ever sue the Defendants about the legal claims in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Loan modifications are being offered by the Defendants now to eligible Class Members. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

For More Information: Call 1-866-886-7224 or visit www.PickaPaySettlement.com

-1-

**EXHIBIT I TO RJN ISO MTD**

**PAGE 92**

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ...................................................................**PAGE 3**
1. Why is there a notice?
2. What is this lawsuit about?
3. What is a Pick-a-Payment mortgage loan?
4. Why is this a class action?
5. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT**....................................................**PAGE 4**
6. How do I know if I am part of the Settlement?

**THE SETTLEMENT BENEFITS** .....................................................**PAGE 5**
7. What does the Settlement provide?
8. What about the Attorneys General Settlement with Wells Fargo?
9. What can I get from the Settlement?
10. What is a loan modification?
11. What is "Imminent Default"?
12. What is the other incentive program?
13. What am I giving up to stay in the Class?

**HOW TO GET BENEFITS**..............................................................**PAGE 8**
14. How can I get benefits?
15. When will I get my benefits?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ..........................**PAGE 8**
16. How do I get out of the Settlement?
17. If I don't exclude myself, can I sue the Defendants for the same thing later?
18. If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU**.............................................**PAGE 9**
19. Do I have a lawyer in the case?
20. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**................................................**PAGE 9**
21. How do I tell the Court that I don't like the Settlement?
22. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING**.............................................**PAGE 10**
23. When and where will the Court decide whether to approve the Settlement?
24. Do I have to come to the hearing?
25. May I speak at the hearing?

**IF YOU DO NOTHING**................................................................**PAGE 11**
26. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................................**PAGE 12**
27. How do I get more information?

**BASIC INFORMATION**

---

**1. Why is there a notice?**

---

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015. The people who sued are called Plaintiffs, and the companies they sued, World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, FSB, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A., are called the Defendants.

---

**2. What is this lawsuit about?**

---

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product (*see* Question 3 below). The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions. When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization"). The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

---

**3. What is a Pick-a-Payment mortgage loan?**

---

The way the loans work is that borrowers chose one of up to four monthly payment options: a minimum payment, an interest only payment, a 15-year amortizing payment, or a 30-year amortizing payment. When a minimum payment was insufficient to pay the interest that was owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

---

**4. Why is this a class action?**

---

In a class action, one or more people, called "class representatives," sue on behalf of people who have similar claims. All these people are a "class" or "class members," except for those who exclude themselves from the class. U.S. District Judge Jeremy D. Fogel in the United States District Court for the Northern District of California is in charge of this class action.

**EXHIBIT I TO RJN ISO MTD**
**PAGE 94**

**5. Why is there a Settlement?**

The Defendants are not admitting that they did anything wrong, but both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected. The Settlement provides the opportunity for payments and other benefits to Class Members.

## WHO IS IN THE SETTLEMENT

**6. How do I know if I am part of the Settlement?**

There are three Settlement Classes. **If you received this notice in the mail, the Defendants' records show you are a member of Settlement Class B.** If you believe you are a member of Settlement Class A or Settlement Class C, you should call 1-866-886-7224. You can view the detailed Notices for each Settlement Class at www.PickaPaySettlement.com.

Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB (now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.) anytime between August 1, 2003 and December 31, 2008.

#### Settlement Class A **(no longer have a Pick-a-Payment mortgage)**

- Includes borrowers who no longer have their Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.

#### Settlement Class B **(mortgage payments are not 60 or more days past due)**

- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of December 16, 2010, are <u>not</u> 60 or more days past due.

#### Settlement Class C **(mortgage payments are 60 days or more past due)**

- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of December 16, 2010, are 60 or more days past due.

Please note that the Classes do not include any borrowers who have already released their claims involving their Pick-a-Payment mortgage in a prior case against any of the Defendants.

**EXHIBIT I TO RJN ISO MTD**
-4 **PAGE 95**

**THE SETTLEMENT BENEFITS**

---

**7. What does the Settlement provide?**

---

The Settlement provides for a loan modification program valued at over $600 million and the establishment of a $50 million Settlement Fund. After deducting a payment of up to $125,000 for the Class Representatives (*see* Question 20), the net Settlement Fund will be distributed equally to members of Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C. Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications or another incentive program (*see* Questions 10 and 12 below). In addition to the Settlement Fund, the Defendants will pay up to $25 million in attorneys' fees and costs (*see* Question 20) and up to $1 million to administer the Settlement.

If there is any money remaining in the $50 million Settlement Fund after all claims are paid, the Defendants will be reimbursed for the administration expenses. Any remaining funds will be distributed to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

A Settlement Agreement, available at the website, contains more details about the Settlement.

---

**8. What about the Attorneys General Settlement with Wells Fargo?**

---

If you live in Arizona, Florida, Colorado, New Jersey, Washington, Texas, Illinois, or Nevada, you may receive a separate notice relating to a 2010 Settlement between those states' Attorneys General and Wells Fargo Bank, N.A. (the "Attorneys General Settlement"), which acquired World Savings Bank, FSB/Wachovia Mortgage FSB's Pick-a-Payment mortgage loan portfolio in 2008. In the Attorneys General Settlement, Wells Fargo Bank, N.A. is offering permanent loan modifications to eligible borrowers. You are allowed to participate in both the Attorneys General Settlement and this Settlement.

---

**9. What can I get from the Settlement?**

---

As a member of Settlement Class B, you may be eligible to participate in the loan modification program if you are in "Imminent Default," if you later become in "Imminent Default," or if you later become 60 or more days past due on your mortgage payments. The loan modification program and "Imminent Default" are described below.

You are also eligible to receive a payment from the Settlement Fund after the Court grants final approval to the Settlement (*see* Question 15). Your exact payment cannot be calculated at this time. It will depend on the number of valid claims that are filed by members of Settlement Class A. <u>Members of Settlement Class B do not have to file a claim form to receive a payment from the Settlement Fund.</u> Please note that if you

---

had a co-borrower on your Pick-a-Payment mortgage loan, or if you had more than one Pick-a-Payment mortgage loan, you and all other co-borrowers will only get one Settlement Payment.

### 10. What is a loan modification?

The Defendants will offer permanent loan modifications to eligible Settlement Class B Members who live in their homes, who are in "Imminent Default," (*see* Question 11), who later become in "Imminent Default," or who later become 60 or more days past due on their mortgage payments. The Loan Modification Program will operate through June 30, 2013. A loan modification is a change to your loan agreement and may include principal forgiveness, loan term extension, interest rate reduction, and principal forbearance (which gives the borrower additional time to pay off the loan principal). Please be aware that a loan modification may affect your credit rating.

Eligible Settlement Class B Members will first be considered for the federal Home Affordable Modification Program ("HAMP"). HAMP provides eligible homeowners the opportunity to modify their mortgages to make them more affordable. If the Settlement Class B Member does not qualify under HAMP or elects not to accept a HAMP loan modification, the Defendants will consider that Settlement Class B Member for their new modification program known as Mortgage Assistance Program 2 ("MAP2R").

Settlement Class B Members who remain current on their modified payments over three years may be able to earn additional principal forgiveness. More details on these programs are in the Settlement Agreement, which is available at www.PickaPaySettlement.com.

### 11. What is "Imminent Default"?

Imminent Default describes a borrower who meets a test to show the borrower is reasonably likely to default on his or her Pick-a-Payment mortgage loan because of financial hardship or other changed circumstances. Generally, the current test for "Imminent Default" is as follows:

1. Long Term Hardship, meaning a borrower that is having difficulty making his or her mortgage payments and the duration of that difficulty is expected to be greater than 12 months; **and**

2. Financial Hardship, defined as one of the following that currently exists or occurs prior to June 30, 2013:

   a. Death of a borrower;

   b. Long-term or permanent disability or illness of a borrower or dependent family member;

   c. Legally-documented divorce or separation of the borrower and co-borrower;

    d. Separation of borrowers unrelated by marriage, civil union, or similar civil domestic partnership under applicable law;

    e. A combination of reduction of income and increase in housing expenses (principal and interest only) that exceeds 10% of current income. The comparison period shall be approximately 12 months prior to the date modification is sought; however, a greater period may be used if the condition has been consistent; **and**

3. Cash reserves of less than $25,000, excluding retirement accounts; **and**

4. The property is occupied by the borrower as his or her principal residence; **and**

5. The borrower's loan-to-value ratio must exceed 80%, or the loan must have a positive "Net Present Value."

If you believe you are in Imminent Default, you should contact the Defendants at 1-877-546-8449.

---

**12. What is the other incentive program?**

---

Settlement Class B Members who are unable to qualify for modifications under the HAMP or MAP2R guidelines may qualify for incentive payments of at least $1,500 for a short-sale or deed-in-lieu of foreclosure. The Settlement Class B Member must qualify for these payments under the Home Affordable Foreclosure Alternatives ("HAFA") guidelines. HAFA guidelines are available at http://makinghomeaffordable.gov/hafa.html.

In a short sale, the bank allows the homeowner to list and sell the mortgaged property with the understanding that the net proceeds from the sale may be less than the total amount due on the first mortgage. Generally, if the borrower makes a good faith effort to sell the property but is not successful, a bank may consider a deed-in-lieu of foreclosure. With a deed-in-lieu of foreclosure, the borrower voluntarily transfers ownership of the property to the bank—provided the title is free and clear of other mortgages and liens.

These options will remain open through June 30, 2013.

---

**13. What am I giving up to stay in the Class?**

---

Unless you exclude yourself from the Settlement, you can't sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you get benefits from the Settlement. The Settlement Agreement is available at www.PickaPaySettlement.com.

### 14. How can I get benefits?

You do not need to do anything to get a payment from the Settlement. If the Court grants final approval to the Settlement, you will automatically be mailed a payment. The Defendants are attempting to contact Settlement Class B Members who are eligible for loan modifications or the incentive program. If you would like to apply for a loan modification or the incentive program, you should contact the Defendants at 1-877-546-8449. If you move after you receive this Notice, please call 1-866-886-7224 to inform the administrator of your new address.

### 15. When will I get my benefits?

Modifications are now available, and the Defendants are attempting to contact Settlement Class B Members who are eligible for loan modifications or the incentive program. Payments will be distributed to Class Members after the Court grants "final approval" to the Settlement and after any appeals are resolved. If Judge Fogel approves the Settlement after a hearing on April 29, 2011, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement Fund, and you want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or it is sometimes referred to as "opting" out of the Class.

### 16. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter that includes the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- A statement that you want to be excluded from this Settlement, and
- Your signature.

You must mail your exclusion request, postmarked no later than **March 16, 2011**, to:

Pick-a-Payment Exclusions
PO Box 2448
Faribault, MN 55021-9148

**17. If I don't exclude myself, can I sue the Defendants for the same thing later?**

No. Unless you exclude yourself, you give up the right to sue the Defendants for the claims that the Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Class to continue your own lawsuit.

**18. If I exclude myself from the Settlement, can I still get a payment?**

No. You will not get any money from the Settlement if you exclude yourself from the Settlement. If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

## THE LAWYERS REPRESENTING YOU

**19. Do I have a lawyer in the case?**

Yes. The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent you and all Class Members: Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP; Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

Class Counsel has spent over three years working on this lawsuit, including over a year of mediation to get to this Settlement. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**20. How will the lawyers be paid?**

Class Counsel intends to file a motion on or about February 23, 2011 seeking $25 million for attorneys' fees and costs. The fees awarded by the Court will be paid by Defendants and will not come from the Settlement Fund. The Court will determine the amount of fees to award. Class Counsel will also request that up to $125,000 be paid from the Settlement Fund to the 26 Class Representatives who helped the lawyers on behalf of the whole Class.

## OBJECTING TO THE SETTLEMENT

**21. How do I tell the Court that I don't like the Settlement?**

If you are a Class Member, you can object to the Settlement or to Class Counsel's requests for fees and expenses. To object, you must send a letter that includes the following:

- Your name, address, and telephone number,

- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),

- The account number(s) of your loan(s),

- A sentence stating that "You confirm under penalty of perjury that you are a Settlement Class Member,"

- The reasons you object to the Settlement,

- A list of any witnesses you may call to testify at the Fairness Hearing (see Question 22),

- Copies of any exhibits you intend to present to the Court at the Fairness Hearing, and

- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than **March 16, 2011**, to the following four addresses:

| Court | Defense Counsel |
|-------|----------------|
| The United States District Court for the Northern District of California 280 South First Street San Jose, CA 95113 | T. Thomas Cottingham, III WINSTON & STRAWN LLP 214 North Tryon Street, Suite 2200 Charlotte, NC 28202 |
| **Class Counsel** | **Defense Counsel** |
| Jeffrey K. Berns David M. Arbogast ARBOGAST & BERNS LLP 6303 Owensmouth Avenue, 10th Floor Woodland Hills, CA 91367 | Jack R. Nelson REED SMITH LLP 101 Second Street, Suite 1800 San Francisco, CA 94105 |

### 22. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses. You may attend and you may ask to speak, but you don't have to.

**EXHIBIT I TO RJN ISO MTD**
-10-
**PAGE 101**

**23. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at **9:00 a.m. PST** on **April 29, 2011**, at the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA, 95113, in Courtroom #3. The hearings may be moved to a different date or time without additional notice, so it is a good idea to check www.PickaPaySettlement.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**24. Do I have to come to the hearing?**

No. Class Counsel will answer questions Judge Fogel may have. But, you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time to the proper address, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**25. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." In your letter you must include the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015 ),
- The name, address, and telephone number of any attorney(s) who will be appearing on your behalf at the Fairness Hearing, and
- Your signature.

You must mail your Notice of Intention to Appear, postmarked no later than **March 16, 2011**, to the four addresses in Question 21.

### IF YOU DO NOTHING

**26. What happens if I do nothing at all?**

If you do nothing, you will still get benefits from the Settlement. However, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

**27. How do I get more information?**

The notice summarizes the proposed Settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement at www.PickaPaySettlement.com. You may also write with questions to Pick-a-Payment Settlement, P.O. Box 2448, Faribault, MN 55021-9148, or by calling the toll free number, 1-866-886-7224.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Have a Pick-a-Payment Mortgage Loan with World Savings Bank or Wachovia Mortgage,

## You Could Receive Benefits from a Class Action Settlement.

> A Pick-a-Payment mortgage loan allows borrowers to make monthly payments in an amount lower than the monthly amount of interest due on the loan.

*A federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants failed to make complete and accurate disclosures with respect to their Pick-a-Payment mortgage loans.

- **The Defendants' records show that you obtained a Pick-a-Payment mortgage loan between August 1, 2003 and December 31, 2008.**

- You do not need to do anything to get a payment. Please call 1-877-546-8449 to apply for a loan modification.

- Please note that this Settlement does not change your obligation to continue to make payments on your mortgage loan. You should continue to make your payments.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
| --- | --- |
| **RECEIVE BENEFITS** | If the Court grants final approval to the Settlement, you will automatically receive benefits if you qualify. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no money from the Settlement. This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like about the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court the fairness of the Settlement. |
| **DO NOTHING** | Obtain Settlement benefits and give up rights to ever sue the Defendants about the legal claims in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Loan modifications are being offered by the Defendants now to eligible Class Members. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

**EXHIBIT J TO RJN ISO MTD**

-1- **PAGE 104**

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ...................................................................................**PAGE 3**
1. Why is there a notice?
2. What is this lawsuit about?
3. What is a Pick-a-Payment mortgage loan?
4. Why is this a class action?
5. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ...................................................................**PAGE 4**
6. How do I know if I am part of the Settlement?

**THE SETTLEMENT BENEFITS** ...................................................................**PAGE 5**
7. What does the Settlement provide?
8. What about the Attorneys General Settlement with Wells Fargo?
9. What can I get from the Settlement?
10. What is a loan modification?
11. What is "Imminent Default"?
12. What is the other incentive program?
13. What am I giving up to stay in the Class?

**HOW TO GET BENEFITS** ...........................................................................**PAGE 8**
14. How can I get benefits?
15. When will I get my benefits?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...........................................**PAGE 8**
16. How do I get out of the Settlement?
17. If I don't exclude myself, can I sue the Defendants for the same thing later?
18. If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU** ...........................................................**PAGE 9**
19. Do I have a lawyer in the case?
20. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ...............................................................**PAGE 9**
21. How do I tell the Court that I don't like the Settlement?
22. What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ..............................................................**PAGE 10**
23. When and where will the Court decide whether to approve the Settlement?
24. Do I have to come to the hearing?
25. May I speak at the hearing?

**IF YOU DO NOTHING** ...............................................................................**PAGE 11**
26. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ....................................................................**PAGE 12**
27. How do I get more information?

**EXHIBIT I TO RJN ISO MTD**
-2-**PAGE 105**

**BASIC INFORMATION**

---

### 1. Why is there a notice?

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015. The people who sued are called Plaintiffs, and the companies they sued, World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A., are called the Defendants.

---

### 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product (*see* Question 3 below). The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions. When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization"). The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

---

### 3. What is a Pick-a-Payment mortgage loan?

The way the loans work is that borrowers choose one of up to four monthly payment options: a minimum payment, an interest only payment, a 15-year amortizing payment, or a 30-year amortizing payment. When a minimum payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

---

### 4. Why is this a class action?

In a class action, one or more people, called "class representatives," sue on behalf of people who have similar claims. All these people are a "class" or "class members," except for those who exclude themselves from the class. U.S. District Judge Jeremy D. Fogel in the United States District Court for the Northern District of California is in charge of this class action.

> **5. Why is there a Settlement?**

The Defendants are not admitting that they did anything wrong, but both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected. The Settlement provides the opportunity for payments and other benefits to Class Members.

## WHO IS IN THE SETTLEMENT

> **6. How do I know if I am part of the Settlement?**

There are three Settlement Classes. **If you received this notice in the mail, the Defendants' records show you are a member of Settlement Class C.** If you believe you are a member of Settlement Class A or Settlement Class B, you should call 1-866-886-7224. You can view the detailed Notices for each Settlement Class at www.PickaPaySettlement.com.

Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB (now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.) anytime between August 1, 2003 and December 31, 2008.

**Settlement Class A (no longer have a Pick-a-Payment mortgage)**

- Includes borrowers who no longer have their Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.

**Settlement Class B (mortgage payments are not 60 or more days past due)**

- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of December 16, 2010, are not 60 or more days past due.

**Settlement Class C (mortgage payments are 60 days or more past due)**

- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of December 16, 2010, are 60 or more days past due.

Please note that the Classes do not include any borrowers who have already released their claims involving their Pick-a-Payment mortgage loan in a prior case against any of the Defendants.

**THE SETTLEMENT BENEFITS**

---

**7. What does the Settlement provide?**

---

The Settlement provides for a loan modification program valued at over $600 million and the establishment of a $50 million Settlement Fund. After deducting a payment of up to $125,000 for the Class Representatives (*see* Question 20), the net Settlement Fund will be distributed equally to members of Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C. Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications or another incentive program (*see* Questions 10 and 11 below). In addition to the Settlement Fund, the Defendants will pay up to $25 million in attorneys' fees and costs (*see* Question 19) and up to $1 million to administer the Settlement.

If there is any money remaining in the $50 million Settlement Fund after all claims are paid, the Defendants will be reimbursed for the administration expenses. Any remaining funds will be distributed to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

A Settlement Agreement, available at the website, contains more details about the Settlement.

---

**8. What about the Attorneys General Settlement with Wells Fargo?**

---

If you live in Arizona, Florida, Colorado, New Jersey, Washington, Texas, Illinois, or Nevada, you may receive a separate notice relating to a 2010 Settlement between those states' Attorneys General and Wells Fargo Bank, N.A. (the "Attorneys General Settlement"), which acquired World Savings Bank, FSB/Wachovia Mortgage, FSB's Pick-a-Payment mortgage loan portfolio in 2008. In the Attorneys General Settlement, Wells Fargo Bank, N.A. is offering permanent loan modifications to eligible borrowers. You are allowed to participate in both the Attorneys General Settlement and this Settlement.

---

**9. What can I get from the Settlement?**

---

As a member of Settlement Class C, you are eligible to participate in the loan modification program, described below.

You are also eligible to receive a payment from the Settlement Fund after the Court grants final approval to the Settlement (*see* Question 15). Your exact payment cannot be calculated at this time. It will depend on the number of valid claims that are filed by members of Settlement Class A. <u>Members of Settlement Class C do not have to file a claim form to receive a payment from the Settlement Fund</u>. Please note that if you had a co-borrower on your Pick-a-Payment mortgage loan, or if you had more than one Pick-a-Payment mortgage loan, you and all other co-borrowers will only get one Settlement Payment.

**EXHIBIT I TO RJN ISO MTD**

**-5-**

**PAGE 108**

### 10. What is a loan modification?

The Defendants will offer permanent loan modifications to eligible Settlement Class C Members who live in their homes and who are at least 60 days delinquent on their mortgage payments. Eligible Settlement Class C Members who become less than 60 days delinquent on their mortgage payments still will be eligible for the Loan Modification Program if they become in "Imminent Default" or if they again become at least 60 days delinquent on their mortgage payments. "Imminent Default" is described in section 11 below. The Loan Modification Program will operate through June 30, 2013. A loan modification is a change to your loan agreement and may include principal forgiveness, loan term extension, interest rate reduction, and principal forbearance (which gives the borrower additional time to pay off the loan principal). Please be aware that a loan modification may affect your credit rating.

Eligible Settlement Class C Members will first be considered for the federal Home Affordable Modification Program ("HAMP"). HAMP provides eligible homeowners the opportunity to modify their mortgages to make them more affordable. If the Settlement Class C Member does not qualify under HAMP or elects not to accept a HAMP loan modification, the Defendants will consider that Settlement Class C Member for their new modification program known as Mortgage Assistance Program 2 ("MAP2R").

Settlement Class C Members who remain current on their modified payments over three years may be able to earn additional principal forgiveness. More details on these programs are in the Settlement Agreement, which is available at www.PickaPaySettlement.com.

### 11. What is "Imminent Default"?

Imminent Default describes a borrower who meets a test to show the borrower is reasonably likely to default on his or her Pick-a-Payment mortgage loan because of financial hardship or other changed circumstances. Generally, the current test for "Imminent Default" is as follows:

1. Long Term Hardship, meaning a borrower that is having difficulty making his or her mortgage payments and the duration of that difficulty is expected to be greater than 12 months; **and**

2. Financial Hardship, defined as one of the following that currently exists or occurs prior to June 30, 2013:

   a. Death of a borrower;

   b. Long-term or permanent disability or illness of a borrower or dependent family member;

   c. Legally-documented divorce or separation of the borrower and co-borrower;

d. Separation of borrowers unrelated by marriage, civil union, or similar civil domestic partnership under applicable law;

e. A combination of reduction of income and increase in housing expenses (principal and interest only) that exceeds 10% of current income. The comparison period shall be approximately 12 months prior to the date modification is sought; however, a greater period may be used if the condition has been consistent; **and**

3. Cash reserves of less than $25,000, excluding retirement accounts; **and**

4. The property is occupied by the borrower as his or her principal residence; **and**

5. The borrower's loan-to-value ratio must exceed 80%, or the loan must have a positive "Net Present Value."

---

### 12. What is the other incentive program?

Settlement Class C Members who are unable to qualify for modifications under the HAMP or MAP2R guidelines may qualify for incentive payments of at least $1,500 for a short-sale or deed-in-lieu of foreclosure. The Settlement Class C Member must qualify for these payments under the Home Affordable Foreclosure Alternatives ("HAFA") guidelines. HAFA guidelines are available at http://makinghomeaffordable.gov/hafa.html.

In a short sale, the bank allows the homeowner to list and sell the mortgaged property with the understanding that the net proceeds from the sale may be less than the total amount due on the first mortgage. Generally, if the borrower makes a good faith effort to sell the property but is not successful, a bank may consider a deed-in-lieu of foreclosure. With a deed-in-lieu of foreclosure, the borrower voluntarily transfers ownership of the property to the bank—provided the title is free and clear of other mortgages and liens.

These options will remain open through June 30, 2013.

---

### 13. What am I giving up to stay in the Class?

Unless you exclude yourself from the Settlement, you can't sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you get benefits from the Settlement. The Settlement Agreement is available at www.PickaPaySettlement.com.

---

**HOW TO GET BENEFITS**

---

**14. How can I get benefits?**

---

You do not need to do anything to get a payment from the Settlement. If the Court grants final approval to the Settlement, you will automatically be mailed a payment. The Defendants are attempting to contact Settlement Class C Members who are eligible for loan modifications or the incentive program. If you would like to apply for a loan modification or the incentive program, you should contact the Defendants at 1-877-546-8449. If you move after you receive this Notice, please call 1-866-886-7224 to inform the administrator of your new address.

---

**15. When will I get my benefits?**

---

Modifications are now available, and the Defendants are attempting to contact Settlement Class C Members who are eligible for loan modifications or the incentive program. Payments will be distributed to Class Members after the Court grants "final approval" to the Settlement and after any appeals are resolved. If Judge Fogel approves the Settlement after a hearing on April 29, 2011 there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or is sometimes referred to as opting out of the Class.

---

**16. How do I get out of the Settlement?**

---

To exclude yourself from the Settlement, you must send a letter that includes the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- A statement that you want to be excluded from this Settlement, and
- Your signature.

You must mail your exclusion request, postmarked no later than **March 16, 2011**, to:

> Pick-a-Payment Exclusions
> PO Box 2448
> Faribault, MN 55021-9148

---

**EXHIBIT I TO RJN ISO MTD**
-8**PAGE 111**

**17. If I don't exclude myself, can I sue the Defendants for the same thing later?**

No. Unless you exclude yourself, you give up the right to sue the Defendants for the claims that the Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Class to continue your own lawsuit.

**18. If I exclude myself from the Settlement, can I still get a payment?**

No. You will not get any money if you exclude yourself from the Settlement. If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

### THE LAWYERS REPRESENTING YOU

**19. Do I have a lawyer in the case?**

Yes. The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent you and all Class Members: Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP; Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

Class Counsel has spent over three years working on this lawsuit, including over a year of mediation to get to this Settlement. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**20. How will the lawyers be paid?**

Class Counsel intends to file a motion on or about February 23, 2011 seeking $25 million for attorneys' fees and costs. The fees awarded by the Court will be paid by Defendants and will not come from the Settlement Fund. The Court will determine the amount of fees to award. Class Counsel will also request that up to $125,000 be paid from the Settlement Fund to the 26 Class Representatives who helped the lawyers on behalf of the whole Class.

### OBJECTING TO THE SETTLEMENT

**21. How do I tell the Court that I don't like the Settlement?**

If you are a Class Member, you can object to the Settlement or to Class Counsel's requests for fees and expenses. To object, you must send a letter that includes the following:

- Your name, address, and telephone number,

- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),

- The account number(s) of your loan(s),

- A sentence stating that "You confirm under penalty of perjury that you are a Settlement Class Member,"

- The reasons you object to the Settlement,

- A list of any witnesses you may call to testify at the Fairness Hearing (see Question 21),

- Copies of any exhibits you intend to present to the Court at the Fairness Hearing, and

- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than **March 16, 2011**, to the following four addresses:

| Court | Defense Counsel |
|---|---|
| The United States District Court for the Northern District of California 280 South First Street San Jose, CA 95113 | T. Thomas Cottingham, III WINSTON & STRAWN LLP 214 North Tryon Street, Suite 2200 Charlotte, NC 28202 |
| **Class Counsel** | **Defense Counsel** |
| Jeffrey K. Berns David M. Arbogast ARBOGAST & BERNS LLP 6303 Owensmouth Avenue, 10th Floor Woodland Hills, CA 91367 | Jack R. Nelson REED SMITH LLP 101 Second Street, Suite 1800 San Francisco, CA 94105 |

### 22. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses. You may attend and you may ask to speak, but you don't have to.

**EXHIBIT I TO RJN ISO MTD**
-10-
**PAGE 113**

**23. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at **9:00 a.m. PST** on **April 29, 2011**, at the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA, 95113, in Courtroom #3. The hearings may be moved to a different date or time without additional notice, so it is a good idea to check www.PickaPaySettlement.com. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**24. Do I have to come to the hearing?**

No. Class Counsel will answer questions Judge Fogel may have. But, you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time to the proper address, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**25. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." In your letter you must include the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- The name, address, and telephone number of any attorney(s) who will be appearing on your behalf at the Fairness Hearing, and
- Your signature.

You must mail your Notice of Intention to Appear, postmarked no later than **March 16, 2011**, to the four addresses in Question 20.

## IF YOU DO NOTHING

**26. What happens if I do nothing at all?**

If you do nothing, you may still get benefits from the Settlement. However, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

**27. How do I get more information?**

The notice summarizes the proposed Settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement at www.PickaPaySettlement.com.  You may also write with questions to Pick-a-Payment Settlement, P.O. Box 2448, Faribault, MN 55021-9148, and you can call the toll free number, 1-866-886-7224.

## IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation

Case No. M:09-CV-2015-JF

**About this Settlement**      **Making a Claim**      **More Information**

Overview      FAQs      What are your rights      Notice

## Welcome to the Information Website for the Class Action Settlement for Wachovia "Pick-A-Payment"



**IF YOU HAVE OR HAD A PICK-A-PAYMENT MORTGAGE LOAN WITH WORLD SAVINGS BANK OR WACHOVIA MORTGAGE, A CLASS ACTION LAWSUIT MAY AFFECT YOUR RIGHTS**

You may be affected by a class action lawsuit if: Anytime between August 1, 2003 and December 31, 2008, you were a borrower who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.

Please use the links above to obtain additional information.

**January 28, 2011 - Friday, January 28, 2011**

For questions about this Settlement, please call Rust at 1-866-886-7224. Do not contact the Defendants with questions about this Settlement, including questions about the notice you received or questions regarding how much your settlement payment will be. If you have specific questions about your loan or wish to discuss or apply for a loan modification, contact the Defendants at 1-877-546-8449. Again, please do not contact the Defendants with questions about this Settlement, as those callers will be referred back to this website.

**Settlement Update - Wednesday, December 22, 2010**

Preliminary Approval

December 16, 2010

### Disclaimer

Please do not contact either Wachovia Bank or Wells Fargo Bank or the court about this settlement. Any and all callers will be directed to this website. If you have questions, please refer to the FAQ's and the other information posted here.

This site is not operated by Wachovia Bank or Wells Fargo Bank. This class action settlement is supervised by the court and is administered by a claims administration firm that handles all aspects of claims processing. Wachovia Bank or Wells Fargo Bank is not authorized to respond to questions from members of the plaintiff class regarding the settlement.

View our **Privacy Statement**

**EXHIBIT I TO RJN ISO MTD PAGE 116**

About the Administrator • Contact Information

## IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation

Case No. M:09-CV-2015-JF

| About this Settlement | Making a Claim | More Information |
| --- | --- | --- |

Overview    FAQs    What are your rights    Notice



## Frequently Asked Questions

**What is this lawsuit about?**

**Answer:**

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product. The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions. When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization"). The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

**What is a Pick-a-Payment mortgage loan?**

**Answer:**

The way the loans work is that borrowers choose one of up to four monthly payment options: a minimum payment, an interest only payment, a 15-year amortizing payment, or a 30-year amortizing payment. When a minimum payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

**Why is there a Settlement?**

**Answer:**

The Defendants are not admitting that they did anything wrong, but both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected. The Settlement provides the opportunity for payments and other benefits to Class Members.

**How do I know if I am part of the Settlement?**

**Answer:**

There are three Settlement Classes. Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB (now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.) anytime between August 1, 2003 and December 31, 2008.

<u>**Settlement Class A (no longer have a Pick-a-Payment mortgage)**</u>
·      Includes borrowers who no longer have their Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.
<u>**Settlement Class B (mortgage payments are not 60 or more days past due)**</u>
·      Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
·      Whose mortgage payments, as of December 16, 2010, are <u>not</u> 60 or more days past due.
<u>**Settlement Class C (mortgage payments are 60 or more days past due)**</u>
·      Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
·      Whose mortgage payments, as of December 16, 2010, are 60 or more days past due.
Please note that the Classes do not include any borrowers who have already released their claims involving their Pick-a-Payment mortgage loan in a prior case against any of the Defendants.

**What does the Settlement provide?**

**Answer:**

The Settlement provides for a loan modification program valued at over $600 million and the establishment of a $50 million Settlement Fund. After deducting a payment of up to $125,000 for the Class Representatives, the net Settlement Fund will be distributed equally to members of

**EXHIBIT I TO RJN ISO MTD PAGE 117**

Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C. Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications or another incentive program. In addition to the Settlement Fund, the Defendants will pay up to $25 million in attorneys' fees and costs and up to $1 million to administer the Settlement.

If there is any money remaining in the $50 million Settlement Fund after all claims are paid, the Defendants will be reimbursed for the administration expenses. Any remaining funds will be distributed to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

The Settlement Agreement, available at this website, contains more details about the Settlement.

**How can I request a loan modification?**

**Answer:**

The Defendants are attempting to contact Settlement Class B Members and Settlement Class C Members who are eligible for loan modifications or the incentive program. If you would like to discuss or apply for a loan modification or the incentive program, you should contact the Defendants at 1-877-546-8449.

**How can I get a payment?**

**Answer:**

If you are a member of Settlement Class B or Settlement Class C, you do not need to do anything to receive a payment. If the settlement receives final approval, you will automatically be mailed a payment. Members of Settlement Class A had to complete and submit a Claim Form to receive a payment. The Claim Form had to be postmarked not later than March 16, 2011. The deadline to submit a Claim Form has now passed.

**When will I get my payment?**

**Answer:**

Payments will be mailed to Class Members after the Court grants final approval to the Settlement and any appeals are resolved. If the Court approves the Settlement after a hearing on April 29, 2011, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time.

**How do I get out of the Settlement?**

**Answer:**

Exclusion requests had to be sent by mail postmarked no later than March 16, 2011. The deadline to exclude yourself from the settlement has now passed.

**If I exclude myself from the Settlement, can I still get a payment?**

**Answer:**

No. You will not get any money from the Settlement if you exclude yourself. If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

**Do I have a lawyer in the case?**

**Answer:**

Yes. The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent you and all Class Members: Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP; Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

Class Counsel has spent over three years working on this lawsuit, including over a year of mediation to get to this Settlement. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**How will the lawyers be paid?**

**Answer:**

Class Counsel intends to file a motion on or about February 23, 2011 seeking $25 million for attorneys' fees and costs. The fees awarded by the Court will be paid by Defendants and will not come from the Settlement Fund. The Court will determine the amount of fees to award. Class Counsel will also request that up to $125,000 be paid from the Settlement Fund to the 26 Class Representatives who helped the lawyers on behalf of the whole Class.

**How can I Object?**

**EXHIBIT I TO RJN ISO MTD PAGE 118**

**Answer:**

If you did not exclude yourself from the settlement, you had the option to object to the settlement by mailing in a written objection no later than the postmark deadline of March 16, 2011.  The deadline to object to the settlement has now passed.

**What's the difference between objecting and excluding?**

**Answer:**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

**When and where will the Court decide whether to approve the Settlement?**

**Answer:**

The Court will hold a Fairness Hearing on **April 29, 2011**, at the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA, 95113, in Courtroom #3. The hearings may be moved to a different date or time without additional notice, so it is a good idea to check with this website. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**What happens if I do nothing at all?**

**Answer:**

If you are a member of Settlement Class A and you do nothing, you will not get a payment from the Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

**How do I get more information?**

**Answer:**

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at this website. You may also write with questions to Pick-a-Payment Settlement, P.O. Box 2448, Faribault, MN 55021-9148.

---

Please do not contact either Wachovia Bank or Wells Fargo Bank or the court about this settlement. Any and all callers will be directed to this website. If you have questions, please refer to the FAQ's and the other information posted here.

This site is not operated by Wachovia Bank or Wells Fargo Bank. This class action settlement is supervised by the court and is administered by a claims administration firm that handles all aspects of claims processing. Wachovia Bank or Wells Fargo Bank is not authorized to respond to questions from members of the plaintiff class regarding the settlement.

View our **Privacy Statement**

**EXHIBIT I TO RJN ISO MTD PAGE 119**

About the Administrator  •  Contact Information

## IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation

Case No. M:09-CV-2015-JF

| About this Settlement | Making a Claim | More Information |
| --- | --- | --- |
| Overview  FAQs  What are your rights  Notice | | |



## What are your Rights?

| Your Legal Rights and Options in the Settlement | |
| --- | --- |
| **Submit a Claim Form** | Settlement Class A must submit a claim.  Settlement Classes B and C do not have to submit a claim. |
| **Exclude Yourself from the Settlement** | Get no money from the Settlement. This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the  legal claims in this case. |
| **Object** | Write to the Court about why you don't like about the Settlement. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the Settlement. |
| **Do Nothing** | Settlement Class A will not get a payment and will give up rights to ever sue the Defendants about the legal claims in this case.  Settlement Classes B and C will obtain Settlement benefits and give up rights to ever sue the Defendants about the legal claims in this case. |

Please do not contact either Wachovia Bank or Wells Fargo Bank or the court about this settlement. Any and all callers will be directed to this website. If you have questions, please refer to the FAQ's and the other information posted here.

This site is not operated by Wachovia Bank or Wells Fargo Bank. This class action settlement is supervised by the court and is administered by a claims administration firm that handles all aspects of claims processing. Wachovia Bank or Wells Fargo Bank is not authorized to respond to questions from members of the plaintiff class regarding the settlement.

View our **Privacy Statement**

**EXHIBIT I TO RJN ISO MTD PAGE 120**

Case5:09-md-02075-LJFK Document137-2Filed05/04/15/11 Page874 b150

About the Administrator • Contact Information

## IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation

Case No. M:09-CV-2015-JF

**About this Settlement** | **Making a Claim** | **More Information**

Overview    FAQs    What are your rights    Notice

### Notice





The documents below include:

**Agreement and Stipulation of Settlement of Class Action** which is made for the sole purpose of attempting to consummate settlement of this action on a class-wide basis.

**Pick-A-Payment Class Notice** which is the notice that, according to The Defendants' records, will be mailed to those that obtained a Pick-A-Payment mortgage loan.

You can view or print these documents by clicking on the title or download below.

| Title | Size | |
|---|---|---|
| Agreement and Stipulation of Settlement of Class Action | 273.04 KB | Download |
| Pick-A-Payment Class A Notice | 380.35 KB | Download |
| Pick-A-Payment Class A Notice, Espanol | 300.14 KB | Download |
| Pick-A-Payment Class B Notice | 415.95 KB | Download |
| Pick-A-Payment Class B Notice, Espanol | 321.07 KB | Download |
| Pick-A-Payment Class C Notice | 410.57 KB | Download |
| Pick-A-Payment Class C Notice, Espanol | 318.79 KB | Download |

Please do not contact either Wachovia Bank or Wells Fargo Bank or the court about this settlement. Any and all callers will be directed to this website. If you have questions, please refer to the FAQ's and the other information posted here.

This site is not operated by Wachovia Bank or Wells Fargo Bank. This class action settlement is supervised by the court and is administered by a claims administration firm that handles all aspects of claims processing. Wachovia Bank or Wells Fargo Bank is not authorized to respond to questions from members of the plaintiff class regarding the settlement.

View our **Privacy Statement**

Acrobat Reader is free and is required to view and print these documents

**EXHIBIT I TO RJN ISO MTD PAGE 121**

About the Administrator • Contact Information

## IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation

Case No. M:09-CV-2015-JF

**About this Settlement**      **Making a Claim**      **More Information**

Court Documents      For More Information

## Court Documents



A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

Acrobat Reader is free and is required to view and print these documents

| Title | Size | |
| --- | --- | --- |
| Preliminary Approval Order | 709.21 KB | Download |
| Agreement and Stipulation of Settlement of Class Action | 273.04 KB | Download |
| Corrected Second Amended Class Action Complaint | 2.48 MB | Download |

Please do not contact either Wachovia Bank or Wells Fargo Bank or the court about this settlement. Any and all callers will be directed to this website. If you have questions, please refer to the FAQ's and the other information posted here.

This site is not operated by Wachovia Bank or Wells Fargo Bank. This class action settlement is supervised by the court and is administered by a claims administration firm that handles all aspects of claims processing. Wachovia Bank or Wells Fargo Bank is not authorized to respond to questions from members of the plaintiff class regarding the settlement.

View our **Privacy Statement**

**EXHIBIT I TO RJN ISO MTD PAGE 122**

About the Administrator • Contact Information

## IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation

Case No. M:09-CV-2015-JF

**About this Settlement**     **Making a Claim**     More Information

Court Documents     For More Information



### More Information

The notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at this website. You may also write with questions to Pick-a-Payment Settlement, P.O. Box 2448, Faribault, MN 55021-9148.

Please do not contact either Wachovia Bank or Wells Fargo Bank or the court about this settlement. Any and all callers will be directed to this website. If you have questions, please refer to the FAQ's and the other information posted here.

This site is not operated by Wachovia Bank or Wells Fargo Bank. This class action settlement is supervised by the court and is administered by a claims administration firm that handles all aspects of claims processing. Wachovia Bank or Wells Fargo Bank is not authorized to respond to questions from members of the plaintiff class regarding the settlement.

View our **Privacy Statement**

**EXHIBIT I TO RJN ISO MTD PAGE 123**

About the Administrator  •  Contact Information

## IN RE: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation

Case No. M:09-CV-2015-JF

About this Settlement  |  Making a Claim  |  More Information

Claim Form    Opt-Out Info    Important Dates



## Important Dates

Preliminary Approval: December 16, 2010

Notice Mail Date: January 28, 2011

Notice of Intent to Appear/Objections Deadline: March 16, 2011

Opt Out Deadline: March 16, 2011

Claim Submission Deadline: March 16,  2011

Final Fairness Hearing: April 29, 2011

Please do not contact either Wachovia Bank or Wells Fargo Bank or the court about this settlement. Any and all callers will be directed to this website. If you have questions, please refer to the FAQ's and the other information posted here.

This site is not operated by Wachovia Bank or Wells Fargo Bank. This class action settlement is supervised by the court and is administered by a claims administration firm that handles all aspects of claims processing. Wachovia Bank or Wells Fargo Bank is not authorized to respond to questions from members of the plaintiff class regarding the settlement.

View our **Privacy Statement**

**EXHIBIT I TO RJN ISO MTD PAGE 124**

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 3144961 | ADELE P NAVARRETE | | 24131468/2 | | |
| 1121780 | ADUNI A UBAKA | | 27157783/1 | | |
| 3051177 | ALAN AFRAIM | | 48413421/2 | | |
| 4827825 | ALAN W LAITSCH | LESLIE A LAITSCH | 45400330/3 | | |
| 4725459 | ALBERT HAYES | | 46650040/3 | | |
| 767958 | ALBERT W ROONEY | YVONNE M LINTHWAITE ROONEY | 21336243/1 | | |
| 4686002 | ALEKSANDRA TOCZEK | | 48392716/3 | | |
| 4071792 | ALEXANDER W CORLETT | | 47310172/2 | | |
| 1675047 | ALEXANDRA RAMIREZ | | 26099531/1 | | |
| 302647 | ALEXIS ESQUILIN | ANTHONY ESQUILIN | 45234069/1 | | |
| 5013333 | ALFREDO ESCOBEDO | | 48015309/3 | | |
| 2054186 | ALLAN DEAN | VICTORIA MARIE DEAN | 44588044/1 | 44588044/2 | |
| 3095164 | AMY METZINGER | EMMA METZINGER | 24774945/2 | | |
| 434058 | ANDREA B GOLD | | 23827850/1 | | |
| 4816515 | ANDREA C PAGE | | 44308781/3 | | |
| 2091266 | ANDREA FEIER | | 28355089/1 | 28355089/2 | |
| 5004584 | ANDY J NAVA | SUSAN E NAVA | 42864603/3 | | |
| 4699484 | ANGELA DIBENEDETTO | | 46998647/3 | | |
| 4290063 | ANGELA T STARK | | 42723403/2 | | |
| 4842590 | ANITA L BOWDEN | | 45363231/3 | | |
| 98434 | ANN PAULSON | THE ANN PAULSON TRUST | 43784578/1 | | |
| 1285628 | ANNA M DE OCA | | 45603685/1 | | |
| 3668979 | ANNA M RUCKER | | 25210220/2 | | |
| 3840283 | ANNE CHANEY | | 47601331/2 | | |
| 4918400 | ANTHONY STERN | JOANNE STERN | 44801710/3 | | |
| 4854647 | ARLENE BELL-SPARROW | RONALD W SPARROW | 45782745/3 | | |
| 4988458 | ARMANDO R GIL | | 46025300/1 | 46025300/3 | |
| 5022267 | ARTHUR JAMES TENNIER | LOIS GEAN TENNIER | 47839667/3 | | |
| 2375403 | ARTHUR P PRISCO | | 25752023/1 | 25752023/2 | |
| 70201 | ARTHUR R TUBBS | JANE M TUBBS | 25272253/1 | | |
| 5137473 | AUSTIN BROWN | | 48117584/3 | | |
| 4728917 | BARBARA L STEPHENS | | 27032689/3 | | |
| 4832010 | BARBARA W BEESON REVOCABLE TR | | 42564617/3 | | |

**EXHIBIT I TO RJN ISO MTD
PAGE 125**

Page 1 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 2986180 | BARNETT GOODMAN | JANICE F GOODMAN | 44212777/2 | | |
| 4809302 | BENJAMIN A ERNST | | 46141115/3 | | |
| 5050970 | BENJAMIN MENJIVAR | SARA MENJIVAR | 46652475/3 | | |
| 4100317 | BENJAMIN PUENTES | | 25655689/2 | | |
| 4049043 | BERNADINE C HOLMAN | KENT B HOLMAN | 28145365/2 | | |
| 4921752 | BETHANY M ASH | RICHARD E ASH | 43360155/3 | | |
| 4941453 | BEVERLEY NELLIGAN | | 41732405/3 | | |
| 5051960 | BILL J TINKER | NORMA WALKER | 47551494/3 | | |
| 95220635 | BJORN BLOMBERG | BLOMBERG MARGITA | 42581173/3 | | |
| 3628614 | BLANCA C DARKHOR | SAEED DARKHOR | 42009316/2 | | |
| 4677468 | BRADFORD HERRICK | | 46350302/3 | | |
| 4924180 | BRANDON L MERCY | TERRI MERCY | 45878121/3 | | |
| 2455273 | BRENDA P SMITH | | 29887031/1 | 29887031/2 | |
| 5188505 | BRIAN J THOMPSON | DULCE E DE LEON | 27960509/1 | | |
| 3502419 | BRIAN J WOODALL | WOODALL MARY JANE KOENEN | 44328961/2 | | |
| 1196139 | BRYCE A MCCULLOUGH | | 41057266/1 | | |
| 3739044 | CARILLON P NICOL | JOHN M NICOL | 25319559/2 | | |
| 4754169 | CARL PRETO | | 45267952/3 | | |
| 3240298 | CARLOS A GUERRESCHI | SONIA E GUERRESCHI | 46503579/2 | | |
| 3284759 | CARLOS A MIRANDA | | 46422853/2 | | |
| 5034611 | CARMEN A MEZA | JOSEPHINE MEZA FAMIL JOSEFINA | 48012587/3 | | |
| 3200285 | CAROL CLEARY | | 26591610/2 | | |
| 2968643 | CAROLE A SINASON | | 48420095/1 | 48420095/2 | |
| 4687290 | CAROLYN J COOPER | | 46763371/3 | | |
| 4033813 | CAROLYN L CORY | | 27735703/2 | | |
| 2429199 | CAROLYN W SANDFORD | PAUL F SANDFORD | 43926120/1 | 43926120/2 | |
| 4762737 | CHARLES COLAIZZI | CARLENNE COLAIZZI | 47118039/3 | | |
| 4850878 | CHARLES D HENLEY AND GINA I H | | 47361795/3 | | |
| 3170229 | CHARLES Q SCHOCH | | 46334108/2 | | |
| 2940137 | CHERYL F GLASS | | 25353970/2 | | |
| 95209241 | CHRIS P BURGER | | 41271826/2 | | |
| 3623671 | CHRIS ROPPEL | | 24746679/2 | | |
| 3870884 | CHRISTIAN BERTOLI | PATRICIA BERTOLI | 47369020/2 | | |

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 4813637 | CHRISTINA HORTON | | 42386573/3 | | |
| 3120552 | CHRISTINE LODER | | 42547141/2 | | |
| 5029204 | CHRISTOPHER A ROMO | DULIA ROMO | 27460104/3 | | |
| 2415963 | CLAUDETTE L ROZAL | FRED S ROZAL | 29003407/1 | 29003407/1 | |
| 4106173 | CLAUDIA COLEMAN | | 46977104/2 | | |
| 3095010 | CLEON JONES | | 22779383/2 | | |
| 4694212 | CLIFFORD J CESPEDES | | 29624368/3 | | |
| 4996071 | COLETTE DUMAS | | 47189477/1 | 47189477/3 | |
| 1930702 | CONCHITA C ANG | | 47453501/1 | 47453501/3 | |
| 4816720 | CONNIE T KIM | | 45330412/3 | | |
| 1645149 | CONSUELO NOLASCO | | 40691859/1 | | |
| 4532965 | CORAZON T GONZALES | AVELINA GONZALES | 46745956/2 | | |
| 4966647 | CRAIG A SAMPLE | EILEEN K SAMPLE | 44588937/1 | 44588937/3 | |
| 5172948 | CRISTIAN A BONZI | JANI M HUHTA-BONZI | 43090257/3 | | |
| 2947075 | CRYSTAL WHITE | | 40821902/2 | | |
| 4851738 | CURLEE C DENNIS | | 47426341/3 | | |
| 4854364 | CYNTHIA LYN HENDERSON | | 47298278/3 | | |
| 2958002 | DAMARIS SANCHEZ-MELE | | 45663549/2 | | |
| 3091449 | DANE GITTINGS | | 41663295/2 | | |
| 878227 | DANIEL A DETLEFSEN | SUSAN D DETLEFSEN | 20724274/1 | | |
| 2898193 | DANIEL BOWMAN | CORINNE BOWMAN | 44921427/2 | | |
| 155847 | DANIEL M TROY | CYNTHIA TROY | 41938887/1 | | |
| 3310984 | DANNY F HOOD | | 47949938/2 | | |
| 3379462 | DARLENE A CREATURO | | 47060546/2 | | |
| 5056828 | DARREN E WASSELL | JULIE S WASSELL | 41763087/3 | | |
| 4800026 | DAVID F BENCIVENGA | | 40939449/3 | | |
| 3380079 | DAVID L CREATURO SR | | 28331593/2 | | |
| 3062906 | DAVID L MENZIES | JUDY M MENZIES | 46560553/2 | | |
| 3182185 | DAVID M RAHN | CYNTHIA RENEE RAHN | 23394919/2 | | |
| 4971948 | DAVID RUFF | | 44946937/3 | | |
| 3649237 | DAVID V MOUA | | 45767555/2 | | |
| 4682974 | DEAN J CAMMARATA | MARY E CAMMARATA | 27186683/3 | | |
| 4797081 | DEBORAH A ORR | | 46788253/3 | | |

**EXHIBIT I TO RJN ISO MTD**
**PAGE 127**
Page 3 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 4895480 | DENNIS H PORTER | | 47185780/3 | | |
| 4332404 | DEREK L DAVENPORT | LOYCE C DAVENPORT | 43407816/2 | | |
| 3806913 | DESIREE DURBANO | DONALD DURBANO | 41533985/2 | | |
| 3179079 | DIANE D FRAME | | 47124029/2 | | |
| 2980300 | DIANE J KOENIG | MARVIN H KOENIG | 27173186/2 | | |
| 5046553 | DIANE L BASKER | | 44289973/3 | | |
| 5036974 | DIANE TENUTO | | 40515702/3 | | |
| 5137015 | DMITRI VELIKORETSKI | IRINA NIKOLAEVA | 22466874/3 | | |
| 2032719 | DONELL R COOPER | MIKKI L COOPER | 43406628/1 | 43406628/3 | |
| 3079959 | DOUGLAS A CONVERSE | ROBIN J CONVERSE | 32433153/2 | | |
| 4788744 | DOUGLAS M WILMER | | 46158994/3 | | |
| 5026821 | DOUGLAS ROBERTS | | 45661048/3 | | |
| 3823361 | DOUGLAS RUSSELL | | 27091594/2 | | |
| 5076994 | EBLIS PRIETO | RENEA L PRIETO | 29524204/3 | | |
| 4701057 | EDMUND FRANCIS | | 47274196/3 | | |
| 3068991 | EDWARD SANDKUHL | SANDRA SANDKUHL | 29518230/2 | | |
| 4121589 | ELAINE C CAMPBELL | | 44175727/2 | | |
| 267885 | ELISABETH TURNER | | 28320307/1 | | |
| 3009925 | ELMO A JEFFREY | | 47353933/2 | | |
| 3294338 | ELSIE R CARTER | | 47674544/1 | 47674544/2 | |
| 4765202 | ERNEST ALZATE | ELENA O ALZATE | 44790665/3 | | |
| 307727 | ERNEST MCGILL | TRACEY MCGILL | 46601670/1 | | |
| 4731214 | ESTATE OF RAYMOND T MAJEWSKI | | 27448257/3 | | |
| 2911762 | ESTATE OF STANLEY R LEVINE | | 43483874/2 | | |
| 4728184 | ETHEL R WILSON | | 41592411/3 | | |
| 4774921 | EUGENE KROLL | | 41238171/3 | | |
| 2331201 | EVA ANNIKA NORD | | 48593875/1 | 48593875/2 | |
| 5071883 | EVELYN NARVAEZ | | 44871002/3 | | |
| 4283102 | FARHAD GHAZVINI | | 45232402/2 | | |
| 322249 | FRANK E GRABOWSKI | | 31876840/1 | | |
| 324779 | FRANK PLAYO | | 24776411/1 | | |
| 3014455 | FRANK VIGLIOTTI | | 45824612/2 | | |
| 4678991 | FRASER BOTWRIGHT | CAROL L BOTWRIGHT-BROWN | 41983206/3 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 128
Page 4 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 3720172 | FRED T BREWSTER | DEANA L BREWSTER | 43941285/2 | | |
| 3216552 | FRED W TWERS | KATHLEEN O TWERS | 47315015/1 | 47315015/2 | |
| 2763903 | FREDDY RUGERIO | GUADALUPE RUGERIO | 46269049/1 | 46269049/2 | |
| 4968665 | G RICHARDS | | 45650587/3 | | |
| 4884675 | GAIL L BAKER | | 22520043/3 | | |
| 3666531 | GARY W BROWN | FRED B BROWN | 46653432/2 | | |
| 4288763 | GEORGENA M COOK | | 42935817/2 | | |
| 4741329 | GEORGINA DESOUZA | | 22591119/3 | | |
| 5077144 | GERALD I ESPARCIA | | 40053415/3 | | |
| 4849773 | GERALD L DICK SR | | 40570392/3 | | |
| 3000724 | GLENN HARBER | GRETCHEN WYNEGAR | 47149067/2 | | |
| 4796695 | GLENN MEE | | 45920238/3 | | |
| 4928201 | GLORIA MARTINEZ | CHRIS MARTINEZ | 29304037/3 | | |
| 2940618 | GREGORY M PLISKO | AMRI T PLISKO | 29219755/1 | 29219755/2 | |
| 3480540 | GREGORY S DUNHAM | CAROLINE A MCNABB | 46273579/2 | | |
| 3759189 | GREGORY W SCHWARTZ | | 25210014/2 | | |
| 5124435 | GUADALUPE SANCHEZ | | 45207198/3 | | |
| 1388992 | GWENDOLYN J HOLLINQUEST | | 44724706/1 | | |
| 223003 | HAZEL PIERCE | ERMA PIERCE | 27589712/1 | 27589712/1 | |
| 5169719 | HECTOR ESCOBAR | | 29603628/3 | | |
| 3670545 | HELENA W PEREZ-REILLY | | 44013977/2 | | |
| 1750720 | HENRY SY | | 25942319/1 | | |
| 5055517 | HERMAN J JOHNSON | JOYCE A JOHNSON | 26675009/3 | | |
| 5118618 | HILDA P SANCHEZ | | 40763823/3 | | |
| 4772767 | IAN R FRASER | WENDY W FRASER | 26823336/1 | 41985649/3 | |
| 3633359 | IMOGENE MCNEES | | 45755790/2 | | |
| 2904917 | INGRID MURRAY | | 41879099/2 | | |
| 4721246 | IZABELA UZNANSKA | | 46668992/3 | | |
| 4031543 | J RUSSELL SLACK | | 46037354/2 | | |
| 4977698 | JACK A NISSIM | | 41291980/3 | | |
| 3937754 | JAIME B FLORES-LOVO | KAREN M FLORES-LOVO | 29998051/2 | | |
| 2915883 | JAMES B BIGELOW | | 24502726/2 | | |
| 783644 | JAMES D HALL | | 44782308/1 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 129
Page 5 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 1467277 | JAMES G COOPER | TAMMY L COOPER | 22522734/1 | | |
| 2885612 | JAMES KAROS | | 42288977/2 | | |
| 2245744 | JAMES LOCKLEY | VERONICA LOCKLEY | 24729253/1 | 24729253/2 | |
| 3206867 | JAMES POWELL | | 45509502/2 | | |
| 3614303 | JAMES R JOYCE | | 29585247/2 | | |
| 4880233 | JAMES ROBERT WHITAKER | CHRISTINE WHITAKER | 26969360/3 | | |
| 4805021 | JANET JUSTUS | | 27732866/3 | | |
| 3738337 | JANICE R BROWN | | 45438769/2 | | |
| 3302385 | JANICE R COBLE | KERMIT COBLE | 46077780/2 | | |
| 5002603 | JANICE R GONZALES | MICHAEL A GONZALES | 44292415/3 | | |
| 4437987 | JAROM A STRADLING | AMY R STRADLING | 42593582/1 | 42593582/2 | |
| 3131800 | JASON A STANAWAY | | 29472735/2 | | |
| 283755 | JASON D PLUCINSKI | | 41744335/1 | | |
| 3498057 | JASON R HARDTKE | | 40982977/2 | | |
| 4434658 | JASON T WAGNER | | 46735957/2 | | |
| 3368732 | JAY A ANDREWS | EDNA G ANDREWS | 42521617/2 | | |
| 287050 | JEFF BRACKEN | | 47894464/1 | | |
| 4704317 | JEFFREY DEMBICER | | 25136078/3 | | |
| 3255605 | JEFFREY M GORDON | | 48005623/2 | | |
| 3968635 | JEFFREY T DOYLE | PAGE INGRAM-DOYLE | 43441229/2 | | |
| 4939344 | JENEENE GANNATAL | | 48023808/3 | | |
| 4714750 | JENNA GUARIGLIA | | 43805761/3 | | |
| 297011 | JEROME LARKE | MARILYN LARKE | 42338228/1 | | |
| 3954812 | JESS OJEDA | ERMA OJEDA | 27567171/2 | | |
| 3137529 | JOAN P KLAYTON | | 28682326/2 | | |
| 2616940 | JOAN WADDELL | | 46654208/1 | 46654208/3 | |
| 5077571 | JOANNE MALISSOVAS | | 47231147/3 | | |
| 3812075 | JOHN BAKER | GLORIA BAKER | 27167279/2 | | |
| 3973844 | JOHN C MASCARI | MARY ANN MASCARI | 44587236/2 | | |
| 5033898 | JOHN C RECKLING | DEBRA L RECKLING | 44931533/3 | | |
| 5086849 | JOHN DAVID MCDOUGALL | JENNIFER L MCDOUGALL | 27407147/3 | | |
| 4751755 | JOHN F SCHAEFER SR | FLORENCE G SCHAEFER | 44610038/3 | | |
| 4238690 | JOHN KIM | | 40171175/2 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 130
Page 6 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 240963 | JOHN P MISTLER | SHARON K MISTLER | 42292326/1 | | |
| 3039472 | JOHN R LEUCI | DOMENICA S LEUCI | 22947022/2 | | |
| 3755785 | JOHNNY R TERRONES | MARY T TERRONES | 28758530/1 | 28758530/2 | |
| 1264487 | JOSE AMPARIAN VALDEZ | | 24479719/1 | | |
| 95182339 | JOSE J GARCIA | GARCIA ROCIO | 40792384/1 | | |
| 2398921 | JOSE L RIVAS | JOSEPHINE RIVAS | 48006571/1 | 48006571/2 | |
| 2853994 | JOSE RODRIGUEZ | GLORIA RORIGUEZ | 43521699/1 | 43521699/2 | |
| 3103906 | JOSEPH BROOKS | | 47872312/2 | | |
| 207881 | JOSEPH COONEY | GRACE COONEY | 28932622/1 | | |
| 4818151 | JOSEPH HENNING | | 41823030/3 | | |
| 4722847 | JOSEPH J MUZIO | | 28281442/1 | 43132141/3 | |
| 5018796 | JOSEPH MICHAEL ORTON | KATHLEEN ORTON | 43140888/3 | | |
| 4735670 | JOSEPH PATTERSON | DIANE PATTERSON | 42514182/3 | | |
| 4806776 | JOSEPH R ERNST | | 46451936/3 | | |
| 4881445 | JOSEPH STEPHENS | | 24374076/3 | | |
| 4004783 | JUDGE CARSON PURIFOY | | 44883726/1 | 44883726/2 | |
| 4895459 | JUDY A CHASTAIN | JOHN A MORARRE | 41070889/3 | | |
| 5022984 | JUDY JEAN PATAPOFF | | 47281613/3 | | |
| 5171866 | JUERGEN STAHL | | 43690486/3 | | |
| 3837542 | JULIA ELLIOTT | SABRA L STEPAK | 44684769/2 | | |
| 3593479 | JULIE ANNE THOMAS | | 42182147/1 | 42182147/2 | |
| 3512685 | JUNIOUS TAYLOR JR | MYRA MING | 42274860/2 | | |
| 2536798 | KAREN B WILLIAMS | | 25806191/1 | 25806191/3 | |
| 4697800 | KAREN KEELEY | | 42805796/3 | | |
| 4730804 | KAREN L GABRIEL | | 46599791/3 | | |
| 4154013 | KAREN M STREET | | 26472670/2 | | |
| 3196649 | KATE M COOPER | | 44578458/2 | | |
| 2900674 | KATHLEEN M KEEFE | | 45321577/1 | | |
| 3853894 | KATHY A CHRISTOPHER | | 40728446/2 | | |
| 4113805 | KAYVAN PEJOOH | ROSEMARIE ANN PEJOOH | 40926982/2 | | |
| 4806523 | KEITH AARON VANN | | 40633646/3 | | |
| 3963678 | KEITH M NORDBY | KIMBERLY NORDBY | 23955826/2 | | |
| 2390840 | KEITH RELPH JR | | 46768636/1 | 46768636/3 | |

EXHIBIT I TO RJN ISO MTD
PAGE 131
Page 7 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 4978824 | KENI MAE MEYER | | 47645650/3 | | |
| 5004843 | KENNETH DAVIS | | 27694082/3 | | |
| 4718192 | KENNETH E SILMAN | | 47956222/3 | | |
| 4982579 | KERRI DANIELS | | 40829459/3 | | |
| 3167991 | KEVIN P MCLAUGHLIN | | 26005405/2 | | |
| 3028865 | KRISTEEN ESPINOZA | | 42554162/2 | | |
| 4844914 | LARA KARAKASEVIC | | 40383143/3 | | |
| 3108376 | LARRY E WALKER | PATRICIA WALKER | 24897381/1 | 24897381/2 | |
| 5041282 | LATANJA CHAMBERS | | 41899113/3 | | |
| 2896267 | LAURENCE A DIAMOND | HOLLY S DIAMOND | 43466549/1 | 43466549/2 | |
| 323574 | LAWRENCE A STINGER | DEBORAH STINGER | 24443723/1 | | |
| 1977684 | LAWRENCE BREAN | MARCELLA B BREAN | 43485093/1 | 43485093/2 | |
| 5038794 | LAWRENCE J KIRKPATRICK | ELIZABETH L KIRKPATRICK | 45957750/3 | | |
| 4704249 | LEONARD BURKE | RANDY LEVINE | 43045806/3 | | |
| 1897852 | LEONARD MC KENZIE | LOUISE MCKENZIE | 22900948/1 | | |
| 1941319 | LEONARD V AVILA | | 43237122/1 | 43237122/1 | |
| 1130751 | LEOPOLDO ASUNCION | | 26031831/1 | 26031831/1 | |
| 5064830 | LESLIE L TALLETT | MARISSA L TALLETT | 45819059/3 | | |
| 3963401 | LESTER LAMBERT | | 30061048/2 | | |
| 3220009 | LINDA D QUARLES | WILLIAM E BROWN | 29481793/2 | | |
| 1192827 | LINDA G WILLIAMS | | 47631494/1 | | |
| 3182383 | LINDA S SUSWAL | | 23829526/2 | | |
| 5220045 | LINDSEY MULLETT | | | | |
| 3736739 | LISA G POST | JOHN J TORNES | 47908199/2 | | |
| 2847528 | LOLITA A SY | | 25944943/1 | 25944943/2 | |
| 2314709 | LORETTA MORSE | | 41879818/1 | 41879818/2 | |
| 4697374 | LOUIS GIOIA JR | MARIE E GIOIA | 22022909/3 | | |
| 3123386 | LOUIS J DIDIO | SUZAN M DIDIO | 42718403/2 | | |
| 3357859 | LOVENIA A CUMBIE | | 46643052/2 | | |
| 3325148 | LOYAL A SLECHTA | SUSAN MARGRETHE SLECHTA | 43655307/2 | | |
| 3006740 | LUCILLE H RICHARDSON | | 47012356/2 | | |
| 4452461 | LUIGI SGANDURRA | SABRINA GRAZIANO | 40082133/2 | | |
| 3846490 | LUZ V DALISAY | LEONARDO P DALISAY | 44454064/2 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 132
Page 8 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 3065259 | LYDIA H LOCKMAN | | 44963486/2 | | |
| 3308875 | MAMIE Y THOMAS | | 47491394/1 | 47491394/2 | |
| 1223286 | MANUEL J RODRIGUEZ SR | DOROTHY C RODRIGUEZ | 29186657/1 | | |
| 1931648 | MARC ANTHONY | | 40092561/1 | 40092561/3 | |
| 4362807 | MARCELINO LLANOS | | 45518297/2 | | |
| 3237076 | MARCIA A GAYNOR | | 48310239/2 | | |
| 2209005 | MARCY F KAPLAN | | 40523227/1 | 40523227/3 | |
| 4717546 | MARGARET CRUICKSHANK | | 26756999/3 | | |
| 3799062 | MARGARET MCCORMICK | | 44689735/2 | | |
| 5122400 | MARGARITA RIOS | | 25556820/3 | | |
| 3043325 | MARIA A SCHIANO | | 22549919/2 | | |
| 5021338 | MARIA FUENTES | | 44613651/3 | | |
| 4870630 | MARIA H TURNBLOM | | 23157936/3 | | |
| 1774344 | MARIA L FLORES | APRIL L MACABUHAY | 42244673/1 | | |
| 3127858 | MARIA SANDOR | | 46198149/ 2 | | |
| 668613 | MARIA TERESA FERNANDEZ | | 25561754/1 | | |
| 2371771 | MARIAN A PORTER | | 45198272/1 | 45198272/3 | |
| 253161 | MARIAN STUPKA | | 28882181/1 | | |
| 4688983 | MARILYN N LEHANE | | 47868716/3 | | |
| 4906155 | MARK ALLYN FISHER | | 40510943/3 | | |
| 95180632 | MARK D HYSEN | | 29490992/1 | | |
| 4113126 | MARK J CORDEIRO | LISA K CORDEIRO | 42847533/2 | | |
| 4851196 | MARK K BRASWELL | | 47080932/3 | | |
| 592123 | MARK R NICELY | DENISE L NICELY | 23942840/1 | | |
| 1099607 | MARK S JONES | ROBERTA D JONES | 43457068/1 | | |
| 5065141 | MARY A WADSWORTH | | 41413626/3 | | |
| 4680994 | MARY ANN CURRIE | | 43570274/3 | | |
| 3684979 | MARY K ERASMUS | | 42224014/2 | | |
| 4981022 | MATTHEW R FROINES | | 48108328/3 | | |
| 4814382 | MAUREEN MCARDLE | | 24790073/3 | | |
| 3596913 | MCHATTIE ROBYN DEAN | | 26835066/2 | | |
| 3110836 | MEGAN E KELLEY | | 27592286/2 | | |
| 4793700 | MELISSA DAWN RUSH | | 42070953/3 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 133
Page 9 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 3297391 | MELISSA K WISHON | BRYAN R WISHON | 46611539/2 | | |
| 4725350 | MELVIN ESTES | MARY ESTES | 47195888/3 | | |
| 4286509 | MICHAEL A HOFFMAN | TRACIE LEE HOFFMAN | 413604472/2 | | |
| 333078 | MICHAEL D GIMBEL | MARGARET M GIMBEL | 25484213/1 | | |
| 4847052 | MICHAEL HILLA | | 46258794/3 | | |
| 218276 | MICHAEL J LAFFERTY | REGINA LAFFERTY | 25482068/1 | | |
| 5159383 | MICHAEL J TAHENY | MARIA T TAHENY | 21217575/3 | | |
| 4834380 | MICHAEL LAWVER | MARGARET OVESON | 22128904/3 | | |
| 4980353 | MICHAEL S MESSING | LICETH MESSING | 43278662/3 | | |
| 5044535 | MICHELLE MOQUIN | | 40640575/3 | | |
| 4764762 | MIRIAM RIVERA | | 47703343/3 | | |
| 4894483 | MIRVIA F MEYER | | 47093067/3 | | |
| 2263564 | MIYOKO H MANALISAY | SACHI H MANALISAY | 47907712/1 | 47907712/2 | |
| 3234419 | MYRA JANE ROBERTSON | | 24190399/2 | | |
| 4972150 | NADER SHATERIAN | | 46956348/3 | | |
| 3790328 | NANCY D NICKERSON | | 43852524/1 | 43852524/2 | |
| 4751946 | NANCY DORAZIO | | 43746692/3 | | |
| 4819592 | NANCY R SICOLI | | 47577788/3 | | |
| 5006786 | NATHAN J BONAPARTE | | 44756641/3 | | |
| 27663 | NELSON A CASTRO | ADELA M CASTRO | 21600796/1 | | |
| 4774990 | NEWTON GAYNOR | | 45488137/3 | | |
| 4797555 | NICK TRIANTAFYLLOPOLOUS | ELIZABETH GRASHO | 46630703/3 | | |
| 2061979 | NICOLE DIAMOND | | 28628303/1 | 28628303/2 | |
| 4689355 | NICOLE M FRATARCANGELI | | 29124252/3 | | |
| 3736715 | NYSSA RENE HAWKINS | | 42421743/2 | | |
| 3260661 | OSEO O SORATORIO | FIDELA G SORATORIO | 47743257/1 | 47743257/2 | |
| 3089354 | PATRICIA A ANTONUCCI | DOMINIQUE NIKI WARNER | 42286807/2 | | |
| 4024828 | PATRICIA GODWIN | SCOTT GODWIN | 46193363/2 | | |
| 4975472 | PAUL F SANDFORD | NANCY J SANDFORD | 48218333/3 | | |
| 4169918 | PAULA J LOEFFLER | | 43290253/2 | | |
| 3573167 | PAULA NELL RAINEY | JOEL A RAINEY | 41708413/2 | | |
| 4688358 | PAWEL TOCZEK | | 43302355/3 | | |
| 4934899 | PEDRO ENRIQUE LOPEZ | | 45238243/3 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 134
Page 10 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 3158159 | PENELOPE O CAPOZZI | | 31878127/2 | | |
| 2483924 | PHILIP TESORIERO | LISA TESORIERO | 47555255/1 | 47555255/3 | |
| 2339085 | PRISCILLA ONEIL | | 41476433/1 | 41476433/2 | |
| 2650968 | RACHEL MUNGOMA | | 21292396/1 | 21292396/1 | 45041076/2 |
| 4799900 | RALPH S SPURLOCK | | 44341477/3 | | |
| 4097051 | RALPH W BOYD | GEORGENE L BOYD | 47916903/2 | | |
| 4334828 | RANDAL LA ROCCA | LISA LA ROCCA | 45450772/2 | | |
| 5003068 | RANDY DEAN VELLIS | ALYSSA VELLIS | 41380494/3 | | |
| 4893462 | REGINA A C NARVAEZ | CONNIE R PABON | 40121543/1 | 40121543/3 | |
| 294751 | REGINA S WEIR | | 29481587/1 | | |
| 1251234 | REGINALD C ROGOFF | | 23904030/1 | | |
| 4547273 | RENE ALBERTO ESQUER | DULCE MARIA ALONSO | 45237757/2 | | |
| 4904533 | RENE L LARSON | | 24229429/3 | | |
| 3847206 | REX A HILL | | 45083193/2 | | |
| 3360804 | RICHARD A ROSENTHAL | | 43772243/1 | 43772243/2 | |
| 4697879 | RICHARD BOEHME | PATRICIA BOEHME | 40965261/3 | | |
| 4691525 | RICHARD FRIEDMAN | LESLIE FRIEDMAN | 46487161/3 | | |
| 4681786 | RICHARD J WOLOSKI SR | DEBRA J CUTLER | 22877872/3 | | |
| 327718 | RICHARD NASUTI | | 46692497/1 | | |
| 4806325 | RICHARD R STROH | | 42917666/3 | | |
| 4731542 | RICHARD SIMONELLI | | 29288859/3 | | |
| 1162363 | RICHARD W HAINES | | 41171976/1 | | |
| 5038343 | ROBERT BLAIR KRUEGER | | 48015077/3 | | |
| 2897578 | ROBERT CLARKE | | 22873145/2 | | |
| 5020317 | ROBERT D DALE | | 46526133/3 | | |
| 256568 | ROBERT FRAZIER | JENNIFER FRAZIER | 29480498/1 | | |
| 4036371 | ROBERT HARRICK | GERALDINE HARRICK | 46910642/2 | | |
| 5050161 | ROBERT LITONJUA | | 42915561/3 | | |
| 3129968 | ROBERT M BAYLIS | ROSEMARY E | 47294582/2 | | |
| 3334980 | ROBERT M KENT | LAURA E KENT | 41998691/1 | 41998691/2 | |
| 3156667 | ROBERT MARTENS | WENDY MARTENS | 45380987/2 | | |
| 4001386 | ROBERT S MEYER | | 40554321/2 | | |
| 3962459 | ROBERT W MAYS | | 45148426/1 | 45148426/2 | |

EXHIBIT I TO RJN ISO MTD
PAGE 135

Page 11 of 14

Exhibit C - Exclusion List

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 95212241 | ROCKY EMERY | | 23227226/3 | | |
| 4904229 | RODERICK J WEINBERG | ANDREA M WEINBERG | 42264325/1 | 42264325/3 | |
| 3984086 | ROEHL AMANTE | CHARLENE AMANTE | 47368980/2 | | |
| 95214924 | ROGER A HAGEN | HAGEN MARY E | 40025645/3 | | |
| 4743484 | RON AROLD | JILL D AROLD | 42580761/1 | 42580761/3 | |
| 5045488 | RONALD H WHITE | LINDA J WHITE | 48574529/3 | | |
| 292580 | RONALD J PALUMBO | NANCY PALUMBO | 41193475/1 | | |
| 3366806 | RONALD L DUNHAM | | 45989241/2 | | |
| 2582795 | RONALD WILLIAM DUMAS | | 43792795/1 | 43792795/3 | |
| 4872696 | ROSALIND M ROBINSON | | 26875948/3 | | |
| 3046975 | ROSARIO SPATOLA | GEORGINA SPATOLA | 41154089/2 | | |
| 4769880 | ROSE A MCCLOSKEY | | 29860368/3 | | |
| 4790709 | ROSE JAMES DOUGLAS | | 44713402/3 | | |
| 5015993 | ROSIE DUNNE | | 47391982/3 | | |
| 3071106 | SADIQA CODRINGTON | | 43344555/1 | 43344555/2 | |
| 3829035 | SALLY S CARMODY | | 47006788/2 | | |
| 4975700 | SAMANTHA L WILLIAMS | | 27939172/3 | | |
| 3241288 | SAMUEL HAMMAKER | | 47373592/2 | | |
| 297028 | SANDRA BONAFINO | | 41125634/1 | | |
| 2254654 | SANDRA DEE LUJAN | JOHN J LUJAN SR | 40316598/1 | 40316598/2 | |
| 3857670 | SANDRA M PETERSON LIVING TRUS | | 46904157/2 | | |
| 4700920 | SANDRA R WALOWACK | | 45563152/3 | | |
| 4417699 | SANDY LUMSEYFAI | | 41748716/1 | 41748716/2 | |
| 3881286 | SARA M DE LEON | PEDRO DE LEON | 43727437/2 | | |
| 2229508 | SCOTT H LANSING | | 26383828/1 | 26383828/3 | |
| 3768891 | SERGIO RAMOS | OLGA ELIAS | 40126765/2 | | |
| 36580 | SHARON BASCH | | 278336491/1 | | |
| 297868 | SHAWN P WALSH | SUSAN ENGLE-WALSH | 25269184/1 | | |
| 4121671 | SHEILA L FREEMAN | THOMAS W FREEMAN | 23637614/2 | | |
| 2220253 | SHIRLEY MAE KNIGHT-HARRIS | | 43323534/1 | 43323534/2 | |
| 5157778 | SHIRLEY TONG PANG | CHRIS TUNG-SHING PANG | 47007992/3 | | |
| 4937883 | STANLEY W EPPERLEY | KATHRYN A EPPERLEY | 47513353/3 | | |
| 5061815 | STEPHEN R MASON | | 44543635/3 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 136

Page 12 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 3536452 | STEPHEN W BLOTNER | | 23317266/2 | | |
| 3836927 | STEVE A GOLDEN | | 43863083/2 | | |
| 3739099 | STEVE ALVERSON | | 48607055/2 | | |
| 3425442 | STEVE C SPENCER | | 43088483/2 | | |
| 2201689 | STEVEN A JOHNSON | | 44184091/1 | 44184091/3 | |
| 3968123 | STEVEN B HOMAN | KATHRYN A HOMAN | 41853920/2 | | |
| 4840879 | STUART TAUB | HEATHER TAUB | 41139866/3 | | |
| 4708902 | SUSAN BACHMANN | | 44012268/3 | | |
| 4729648 | SUSAN L MARTURANO | PHILIP L MARTURANO | 44705689/3 | | |
| 4896616 | SUSAN L WEIDMAN | PETER C WEIDMAN | 24824930/3 | | |
| 306065 | SUSAN M ROBINSON | | 22549380/1 | | |
| 3142776 | SUZANNE FORMAN | | 43177906/2 | | |
| 2052793 | SUZETTE J DE LA ROCHA | | 41966003/1 | 41966003/3 | |
| 569651 | SY SHAMSEDEEN | | 43079979/1 | | |
| 3751367 | SYLVIA V AMBROSE | | 43886902/2 | | |
| 4815853 | TAKASHI HIROTANI | | 44889996/3 | | |
| 3123287 | TAMI L MORRISON | | 43504950/1 | 43504950/2 | |
| 2637280 | TAMRA S SMITH | CHARLES R SMITH | 47527783/1 | 47527783/2 | |
| 1067569 | TANYA DENNIS | | 43644681/1 | | |
| 1000276 | TED R CARLSON | CAROLE F CARLSON | 24616963/1 | 40662421/1 | 40662421/3 |
| 3726518 | TEOFILO K ALLAS TRUSTEE | LETICIA A ALLAS TRUSTEE | 29807104/2 | | |
| 3991749 | THERESE M AUSTIN | | 43689041/2 | | |
| 3704219 | THOMAS A CROSS | NOLA E CROSS | 29928413/1 | 29928413/2 | |
| 267748 | THOMAS C FOLEY | | 29841236/1 | | |
| 107181 | THOMAS G LYONS | | 24696627/1 | | |
| 754934 | THOMAS G MAUGHAN | LISA A WALDER MAUGHAN | 47648092/1 | | |
| 2541938 | THOMAS M WITTE | | 43727197/1 | | |
| 3179901 | THOMAS N COCCIA | DOROTHY M COCCIA | 45379518/2 | | |
| 40204 | THOMAS OBRIEN MOLONEY | | 24646432/1 | | |
| 4107255 | THOMAS R CANTWELL JR | | 47920475/2 | | |
| 3756690 | THOMAS W MARCKWARDT | GINGER MARCKWARDT | 46820361/2 | | |
| 4781097 | THOMAS W RIDDICK | | 46916870/3 | | |
| 598101 | TIMOTHY M SMARTT | DEBRA T SMARTT | 22801757/1 | | |

EXHIBIT I TO RJN ISO MTD
PAGE 137
Page 13 of 14

| Claimant ID | Name1 | Name2 | Loan 1 and Class | Loan 2 and Class | Loan 3 and Class |
|---|---|---|---|---|---|
| 5001187 | TOBIN LAMPSON | | 47407903/3 | | |
| 3091463 | TODD C GITTINGS JR | HEATHER A GITTINGS | 23492515/2 | | |
| 3151693 | TODD C GITTINGS SR | DENISE GITTINGS | 21820212/2 | | |
| 4824282 | TRACY C IVERSEN | | 48184444/3 | | |
| 1123470 | TRUST MILAGROS B CUBE LIVING | MILAGROS B CUBE TRUSTEE | 41415985/1 | | |
| 1644142 | VALENCIA GUADALUPE CRUZ | OLGA CRUZ | 29290277/1 | | |
| 3372678 | VANCE A LANG | | 28669182/2 | | |
| 1115383 | VERNITA DUMAS | | 41139791/1 | | |
| 3610367 | VICKI S RIVERA | | 40977860/2 | | |
| 661065 | VICKIE L CAVINS | | 23632862/1 | | |
| 5029075 | VICTORIA BIDDULPH | BARRY BIDDULPH | 48071088/3 | | |
| 4393078 | VINCENT OSHEA | | 43146414/2 | | |
| 5242252 | VIOLA M ROHLING | | 43628643/2 | | |
| 4716778 | VKR FAMILY TRUST | | 47877204/3 | | |
| 4697060 | WALTER CURTIS | | 44438455/3 | | |
| 3184295 | WALTER KOTHGASSER | DEBORAH KOTHGASSER | 27102854/2 | | |
| 3237786 | WANDA R SANTIAGO | | 47598743/1 | 47598743/2 | |
| 95182711 | WAYNE JACK | JACK BRITA M | 41584814/1 | | |
| 5023158 | WILLIAM E VIETS | ANNE M VIETS | 46180253/3 | | |
| 4869467 | WILLIAM GATES | MARJORIE HAMILTON-GATES | 43347723/3 | | |
| 3136799 | WILLIAM J BRADY JR | JOAN BRADY | 26006668/2 | | |
| 4743606 | WILLIAM J EGAN III | DOMINIQUE M EGAN | 42480996/3 | | |
| 4120384 | WILLIAM L SPIVEY | WANDA SPIVEY | 47350103/2 | | |
| 2896007 | WILLIAM V PAIGE | | 47865795/2 | | |
| 1514209 | WINIFRED S DUFFY | | 44742369/1 | | |
| 5176588 | YOUN J NA | | 46312401/3 | | |
| 1120028 | ZDZISLAW BAK | | 43866219/1 | 43866219/1 | |

EXHIBIT I TO RJN ISO MTD
PAGE 138
Page 14 of 14

EXHIBIT J

**E-filed 5/17/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE WACHOVIA CORPORATION "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION. | Case No. 5:09-md-02015-JF<br><br>JUDGMENT |

The Court having granted final approval of the class action settlement,

The action is HEREBY DISMISSED WITH PREJUDICE.

DATED:  5/17/2011

_____
JEREMY FOGEL
United States District Judge

**EXHIBIT J TO RJN ISO MTD**
**PAGE 139**

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On May 18, 2012, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

on the interested parties in said case as follows:

*Served Electronically Via the Court's CM/ECF System:*

| *Counsel for Plaintiff:* | *Counsel for NDeX West, LLC:* |
|---|---|
| Anita L. Steburg | Edward A. Treder, Esq. |
| Steburg Law Firm | edwardt@bdfgroup.com |
| 1798 Technology Drive, Suite 258 | BARRETT DAFFIN FRAPPIER |
| San Jose, CA 95110 | TREDER & WEISS, LLP |
| *Tel: 408.573.1122; Fax: 408.573.1126* | 20955 Pathfinder Road, Suite 300 |
| | Diamond Bar, CA  91765 |
| | *Tel: 626.915.5714; Fax: 909.595.7640* |

☒      FEDERAL:  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on **May 18, 2012**.

| Mark Betti | */s/ Mark Betti* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

CASE NO.:  5:11-CV-005677-LHK
CERTIFICATE OF SERVICE